1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN RAPP, in his Personal Capacity and as
Personal Representative of the Estate of
NICHOLAS WINTON RAPP, deceased; N.R., by
and through parent and guardian MEGAN F.
WABNITZ; and JUDITH RAPP, in her Personal
Capacity,

                Plaintiffs,

     vs.

NAPHCARE, INC., et al.,

                Defendants.

No. 3:21-cv-05800-DGE

NAPHCARE'S MOTION FOR
PARTIAL JUDGMENT ON THE
PLEADINGS

NOTE ON MOTION CALENDAR:
FRIDAY, APRIL 28, 2023

ORAL ARGUMENT REQUESTED

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS

161744296.1

1

## <u>TABLE OF CONTENTS</u>

2

I.   INTRODUCTION ........................................................................................................ 1

3

II.   BACKGROUND ........................................................................................................ 2

4

III.   INCORPORATION BY REFERENCE ...................................................................... 3

5

IV.   ARGUMENT .............................................................................................................. 4

6

      A.   Legal Standard ................................................................................................ 4

7

      B.   Plaintiffs Fail to Allege *Monell* Liability Against NaphCare ................................ 6

8

9

           1.   Plaintiffs fail to identify any unconstitutional policy, established practice, or custom. ...................................................................... 8

10

           2.   Plaintiffs fail to allege deliberate indifference. .......................................... 14

11

           3.   Plaintiffs do not allege any policy or custom was the "moving force" behind Rapp's suicide. ................................................................ 15

12

           4.   Plaintiffs do not allege NaphCare is liable for ratification or failure to train. .................................................................................... 17

13

14

      C.   The Court Should Dismiss Plaintiffs' Section 1983 Claim With Prejudice ......... 18

V.   CONCLUSION.......................................................................................................... 18

15

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) .......................................................................................6

*AE ex rel. Hernandez v. Cnty. of Tulare*,
    666 F.3d 631 (9th Cir. 2012) .................................................................................7, 10

*Akshar Glob. Invs. Corp. v. City of Los Angeles*,
    817 F. App'x 301 (9th Cir. 2020) ...............................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................5

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*,
    520 U.S. 397 (1997) ...................................................................................6, 7, 14, 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................5

*Brown v. Clark Cnty. Det. Ctr.*,
    No. C15-1670, Dkt. No. 164 (Aug. 23, 2018) ...........................................................13

*Bruins v. Osborn et al.*,
    No. C15-324, Dkt. No. 67 (Nev. April. 19, 2017) .....................................................13

*Burghart v. S. Corr. Entity*,
    No. C22-1248, 2023 WL 1766258 (W.D. Wash. Feb. 3, 2023) .........................11, 13

*Canyon Props., LLC v. Pierce Cnty.*,
    No. 3:19-CV-06168, 2020 WL 639412 (W.D. Wash. Feb. 11, 2020) ...................7, 14

*Chavez v. United States*,
    683 F.3d 1102 (9th Cir. 2012) .....................................................................................4

*Cheek v. Nueces Cnty.*,
    No. C13-26, Dkt. No. 151 (S. D. Tex. Mar. 24, 2015) ..............................................13

*Chen v. D'Amico*,
    No. C16-1877, 2018 WL 1508909 (W.D. Wash. Mar. 27, 2018) .........................10, 12

*City of Canton, Ohio v. Harris*,
    489 U.S. 378 (1989) ......................................................................................................6

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – ii

161744296.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

*City of Oklahoma City v. Tuttle*,
    471 U.S. 808 (1985)..................................................................................14

*Dacumos v. Toyota Motor Credit Corp.*,
    287 F. Supp. 3d 1152 (W.D. Wash. 2017)...............................................3

*Dawson v. S. Corr. Entity et al.*,
    No. C19-1987, Dkt. No. 257 (W. D. Wash. April 18, 2022)...................13

*Dean v. Wexford Health Sources, Inc.*,
    18 F.4th 214 (7th Cir. 2021) ..................................................................15

*Dougherty v. City of Covina*,
    654 F.3d 892 (9th Cir. 2011) .............................................................7, 14

*Dworkin v. Hustler Magazine Inc.*,
    867 F.2d 1188 (9th Cir. 1989) .................................................................5

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) .................................................................6

*French v. Pierce Cnty.*,
    No. 3:22-CV-05079, 2022 WL 2317299 (W.D. Wash. June 28, 2022)
    (Estudillo, J.)......................................................................................10, 11

*Galen v. Cnty. of Los Angeles*,
    477 F.3d 652, 667 (9th Cir. 2007) ...........................................................6

*Greenwood v. Pierce Cnty.*,
    No. C21-5874, 2022 WL 7142889 (W.D. Wash. Aug. 26, 2022) ..........12

*Herd v. Cnty. of San Bernardino*,
    311 F. Supp. 3d 1157 (C.D. Cal. 2018) .................................................14

*Hover v. Seattle-First Nat'l Bank*,
    No. C18-0022, 2018 WL 1695403 (W.D. Wash. Apr. 6, 2018)..............18

*Hyer v. City & Cty. of Honolulu*,
    CV 19-00586, 2021 WL 2172816 (D. Haw. May 27, 2021)...................13

*Jett v. Penner*,
    439 F.3d 1091 (9th Cir. 2006) .................................................................6

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ...................................................................4

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
*Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*,
   616 F.3d 963 (9th Cir. 2010) ................................................................18

3
*Meehan v. Cty. of Los Angeles*,
   856 F.2d 102 (9th Cir. 1988) ................................................................13

4
5
*Merritt v. Cnty. of Los Angeles*,
   875 F.2d 765 (9th Cir. 1989) ................................................................14

6
7
*Monell v. Dep't of Soc. Servs. of City of New York*,
   436 U.S. 658 (1978)........................................................................ passim

8
*O'Neal v. Las Vegas Metro. Police Dep't*,
   No. 217CV02765, 2018 WL 4088002 (D. Nev. Aug. 27, 2018)............12

9
10
11
*O'Neal v. Las Vegas Metro. Police Dep't*,
   No. 217CV02765, 2020 WL 8614249 (D. Nev. Nov. 3, 2020), *report and recommendation adopted*, No. 217CV02765, 2021 WL 666959 (D. Nev. Feb. 19, 2021) ............................................................................................12

12
13
*Rogers v. NaphCare, Inc.*,
   No. 2:20-CV-0467, 2023 WL 2763116 (E.D. Wash. Apr. 3, 2023)............10, 13, 14

14
15
*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*,
   75 F.3d 801 (2d Cir. 1996)....................................................................18

16
17
*Saved Magazine v. Spokane Police Dep't*,
   19 F.4th 1193 (9th Cir. 2021) ...........................................................7, 14

18
19
*Smith v. NaphCare, Inc.*,
   No. 3:22-CV-05069, 2022 WL 2983942 (W.D. Wash. July 28, 2022)
   (Estudillo, J.)................................................................................. passim

20
21
*Smith v. NaphCare Inc.*,
   No. 3:22-CV-05069, 2023 WL 2477892 (W.D. Wash. Mar. 13, 2023)
   (Estudillo, J.)................................................................................. passim

22
23
S*prewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ..................................................................6

24
*Sweiha v. Cnty. of Alameda*,
   No. 19-CV-03098, 2019 WL 4848227 (N.D. Cal. Oct. 1, 2019) ......13, 15

25
26
*Taylor v. City of Seattle*,
   No. C18-262, 2018 WL 5024029 (W.D. Wash. Oct. 17, 2018) ...............8

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – iv

161744296.1

*Taylor v. List*,
    880 F.2d 1040 (9th Cir. 1989) ................................................................6

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) ...............................................6, 7, 10, 13

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ................................................................5

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .................................................................4

*Washington v. Matheson Flight Extenders, Inc.*,
    No. C17-1925, 2021 WL 489090 (W.D. Wash. Feb. 10, 2021) ...............5

*Young v. Dep't of Corr.*,
    No. C05-5819, 2007 WL 703133 (W.D. Wash. Mar. 2, 2007) ..............18

*Zixiang Li v. Kerry*,
    710 F.3d 995 (9th Cir. 2013) .................................................................5

**STATUTES**

42 U.S.C. § 1983 ....................................................................... passim

**RULES**

Fed. R. Civ. P. 8 ...............................................................................5

Fed. R. Civ. P. 12 .....................................................................2, 4, 5

Fed. R. Evid. 407 ..............................................................................9

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – v

161744296.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
## I.      INTRODUCTION

2      Plaintiffs' Second Amended Complaint, Dkt. No. 63 ("SAC")—and *third attempt*—still

3 fails to allege the basic elements of a Section 1983 claim against NaphCare Inc. ("NaphCare").

4 Since the Supreme Court's decision in *Monell v. Dep't of Soc. Servs. of City of New York*, 436

5 U.S. 658 (1978), forty-five years of black letter precedent has held that an employer cannot be

6 liable under 42 U.S.C. § 1983 unless it *actually causes* a constitutional injury. That's because

7 there is no *respondeat superior* liability under *Monell*. This "rigorous" standard requires

8 Plaintiffs to allege that: (1) NaphCare maintained some official policy or "persistent" and

9 "widespread" custom that; (2) showed "deliberate indifference" to; and (3) was the "moving

10 force" behind the alleged constitutional violation. This Court recently rejected *Monell* claims

11 brought by these same Plaintiffs' counsel for failing to satisfy these requirements in asserting

12 claims against NaphCare, and should do so here for the same reasons.

13      *First*, Plaintiffs cannot identify any specific policy or custom to sustain their claims. The

14 only things approaching a "policy" that Plaintiffs have alleged are either inconsistent with the

15 SAC's own allegations and incorporated documents, or have already been found insufficient by

16 this Court. And Plaintiffs' remaining allegations that Rapp was treated in accordance with some

17 unidentified "NaphCare policy" lack the critical detail that *Monell* requires.

18      *Second*, even if Plaintiffs could identify the contours of some relevant policy, they cannot

19 allege it amounts to "deliberate indifference" to a constitutional right. Plaintiffs allege no facts to

20 suggest that NaphCare was aware that any alleged policy or custom posed a risk to the inmates

21 under its care.

22      *Third*, Plaintiffs cannot allege that any NaphCare policy or custom was the "moving

23 force" behind any constitutional violation. Plaintiffs identify no causal connection between their

24 vague allegations and Rapp's injury, and the SAC's allegations confirm that none exists.

25      The Court can enter judgment on the pleadings at any time after the pleadings are closed

26 that is early enough not to delay trial. Now is the time to do just that, so the parties can focus

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 1

161744296.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    summary judgment on those claims that should survive Rule 12. Because Plaintiffs are incapable

2    of even approaching *Monell*'s rigorous requirements, the Court should dismiss their

3    Section 1983 claim against NaphCare with prejudice and narrow the issues that must be resolved

4    through summary judgment or trial.

5                                    **II.     BACKGROUND[1]**

6           NaphCare provides healthcare services to jail and prison facilities throughout the country.

7    SAC ¶¶ 15–15.a. NaphCare entered into a contract with Kitsap County, under which NaphCare

8    agreed to provide medical services in the Kitsap County Jail (the "Jail"). *Id*. ¶ 9

9           Nicolas Rapp was arrested at around 10:00 p.m. on December 31, 2019, after a "potential

10   domestic violence situation" with his partner, Plaintiff Megan Wabnitz. *Id*. ¶¶ 37, 38. At intake,

11   NaphCare employee Nurse Odessa McCleary performed a receiving screening using NaphCare's

12   screening forms. *Id*. ¶¶ 49, 50. This screening consisted of a 28-question Mental Health Screen,

13   as well as a 5-page Receiving Screen, 3-page TB Screening, and 4-page Physical Assessment.

14   *See* Declaration of David A. Perez "(Perez Decl.), Ex. 1 at NAPH000045–50, 52–54, 60–68.[2]

15   The screening examined, among other things, Rapp's present and past suicidal ideations,

16   medications, prior hospitalizations, drug use, cognitive state, and general physical condition. *Id*.

17          While Rapp initially "denied any alcohol, illegal drug, or prescribed medications use," he

18   subsequently informed Nurse McCleary that he was "detoxing" from alcohol and other drugs

19   after he was asked to provide a urine sample. SAC ¶¶ 51, 53. Nurse McCleary then "put in a plan

20   for [Rapp] to undergo Clinical Institute Withdrawal Assessment for Alcohol ("CIWA-Ar") and

21   Clinical Opiate Withdrawal Score ("COWS") assessments." *Id*. ¶ 54. CIWA measures alcohol

22   withdrawal symptoms on a scale of 1 to 67, with scores between 8 to 15 indicating moderate

23   withdrawal. *Id*. ¶ 54.a.[3] COWS measures opiate withdrawal on a scale of 1 to 53, with "[s]cores

24

25          [1] Given the standard on a Rule 12(c) motion, NaphCare summarizes the facts as alleged in the SAC.
            [2] The SAC incorporates these records by references. *See infra* § III.

26          [3] For purposes of this Motion, NaphCare cites the SAC's assertion that a COWS score of 6 evidences
     "moderate" withdrawal, despite the fact that Plaintiffs' own expert testified that this score indicates only "mild"

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 2

161744296.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    of 5-12 indicate mild withdrawal." *Id*. ¶ 54.b. Nurse McCleary also assigned Rapp to "special

2    care" and "detox watch" until January 6, 2020. *Id*. ¶ 57.

3        Rapp's medical records show that his repeated COWS assessments uniformly showed

4    either "mild" or no withdrawal. *Id*. ¶¶ 55, 61, 77, 93, 97. His CIWA assessments showed a lone

5    "moderate" score of 8 two hours into Rapp's detention. *Id*. In response, NaphCare administered

6    100 mg of Librium, *id*. ¶ 61, which the SAC concedes is the appropriate treatment, *id*. ¶ 138.

7    Following that treatment, Rapp's CIWA scores were uniformly mild. *Id*. ¶¶ 77, 93, 97.

8    Throughout these assessments, NaphCare employees repeatedly asked if Rapp had, and Rapp

9    repeatedly denied, any thoughts of suicide or self-harm. *See, e.g.*, *id*. ¶¶ 55, 61.

10       At approximately 1:42 p.m. on January 2, after only 38 hours at the Jail, Rapp was found

11   in his cell with a ligature around his neck. *Id*. ¶ 109. NaphCare and Kitsap County employees

12   provided emergency care, and Rapp was transported to Tacoma General Hospital, where he died

13   several days later. *Id*. ¶¶ 111–113.

14                    **III.    INCORPORATION BY REFERENCE**

15       In deciding this motion, the Court should consider the following documents, which the

16   SAC expressly relies on: (1) the National Commission on Correctional Health Care ("NCCHC")

17   Standard J-E-02 for Health Services in Jails, *see* SAC ¶ 125; (2) the American Correctional

18   Association ("ACA") Core Jail Standard 4C-09, *see id*. ¶ 127; and (3) excerpts from Rapp's

19   medical records, *see, e.g. id*. ¶¶ 31, 76, 77, 93.[4] The doctrine of incorporation by reference

20   permits a court to consider materials outside the operative complaint on a motion for judgment

21   on the pleadings. *Dacumos v. Toyota Motor Credit Corp.*, 287 F. Supp. 3d 1152, 1154 (W.D.

22   Wash. 2017). "Even if a document is not attached to a complaint, it may be incorporated by

23   reference . . . if the plaintiff refers extensively to the document or the document forms the basis

24   of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). This

25   _____
     withdrawal. Dkt. No. 157 at 7 n.4. That testimony is consistent with guidance from the American Society of
26   Addiction Medicine defining "mild" withdrawal as a COWS score under 10. *Id*.
             [4] These documents are attached as Exhibits 1–3 to the Perez Declaration.

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT                              **Perkins Coie LLP**
ON THE PLEADINGS – 3                                              1201 Third Avenue, Suite 4900
                                                                    Seattle, WA  98101-3099
                                                                    Phone:  206.359.8000
161744296.1                                                          Fax:  206.359.9000

1    "prevents plaintiffs from selecting only portions of documents that support their claims, while

2    omitting portions of those very documents that weaken—or doom—their claims," which is

3    exactly what Plaintiffs have done here. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002

4    (9th Cir. 2018).

5            The SAC incorporates these documents by reference, repeatedly quoting them in a

6    selective and misleading manner to identify purported governing standards of care and alleged

7    deviations from those standards. *See, e.g.*, SAC ¶¶ 55, 125, 127. The SAC directly quotes and

8    relies on both NCCHC Standard J-E-02 and ACA Core Jail Standard 4C-09. *Id*. ¶¶ 125, 127.

9    And the SAC incorporates the excerpted medical records through its false assertion that

10   NaphCare's intake consisted of a "9-question instrument" that did not meet the standard of care.

11   *Id*. ¶ 128. But as the excerpted medical records show, NaphCare's actual screening instrument

12   was both far more extensive than Plaintiffs' selective citations, and consistent with the same

13   standards of care that Plaintiffs reference.

14           The Court should consider these records to "prevent[] [Plaintiffs] from selecting only

15   portions of [these documents] that support [their] claims, while omitting portions of those very

16   documents that weaken—or doom—th[ose] claims." *Khoja*, 899 F.3d at 1002.

### IV.    ARGUMENT

#### A.    Legal Standard

19           "Judgment on the pleadings [under Rule 12(c)] is properly granted when, accepting all

20   factual allegations in the complaint as true, there is no issue of material fact in dispute, and the

21   moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102,

22   1108 (9th Cir. 2012) (alteration and citation omitted). "Analysis under Rule 12(c) is

23   'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must

24   determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal

25   remedy.'" *Id*. (citation omitted). In such cases, a Rule 12(c) motion is "functionally identical" to

26   a Rule 12(b)(6) motion, and courts apply the "same standard." *United States ex rel. Cafasso v.*

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 4

161744296.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   *Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citation omitted);

2   *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (explaining that the

3   "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the time of filing"). Rule 12(c)

4   motions may be filed "[a]fter the pleadings are closed—but early enough not to delay trial." Fed.

5   R. Civ. P. 12(c).

6          This motion is timely because there is no trial date. *Washington v. Matheson Flight*

7   *Extenders, Inc.*, No. C17-1925, 2021 WL 489090, at *2 n.4 (W.D. Wash. Feb. 10, 2021) (finding

8   a 12(c) motion timely "[b]ecause no trial is currently scheduled").

9          Dismissal is proper when the complaint "lacks a cognizable legal theory" or "fails to

10  allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995,

11  999 (9th Cir. 2013). To assess whether a complaint alleges sufficient facts, courts use the

12  pleading standard established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and

13  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "Factual allegations must be enough to raise a right to

14  relief above the speculative level," *Twombly*, 550 U.S. at 555, and must state a *plausible* claim

15  for relief, which requires "content that allows the court to draw the reasonable inference that the

16  defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. "Threadbare recitals of

17  the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

18  Likewise, "[a] pleading that offers labels and conclusions . . . will not do. Nor does a complaint

19  suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (citation and

20  internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to

21  infer more than the *mere possibility of misconduct*, the complaint has alleged—but it has not

22  'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Rule 8(a)) (emphasis

23  added).

24         While courts generally take well-pleaded allegations as true, "[t]he court need not,

25  however, accept as true allegations that contradict matters properly subject to judicial notice or

26  by exhibit." S*prewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor must the

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 5

161744296.1

1   Court "assume the truth of legal conclusions merely because they are cast in the form of factual

2   allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation omitted). Mere

3   "conclusory allegations of law and unwarranted inferences are insufficient" to defeat a motion

4   for judgment on the pleadings. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

5          **B.      Plaintiffs Fail to Allege *Monell* Liability Against NaphCare**

6          Not every negligence claim can rise to the level of a constitutional one. A Section 1983

7   claim "based on prison medical treatment . . . must show 'deliberate indifference to serious

8   medical needs,'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted), and

9   "[l]iability . . . arises only upon a showing of personal participation by the defendant," *Taylor v.

10  List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). It is black letter law that there is no

11  *respondeat superior* liability under Section 1983, and an employer like NaphCare can be held

12  liable ***only*** where it "itself causes the constitutional violation at issue." *City of Canton, Ohio v.

13  Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. 658). That's because "in enacting

14  § 1983, Congress did not intend to impose liability on a municipality unless deliberate action

15  attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of

16  federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 400 (1997) (citing

17  *Monell*, 436 U.S. at 694).

18         Accordingly, NaphCare can only face Section 1983 liability if it "***had a deliberate policy,

19  custom, or practice that was the moving force behind the [alleged] constitutional violation

20  [Rapp] suffered***," *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (citing

21  *Monell*, 436 U.S. at 694–95) (quotations omitted; emphasis added). Absent an official policy,

22  Plaintiffs must allege the existence of a "longstanding practice or custom" within NaphCare that

23  is so "'persistent and widespread' [that] it 'constitutes a 'permanent and well settled . . . policy.'"

24  *Smith v. NaphCare, Inc.*, No. 3:22-CV-05069, 2022 WL 2983942, at *7 (W.D. Wash. July 28,

25  2022) (Estudillo, J.) ("*Smith I*") (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

26  "[A] bare allegation that [an] individual [employee's] conduct conformed to official policy,

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   custom, or practice" is not enough. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636

2   (9th Cir. 2012). And "rigorous standards of culpability and causation must be applied to ensure

3   that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at

4   405 (citations omitted).

5          Applying *Monell*, courts have consistently dismissed Section 1983 claims against

6   employers where the plaintiff alleges only isolated incidents of employee negligence or

7   misconduct. *Id.* at 403 (collecting cases) ("We have consistently refused to hold municipalities

8   liable under a theory of *respondeat superior*."); *Saved Magazine v. Spokane Police Dep't*, 19

9   F.4th 1193, 1201 (9th Cir. 2021) ("Plaintiffs' allegations amount to no more than an isolated or

10  sporadic incident that cannot form the basis of *Monell* liability for an improper custom." (citation

11  and quotations omitted)); *Canyon Props., LLC v. Pierce Cnty.*, No. 3:19-CV-06168, 2020 WL

12  639412, at *3 (W.D. Wash. Feb. 11, 2020) ("Imposing liability for unconstitutionally enforcing a

13  constitutional law in isolated instances would amount to precisely the type of *respondeat*

14  *superior* liability that was rejected in *Monell*.").

15         Plaintiffs don't even begin to satisfy *Monell*'s "rigorous" pleading standard. Despite *two*

16  *prior attempts*, the SAC still does not identify *any* formal policy or "longstanding, "persistent

17  and widespread" custom that NaphCare allegedly maintained. *Smith I*, 2022 WL 2983942, at *7

18  (quoting *Trevino*, 99 F.3d at 918). And even if Plaintiffs could make that showing, their claim

19  would still be fatally deficient because the SAC alleges no facts suggesting the policy amounts to

20  "deliberate indifference," or "demonstrating that [the] constitutional deprivation was the result of

21  a custom or practice of the [entity] [and] that the custom or practice ***was the 'moving force'***

22  ***behind [the] constitutional deprivation***." *Dougherty v. City of Covina*, 654 F.3d 892, 900–01

23  (9th Cir. 2011) (emphasis added).

24         Because Plaintiffs offer nothing more than insufficient allegations of isolated conduct, the

25  Court should dismiss their *Monell* claim against NaphCare.

26

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 7

161744296.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### 1. Plaintiffs fail to identify any unconstitutional policy, established practice, or custom.

As this Court has recognized, to state a *Monell* claim, Plaintiffs must "*specify the content of the policies [or] customs . . . [that] gave rise to the [alleged] Constitutional injuries.*" *Smith I*, 2022 WL 2983942, at *1. And "the mere recitation of the elements of a *Monell* claim does not include enough underlying facts to give the [defendants] fair notice of the claim." *Taylor v. City of Seattle*, No. C18-262, 2018 WL 5024029, at *3 (W.D. Wash. Oct. 17, 2018).

Even read charitably, the SAC identifies only three purported "policies," none of which are sufficient. ***First***, Plaintiffs' suggestion that NaphCare's "9-question [screening] instrument . . . is not a 'suicid[e] risk assessment' of the type required by national standards and the applicable standard of care," SAC ¶ 128, is wholly contradicted by the medical records and standards of care that the SAC relies on and incorporates. Contrary to the SAC's allegations, NaphCare did *not* use a "9-question instrument." The very medical records incorporated into the SAC confirm that NaphCare ***performed a 28-question Mental Health Screen***, on top of a 5-page Receiving Screen, 3-page TB Screening, and 4-page Physical Assessment. *See* Perez Decl., Ex. 1 at NAPH000045–50, 52–54, 60–68. The assessments NaphCare's employees performed with the assistance of these forms ***include all of the topics recommended*** by the ACA "Core Jail Standard 4C-09," which the SAC claims is the relevant standard of care. *Compare* Perez Decl., Ex. 3 (ACA Core Standard 4C-09) *with id.* Ex. 1 at NAPH000045–50, 52–54, 60–68; SAC ¶ 127. The SAC does not, and cannot, identify any flaw in NaphCare's comprehensive intake screening that could possibly establish any unconstitutional policy.[5]

***Second,*** this Court has already rejected Plaintiffs' vague assertion that NaphCare employs a "profit over care" model, SAC ¶¶ 16, 156.b, because "the general assertion 'profit over care' [does not] provide a policy, established practice, or custom in the abstract." *Smith v.*

---

[5] Though not relevant to this motion, discovery has borne out the inadequacy of this allegation. Plaintiffs' own expert confirmed that the screening NaphCare performed during Rapp's intake included all topics and questions recommended by the relevant standards. *See* Dkt. No. 157 at 15. This shows why amendments would be futile at this point, and the claim should be dismissed with prejudice prior to summary judgment.

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 8

161744296.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  *NaphCare Inc.*, No. 3:22-CV-05069, 2023 WL 2477892, at *4 (W.D. Wash. Mar. 13, 2023)

2  (Estudillo, J.) ("*Smith II*") (dismissing with prejudice the *Monell* claims against NaphCare).

3  Although the Court suggested that this case may be distinguishable because "plaintiffs alleged

4  NaphCare policies and established practices put profit before care by telling inmates they would

5  have to pay for any medical care found to be unnecessary and Dr. Sandack relied on Licensed

6  Practical Nurses (LPNs) to make her treatment decisions," *id.* at *4 n.3, even if those allegations

7  are taken as true they are not enough to state a claim. The SAC doesn't suggest that either

8  alleged action is in any way inconsistent with standard practice or the standard of care. SAC

9  ¶¶ 59, 73. Nor does the SAC allege any specific facts to indicate that Dr. Sandack's alleged

10  actions were pursuant to any written policy or "widespread" and "persistent" custom. *Id.* ¶ 73.[6]

11  The reasoning in *Smith II*, therefore, applies equally here.

12       ***Third***, the SAC confirms that Plaintiffs' assertions regarding NaphCare's implementation

13  of a "'buprenorphine taper' [Medication Assisted Treatment]," SAC ¶ 137, cannot establish a

14  constitutional violation. Although the SAC is hardly a model of clarity, Plaintiffs appear to

15  suggest that the buprenorphine taper (a medication for opioid withdrawal) constitutes an

16  unconstitutional "policy" because NaphCare required a COWS "score of '9' . . . to trigger it." *Id.*

17  ¶ 137. But the SAC itself precludes any such assertion by affirmatively stating that: (a)

18  NaphCare's decision to implement the buprenorphine taper at all ***enhanced "the traditional***

19  ***opiate detox protocol***" typically applied, *id.* (emphasis added); and (b) "***[t]he clinical indication***

20  ***for the introduction of buprenorphine therapy* . . . *is not related to a COWS score*,**" *id.* ¶ 136

21  n.14 (emphasis added). Plaintiffs' only suggestion to the contrary is the allegation that NaphCare

22  later voluntarily decided to lower the COWS threshold from 9 to 6. SAC ¶ 137. But any such

23  subsequent measure cannot establish "culpable conduct" as a matter of law, Fed. R. Evid. 407,

24

25

26

_____

[6] Even if these allegations were sufficient to identify a policy *in theory*, Plaintiffs would still fail to state a claim because the SAC does not allege any such policy was the "moving force" behind Rapp's injury. *See infra* § IV.B.3.

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 9

161744296.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  and cannot supply a constitutional deficiency that Plaintiffs are otherwise incapable of alleging.

2  In other words, that's not enough for *Monell* liability.

3      The SAC's remaining allegations state only that Rapp was treated "*per NaphCare*

4  *policy*," without alleging any "facts about the specific nature of the alleged policy, custom, or

5  practice" as *Monell* requires, and this Court's orders confirm. *French v. Pierce Cnty.*, No. 3:22-

6  CV-05079, 2022 WL 2317299, at *3 (W.D. Wash. June 28, 2022) (Estudillo, J.) (emphasis

7  added); *see also Chen v. D'Amico*, No. C16-1877, 2018 WL 1508909, at *4 (W.D. Wash. Mar.

8  27, 2018) ("A plaintiff's allegations 'may not simply recite the elements' of municipal liability

9  and instead must 'put forth additional facts regarding the specific nature' of the alleged policy

10 and its relationship to the alleged constitutional violation." (quoting *Hernandez*, 666 F.3d at

11 637)). For example:

12     ➢  Plaintiffs allege that "per NaphCare . . . policy and established practice, at no time
           was Nick screened by mental health staff or a mental health trained correctional
13         staff," SAC ¶ 130, but ***identify no policy or custom regarding mental health
14         screenings or the involvement of mental health staff***.

15     ➢  Plaintiffs allege that "per NaphCare policy, although Nick was receiving Librium
           as indicated by the CIWA, he was not reassessed every hour," *id.* ¶ 139, but
16         ***identify no policy or custom regarding the administration of CIWA and COWS
17         assessments***.

18     ➢  Plaintiffs allege that "NaphCare's policies and established practices . . . do not
           require mental health staff interaction under the circumstances of Nick's
19         confinement," *id.* ¶ 149, ***but identify no policy or custom regarding "mental
           health staff interaction*.**"
20

21     Under the most charitable reading, these allegations *at best* "merely stat[e] the subject to

22 which the policy relates (i.e. excessive force) [which] is insufficient" to state a claim. *French*,

23 2022 WL 2317299, at *3. Plaintiffs' "general[] alleg[ations that NaphCare] had policies and

   procedures that led to the denial of . . . medical care" cannot establish liability under *Monell*. *See*

24 *Rogers v. NaphCare, Inc.*, No. 2:20-CV-0467, 2023 WL 2763116, at *4 (E.D. Wash. Apr. 3,

25 2023) (granting summary judgment on *Monell* claim where plaintiff did "not point to a specific

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    written policy" or a "a particular unwritten policy or procedure or provide evidence of

2    Defendant's historical failures to treat inmates pursuant to an unwritten policy").

3          Moreover, even if Plaintiffs had sufficiently outlined the contours of some *hypothetical*

4    policy, custom, or practice, the SAC does not plead facts sufficient to allege that NaphCare

5    *actually maintained* any such policy, custom, or practice. The SAC does not allege NaphCare

6    had any relevant official policy; and it likewise fails to allege facts suggesting that any purported

7    NaphCare custom or practice was "so 'persistent and widespread' [that] it 'constitutes a

8    'permanent and well settled . . . policy.'" *Trevino*, 99 F.3d at 918.

9          That point is worth repeating: even if Plaintiffs had specified the policies purportedly at

10   issue, they have utterly failed to allege that the policies were persistent or widespread.

11         This Court has repeatedly dismissed similar Section 1983 claims brought by Plaintiffs'

12   counsel based on precisely this defect. *See Smith II*, 2023 WL 2477892, at *4 ("Plaintiffs also

13   cite nine incidents in other NaphCare facilities as evidence of a widespread or persistent custom.

14   But the examples Plaintiffs cite do not involve similar circumstances."); *Smith I*, 2022 WL

15   2983942, at *8 ("The FAC fails to provide factual allegations for how many of these practices or

16   customs were so persistent and widespread that they were well settled policy of the Jail."). Those

17   holdings are consistent with other decisions from courts in this District, all of which compel

18   dismissal here:

19         ➤ *Burghart v. S. Corr. Entity*, No. C22-1248, 2023 WL 1766258, at *5 (W.D. Wash.

20              Feb. 3, 2023) (dismissing Section 1983 claim against NaphCare because

21              "[a]lthough 'persistent' and 'widespread' instances of conduct can evince an

22              official policy, the conduct at issue in this case is neither 'persistent' nor

23              'widespread' enough to form the basis of *Monell* liability").

24         ➤ *French*, 2022 WL 2317299, at *3 ("Plaintiff here has provided no factual

25              allegations to support either that a policy or custom exists or that there is an

26              unwritten policy or custom so persistent and widespread that it constitutes a

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  permanent and well settled practice. . . . Plaintiff cannot rely solely on conclusory

2  allegations without supporting factual allegations.").

3  ➤ *Greenwood v. Pierce Cnty.*, No. C21-5874, 2022 WL 7142889, at *3–4 (W.D.

4  Wash. Aug. 26, 2022) (dismissing Section 1983 claim against municipality

5  because plaintiff failed to allege any widespread policy or practice of failing to

6  adequately respond to requests for medical care).

7  ➤ *Chen*, 2018 WL 1508909, at *4 ("Plaintiffs fail to sufficiently allege facts from

8  which the court can reasonably infer a municipal policy, custom, or practice. . . .

9  Their complaint alleges only that 'customs, longstanding practices, and official

10  policies caused the deprivation of Plaintiffs' constitutional rights.' . . . That

11  formulaic recitation falls far short of the pleading standard." (citations omitted)).

12  Indeed, Plaintiffs' only attempt to establish a "pattern" of conduct in this case, relies on

13  the same "nine incidents in other NaphCare facilities" that this Court already found insufficient

14  as a matter of law in *Smith. Compare* SAC ¶¶ 157(a)–(i) *with Smith, et al. v. NaphCare, Inc.*, et

15  al., C22-5069, Dkt. No. 77 at ¶ 77(a)–(i) (W.D. Wash. Mar. 13, 2023). As the Court recognized,

16  "the examples Plaintiffs cite do not involve similar circumstances" and cannot allege a

17  "widespread or persistent custom." *Smith II*, 2023 WL 2477892, at *4. The same is true here.

18  Plaintiffs' attempt to rely on these scattered incidents also fails because they merely show

19  that other plaintiffs have *alleged* the existence of certain customs, not that NaphCare *actually*

20  *maintained* any such custom. One of the cited cases affirmatively dismissed Section 1983 claims

21  against NaphCare. *O'Neal v. Las Vegas Metro. Police Dep't*, No. 217CV02765, 2020 WL

22  8614249, at *3 (D. Nev. Nov. 3, 2020), *report and recommendation adopted*, No. 217CV02765,

23  2021 WL 666959 (D. Nev. Feb. 19, 2021) (granting case terminating sanctions).[7] Plaintiffs'

24  vague references to inmates in Alabama, Ohio, and Texas are both unrelated to Rapp's claims

25

26  _____

[7] The SAC cites an earlier motion to dismiss from *O'Neal*. SAC ¶ 157.e (citing *O'Neal v. Las Vegas Metro. Police Dep't*, No. 217CV02765, 2018 WL 4088002, at *4 (D. Nev. Aug. 27, 2018)).

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 12

161744296.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   and too indefinite to carry Plaintiffs' burden. SAC ¶¶ 157(g)–(i). And the remaining cases

2   concerned pretrial motions, none of which actually hold that NaphCare maintained

3   unconstitutional policies, and **all of which were dismissed with prejudice and without any**

4   **finding of fault**. *See Dawson v. S. Corr. Entity et al.*, No. C19-1987, Dkt. No. 257 (W. D. Wash.

5   April 18, 2022); *Bruins v. Osborn et al.*, No. C15-324, Dkt. No. 67 (Nev. April. 19, 2017);

6   *Brown v. Clark Cnty. Det. Ctr.*, No. C15-1670, Dkt. No. 164 (Aug. 23, 2018); *Cheek v. Nueces*

7   *Cnty.*, No. C13-26, Dkt. No. 151 (S. D. Tex. Mar. 24, 2015).

8          This smattering of pretrial allegations concerning different facilities and distinct facts

9   cannot prop up Plaintiffs' allegations in this case. *See, e.g., Sweiha v. Cnty. of Alameda*, No. 19-

10  CV-03098, 2019 WL 4848227, at *5 (N.D. Cal. Oct. 1, 2019) (rejecting plaintiff's attempt to

11  rely on "other lawsuits" to establish *Monell* liability where the other suits were based on

12  "markedly different facts"); *cf. Hyer v. City & Cty. of Honolulu*, CV 19-00586, 2021 WL

13  2172816, at *10 (D. Haw. May 27, 2021) (dismissing *Monell* claim where plaintiff failed to

14  identify examples of "*successful* . . . lawsuits filed before the incident") (emphasis added).

15         Moreover, even if Plaintiffs *had* identified a handful of similar alleged policies in other

16  cases—they have not—this would still be insufficient because "[l]iability for improper custom

17  may not be predicated on isolated or sporadic incidents" but "must be founded upon practices of

18  sufficient duration, frequency and consistency that the conduct has become a traditional method

19  of carrying out policy." *Trevino*, 99 F.3d at 918.; *see also Burghart*, 2023 WL 1766258, at *5

20  (four comparable allegations at same facility was not enough to allege a custom or policy);

21  *Rogers*, 2023 WL 2763116, at *5 ("two incidents [are] insufficient to establish custom") (citing

22  *Meehan v. Cty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988)); *Smith I*, 2022 WL 2983942

23  at *8 (one other incident of similar harm was insufficient to allege a custom that is "persistent

24  and widespread").

25         The only specific facts that Plaintiffs allege relate to Rapp's own medical care. But even

26  accepting these allegations as true, they cannot establish liability against NaphCare because

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  "[m]ere proof of a single incident of errant behavior is a clearly insufficient basis for imposing

2  liability" under *Monell*. *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989); *see*

3  *also Rogers*, 2023 WL 2763116, at *5 (an inmate's "isolated experiences cannot serve as the

4  basis for § 1983 liability"); *Saved Magazine*, 19 F.4th at 1201; *Canyon Props.*, 2020 WL

5  639412, at *3. Permitting an inference of an entity policy based solely on alleged "isolated

6  misconduct of a single, low-level [employee] . . . would amount to permitting precisely the

7  theory of strict *respondeat superior* liability rejected in *Monell*." *City of Oklahoma City v. Tuttle*,

8  471 U.S. 808, 831, (1985) (Brennan, J., concurring).

9         If Plaintiffs were capable of identifying a purported policy, custom or practice to support

10  their *Monell* claim, they would have done so by now. Instead, despite Plaintiffs' three attempts,

11  the SAC remains devoid of any such allegation. The Court should, therefore, dismiss Plaintiffs'

12  *Monell* claim against NaphCare with prejudice.

13                    **2.      Plaintiffs fail to allege deliberate indifference.**

14         Even if Plaintiffs plausibly alleged a relevant policy, custom, or practice, their *Monell*

15  claim still should be dismissed because Plaintiffs fail to allege that any policy rose to the level of

16  deliberate indifference to Rapp's Fourteenth Amendment rights. *See Dougherty*, 654 F.3d at 900.

17  "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor

18  disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. "Merely

19  alleging that Defendants acted with deliberate indifference is conclusory and does not show that

20  the alleged deficiencies were obvious and the constitutional injury was likely to occur." *Herd v.*

21  *Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1168 (C.D. Cal. 2018) (citations and quotations

22  omitted) (collecting cases); *see also Rogers*, 2023 WL 2763116, at *5 (the "high standard for

23  deliberate indifference" requires that "Defendant knew its practices led to constitutional rights

24  violations and deliberately disregarded the effects of those practices").

25         Outside of its boilerplate recitation that NaphCare acted with "deliberate indifference,"

26  *see, e.g.*, SAC ¶ 198, the SAC does not include any factual allegations showing that NaphCare

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 14

161744296.1

1    "disregarded a known or obvious consequence" of its actions, *Brown*, 520 U.S. at 410. The SAC

2    does not, for example, allege "a prior pattern of similar constitutional violations" resulting from

3    any of NaphCare's alleged policies, *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236

4    (7th Cir. 2021), which could put NaphCare on notice of the unconstitutional consequences of its

5    policy, such that its "continued adherence" to the policy might constitute deliberate indifference,

6    *Brown*, 520 U.S. at 407.

7        While the SAC alleges that "two suicides" occurred in 2019 at the Jail, SAC ¶ 158.a, it

8    provides no details about these alleged suicides that could suggest they are in any way related to

9    the allegations in this lawsuit, such that they could put NaphCare on notice of the consequences

10   of any alleged policy. And, again, the SAC's reference to "nine incidents in other NaphCare

11   facilities . . . do not involve similar circumstances," and are insufficient. *Smith II*, 2023 WL

12   2477892, at *4; *see also Sweiha*, 2019 WL 4848227, at *4 (rejecting argument that other

13   lawsuits based on "markedly different facts" could establish deliberate indifference). The Court

14   should, therefore, dismiss Plaintiffs' *Monell* claim against NaphCare.

15               **3.**     **Plaintiffs do not allege any policy or custom was the "moving force"**
16                          **behind Rapp's suicide.**

17       Plaintiffs' *Monell* claim fails for the independent reason that Plaintiffs have not alleged

17   any NaphCare policy or custom was the "moving force" behind Rapp's alleged constitutional

18   injury. *Brown*, 520 U.S. at 404. This requires "a direct causal link between the municipal action

19   and the deprivation of federal rights." *Id.* Here, Plaintiffs fail to plead a causal link between any

20   purported NaphCare policy and Rapp's alleged Fourteenth Amendment injury.

21       ***First***, Plaintiffs allege that "[c]onsistent with NaphCare's . . . policies and established

22   practices, Nick simply did not get opioid treatment of any type while incarcerated at the Kitsap

23   County Jail," SAC ¶ 136, but ***do not allege that Rapp warranted any such treatment***. To the

24   contrary, the SAC states that such treatment is only appropriate on a diagnosis of "opioid use

25   disorder," *id.* ¶ 136 n.14, but does not allege that NaphCare diagnosed Rapp with that condition

26

1    or was aware of any prior diagnosis. And Plaintiffs concede that Rapp's medical records

2    evidence at most mild withdrawal symptoms. *Id.* ¶¶ 54.b, 55, 61, 77, 93, 97.

3         For the same reason, Plaintiffs' allegation that NaphCare "relied on LPNs to . . . make

4    independent assessment and treatment decisions," *id.* ¶ 73, cannot establish liability:  the SAC

5    fails to suggest Rapp should have received any alternative treatment, such that this purported

6    reliance could have caused his injury. That failure also renders insufficient Plaintiffs' assertion

7    that Rapp was "informed that if he wanted any further medical or mental health assistance, he

8    would have to pay for it," *id.* ¶ 55—which also fails for the independent reason that the SAC

9    shows that Rapp ***did affirmatively request treatment***, belying any suggestion that he avoided

10   doing so because of the alleged communication, *id.* ¶¶ 76, 93, 136.

11        ***Second***, Plaintiffs allege that: "per NaphCare policy" NaphCare did not perform CIWA

12   assessments every hour, but do not allege any facts to suggest that further withdrawal

13   assessments ***would have made any difference***. To the contrary, the SAC confirms that over the

14   course of Rapp's confinement, his CIWA scores were consistently low, and that Rapp received

15   the appropriate medication for those scores. SAC ¶¶ 54.a, 55, 57, 61, 77, 93, 97, 138.

16        ***Third***, Plaintiffs allege that "per NaphCare . . . policy and established practice, at no time

17   was Nick screened by mental health staff or a mental health trained correctional staff," *id.* ¶ 130,

18   but do not allege that Rapp should have been screened by this staff. To the contrary, Plaintiffs

19   concede Rapp was screened by medical staff—Nurse McCleary, *id.* ¶ 49—which complies with

20   the same NCCHC guidelines that Plaintiffs repeatedly cite and rely on throughout the SAC.

21   Specifically, those guidelines state that "***where health staff are available, it is expected that they***

22   ***conduct the initial screening***." *See* Perez Decl., Ex. 2 (NCCHC Standard J-E-02) (emphasis

23   added). And while Plaintiffs attempt to fault NaphCare for not having "mental health trained

24   correctional staff" conduct the screening, the guidelines are clear that "health-trained correctional

25   staff" ***should only be used "when health staff are not on duty."*** *Id.* (emphasis added).

26

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    ***Fourth***, Plaintiffs allege that "NaphCare's policies and established practices . . . do not

2    require mental health staff interaction under the circumstances of Nick's confinement and with

3    Nick's medical and mental health issues," SAC ¶ 149, but fail to allege that any such interaction

4    was warranted. To the contrary, Plaintiffs only allege that mental health staff should review an

5    inmates' mental health record "[o]n notification that an inmate is placed in segregation," *id.*

6    ¶ 148, but they concede that Rapp was assigned to "general population," not segregation, *id.*

7    ¶ 144.

8         Because the SAC fails to plausibly allege that NaphCare's policies were the moving force

9    behind Rapp's alleged Fourteenth Amendment violations, the Court should dismiss Plaintiffs'

10   Section 1983 claim against NaphCare. *See, e.g.*, *Akshar Glob. Invs. Corp. v. City of Los Angeles*,

11   817 F. App'x 301, 305 (9th Cir. 2020) ("The failure to allege facts suggesting a causal relationship

12   between any policy described in the SAC and the Fourth Amendment deprivations . . . is fatal

13   because the City is only liable when it can be fairly said that the [C]ity itself is the wrongdoer."

14   (citations and internal quotations omitted)); *Smith I*, 2022 WL 2983942, at *7 (dismissing *Monell*

15   claim because "Plaintiffs put forth numerous policies without supporting factual allegations

16   [showing] how the policies are the moving force behind the constitutional violations.").

17            **4.      Plaintiffs do not allege NaphCare is liable for ratification or failure to
                      train.**

18

19        Though Plaintiffs, in a few cursory asides, purport to allege "ratification" and failure to

20   train theories of liability against Kitsap County, they make no comparable allegations against

21   NaphCare. Even if Plaintiffs could somehow convince the Court to construe the SAC to state any

22   such claim against NaphCare, it would necessarily be inadequate. Any ratification theory fails

23   because the SAC at best evidences a "mere failure to overrule a subordinate's actions, [which]

24   without more, cannot support a claim." *Smith II*, 2023 WL 2477892, at *5. And any failure to

25   train theory fails because "Plaintiffs do not allege any facts about how NaphCare employees are

26   trained nor about how NaphCare decisionmakers knew the training programs were deficient." *Id.*

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   The SAC's *only* allegation concerning any aspect of NaphCare's training relates to NaphCare's

2   introduction of a buprenorphine taper for certain patients. SAC ¶ 137. But those allegations not

3   only lack the requisite detail but, again, cannot establish liability because the SAC concedes that

4   Rapp was *not eligible for a buprenorphine taper*, such that any purported lack of training could

5   have affected his treatment. *Id.*; *see also supra* § IV.B.3.

6       **C.    The Court Should Dismiss Plaintiffs' Section 1983 Claim With Prejudice**

7           Plaintiffs' third attempt to plead a viable *Monell* claim should be its last. Dismissal

8   without leave to amend is appropriate when an amended complaint fails to cure pre-existing

9   deficiencies, or "[w]here it is clear that a complaint 'could not be saved by any amendment.'"

10  *Hover v. Seattle-First Nat'l Bank*, No. C18-0022, 2018 WL 1695403, at *2 (W.D. Wash. Apr. 6,

11  2018) (quoting *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d

12  963, 972 (9th Cir. 2010)); *Young v. Dep't of Corr.,* No. C05-5819, 2007 WL 703133, at *3

13  (W.D. Wash. Mar. 2, 2007); *see also San Leandro Emergency Med. Grp. Profit Sharing Plan v.

14  Philip Morris Companies, Inc.*, 75 F.3d 801, 815 (2d Cir. 1996) (affirming dismissal with

15  prejudice where "the District Court had already granted plaintiffs the right to amend their

16  complaint once" and amendment would not cure the pleading's deficiencies).

17          Discovery is closed, and Plaintiffs have long had access to NaphCare's policies. If

18  Plaintiffs were capable of making out the bare elements of their *Monell* claim, they would have.

19  Their persistent failure to do so confirms any amendment would be futile. The Court should,

20  therefore, dismiss Plaintiffs' Section 1983 claim against NaphCare with prejudice.

21                          **V.    CONCLUSION**

22          The Court should GRANT NaphCare's Motion for Partial Judgment on the Pleadings and

23  DISMISS Plaintiffs' Section 1983 claim against NaphCare with prejudice.

24

25

26

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 18

161744296.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DATED: April 6, 2023

I certify that this memorandum contains 6,408 words, in compliance with the Local Civil Rules.

s/ David A. Perez, WSBA No. 43959
s/ Elvira Castillo, WSBA No. 43893
s/ Ian Rogers, WSBA No. 46584
s/ Stephanie Olson, WSBA No. 50100
s/ Juliana Bennington, WSBA No. 60357
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000
E-mail: Dperez@perkinscoie.com
E-mail: Ecastillo@perkinscoie.com
E-mail: Irogers@perkinscoie.com
E-mail: Solson@perkinscoie.com
E-mail: JBennington@perkinscoie.com

*Attorneys for Defendants NaphCare, Inc., Odessa McCleary, LaDusta Haven, Erica Molina, and Alanna Sandack*

NAPHCARE'S MOTION FOR PARTIAL JUDGMENT
ON THE PLEADINGS – 19

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

161744296.1