UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN RAPP et al., <br><br>           Plaintiffs, <br>      v. <br><br>NAPHCARE, INC. et al., <br><br>           Defendants. | CASE NO. 3:21-cv-05800-DGE <br><br>ORDER GRANTING MOTION FOR SANCTIONS (DKT. NO. 91) |

## I    INTRODUCTION

This matter comes before the Court on Plaintiffs' motion for sanctions pursuant to Federal Rule of Civil Procedure 37(e).  (Dkt. No. 91.)  After reviewing the parties' briefing and the remainder of the record, the Court GRANTS Plaintiffs' motion and ENTERS DEFAULT JUDGMENT against Defendant Kitsap County.

## II    BACKGROUND

The Court briefly recounts the factual and procedural background of this case relevant to this motion.

ORDER GRANTING MOTION FOR SANCTIONS (DKT. NO. 91) - 1

Nicholas Rapp ("Mr. Rapp") was arrested by Kitsap County Sheriff's deputies on the evening of December 31, 2019, after getting into an argument with his partner Megan Wabnitz. (Dkt. No. 63 at 16.)  Mr. Rapp, who had a history of mental illness and drug abuse, was taken to Kitsap County Jail and booked into jail that same night. (*Id.* at 17.)  While in jail, Clinical Institute Withdrawal Assessment for Alcohol ("CIWA") and Clinical Opiate Withdrawal Score ("COWS") assessments were initiated to evaluate Mr. Rapp for alcohol and opioid withdrawal. (Dkt. No. 89-1 at 260.)  Mr. Rapp was housed in Central A Unit to permit medical officials to monitor him as he went through detox. (*Id.* at 129.)

According to his medical records, Mr. Rapp underwent COWS and CIWA assessments by nursing staff at approximately 12:25AM on January 1, 2020. (*See* Dkt. No. 159 at 7–12.)  Mr. Rapp's medical records indicate subsequent CIWA and COWS assessments at around 2:35 AM, 10:49 AM, 2:52 PM, and 10:47 PM on January 1. (*Id.* at 14–28.)  The medical records also document that Nurse Ripsy Nagra ("Ms. Nagra") performed additional COWS and CIWA assessments at 10:39 AM on January 2. (*Id.* at 30–34.)

At approximately 1:42 PM on January 2, Correctional Officer Merile Montgomery discovered Mr. Rapp on the floor of his cell, "ashen in color" and with his mattress cover tied around his neck. (Dkt. No. 89-1 at 141.)  Officer Montgomery called for backup. (*Id.*)  Additional correctional officers arrived at the scene and began performing CPR and using an automatic external defibrillator ("AED"). (*Id.* at 142–43.)  Officers were able to generate a pulse and Mr. Rapp was transported to Tacoma Medical Hospital. (*Id.* at 145.)  Mr. Rapp was ultimately taken off life support on January 9, 2020. (*Id.* at 146.)

After Mr. Rapp's suicide, the Kitsap County Sheriff's Office "asked the Kitsap Critical Incident Response Team ("KCIRT") . . . to perform an independent investigation of Nicholas

Rapp's death." (Dkt. No. 110 at 3.)  Lieutenant Keith Hall, a corrections officer tasked with managing the Kitsap County Jail's surveillance system, was charged with responding to KCIRT requests for surveillance videos.  (*Id.*)  According to Lieutenant Hall, KCIRT sought videos from January 2, 2020, as well as video footage related to Mr. Rapp's parents visit to the jail on January 1, 2020.  (*Id.* at 3–4.)  Lieutenant Hall was not asked by KCIRT to produce other videos from January 1, 2020.  (*Id.* at 4.)

Plaintiffs emailed and faxed litigation preservation letters to the Kitsap County's Sheriff's Office and Prosecutor's Office on January 17, 2020.  (*See* Dkt. No. 179-1.)  These letters specifically requested Kitsap County preserve "[a]ll video/audio footage of Mr. Rapp while in custody, both while alive and deceased." (*Id.* at 2.)  The letters further requested "all materials related to the arrest, prosecution, incarceration, medical treatment, and death of Nicholas Winton Rapp must be preserved and left unedited and unredacted for future litigation." (*Id.* at 3.)  Kitsap County was therefore on notice on January 17th, 2020, of its obligation to preserve evidence relevant to Mr. Rapp's suicide.  *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) ("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.").  According to Lieutenant Hall, the Kitsap County Jail maintained a 60-day retention policy for video recordings in the jail (Dkt. No. 89-1 at 935), so the videos were still available to the County on the date this request was sent.

Once the Kitsap County Sheriff's Office received these litigation preservation letters, Lieutenant Hall determined, apparently unilaterally, that the relevant "event" for purpose of information preservation was Mr. Rapp's suicide.  (Dkt. No. 110 at 4.)  Lieutenant Hall then reviewed Mr. Rapp's inmate log to determine Mr. Rapp's location during the entire time he was

detained at the jail. (*Id.* at 5.) Lieutenant Hall decided that because the surveillance cameras purportedly could not capture images of inmates while in their cells[1] and because inmates in Central A Unit were on lockdown (e.g., could not leave their cells) during the afternoon of January 1st, the surveillance video from the afternoon and evening of January 1st "would not capture any footage of Mr. Rapp." (*Id.* at 6.) However, Lieutenant Hall did not "personally watch all footage captured during Mr. Rapp's incarceration." (*Id.*) 11 hours of video of Central A Unit from 12:59 PM to 11:59 PM on January 1, 2020, were ultimately deleted pursuant to Kitsap County's data retention policies. (Dkt. No. 89-1 at 963.)

Plaintiffs filed their lawsuit on October 28, 2021. (Dkt. No. 1.) As part of their initial requests for production, Plaintiffs requested:

> **REQUEST FOR PRODUCTION NO. 1:** Produce all documents and materials that mention, reference, or relate to Nicholas Rapp, including jail records, medical records, any kind of form or report, photos, texts, e-mails, social media messages, diaries, notes, memos, or any other printed or electronically stored information. If any such materials once existed but have been deleted, misplaced, or erased, please describe what once existed with as much particularity as you can and state when the material was deleted, discarded, or lost.

(Dkt. No. 89-1 at 515.) To which Kitsap County responded:

> RESPONSE: Objection. Request contains undefined and/or vague terms (to wit: "relate to") and cannot be responded to without clarification. In addition, request is overly broad, and is not reasonably calculated to lead to the recovery of admissible evidence; it is unduly burdensome in that it seeks records which can be derived within the possession of the examining party or which can be derived with substantially the same burden by either the examining or responding party. To the extent this request seeks information regarding the provision of health and mental health care services to Nicholas Rapp at the jail, it is better directed to Naphcare.

---

[1] The Court is compelled to point out, based on its review of the record, that it is possible to see at least portions of individuals in their cells through the cameras at issue and Lieutenant Hall also acknowledges the same in his affidavit. (*See* Dkt. Nos. 94 at 130; 110 at 2.)

ORDER GRANTING MOTION FOR SANCTIONS (DKT. NO. 91) - 4

> Without waving the foregoing objection, defendant Kitsap County responds as follows:
>
> See KCSO records provided herein as Bates No. Rapp - 1st RFPs to KC – 00001 to 01040. Also see jail videos and calls provided herein.

(*Id.*)

Kitsap County did not mention in its response to the Request for Production that 11 hours of video of Central A Unit had been deleted. In mid-August 2022, approximately five months after Kitsap County served its initial responses to Plaintiffs' requests for production, Plaintiffs reached out to Kitsap County seeking recordings from Central A Unit for the afternoon and evening of January 1, 2020. (*Id.* at 536–37.) On August 16, 2020, Kitsap County confirmed they did not have video of Central A Unit from 1:00 PM to 11:59 on January 1, 2020. (*Id.* at 535.)

Plaintiffs filed their motion for sanctions against Kitsap County on December 8, 2022. (Dkt. No. 91.) Kitsap County filed their response in opposition to the motion on December 19, 2022 (Dkt. No. 108) and Plaintiffs filed their reply on December 23, 2022 (Dkt. No. 116). On April 18, 2023, the Court asked Plaintiffs and Kitsap County to provide potential adverse evidentiary jury instructions to assist its analysis of the sanctions motion. (Dkt. No. 176.) On April 24, 2023, Plaintiffs and Kitsap County filed its supplemental adverse evidence jury instruction. (Dkt. Nos. 180, 182.) NaphCare filed supplemental responses to the adverse evidentiary jury instructions on May 2, 2023. (Dkt No. 190.)

### III   DISCUSSION

Plaintiffs move for sanctions under Federal Rule of Civil Procedure 37(e) against Kitsap County, alleging Kitsap County failed to preserve video from Central A Unit, where Mr. Rapp was jailed, from 12:59pm to midnight on January 1, 2020. (Dkt. No. 91 at 2–4.)

**A. Legal Standard**

A party "engage[s] in spoliation of documents as a matter of law only if they had 'some notice that the documents were potentially relevant' to the litigation before they were destroyed." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (quoting *Akiona v. United State*s, 938 F.2d 158, 161 (9th Cir. 1991)).  The Court may issue sanctions for spoliation based on its own inherent authority or by virtue of Rule 37. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  Rule 37(e), which deals with sanctions for failure to preserve electronically stored information ("ESI"), provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

The party seeking sanctions under Rule 37(e) needs to establish "(i) the evidence at issue qualifies as ESI, (ii) the ESI is 'lost' and 'cannot be restored or replaced through additional discovery,' (iii) the offending party 'failed to take reasonable steps to preserve' the ESI, and (iv) the offending party was under a duty to preserve it." *Hunters Cap., LLC v. City of Seattle*, No. C20-0983 TSZ, 2023 WL 184208, at *6 (W.D. Wash. Jan. 13, 2023) (internal citations omitted).

Rule 37(e) permits terminating sanctions "only when the party who lost the information 'acted with the intent to deprive another party of the information's use in the litigation.' A finding of intent . . . eliminates the requirement that the opposing party be prejudiced by the

spoliation." *OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 371–72 (D. Or. 2017). "Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to keep incriminating facts out of evidence." *Est. of Hill by & through Grube v. NaphCare, Inc.*, No. 2:20-CV-00410-MKD, 2022 WL 1464830, at *11 (E.D. Wash. May 9, 2022) (quoting *Colonies Partners, L.P. v. Cty. of San Bernardino*, No. 518CV00420JGBSHK, 2020 WL 1496444, at *9 (C.D. Cal. Feb. 27, 2020)).

### B.  Whether Kitsap County Spoliated Evidence

Neither party disputes that 11 hours of videotape of Central A Unit from January 1, 2020, has been deleted and there is no way to replace it.  (*See* Dkt. No. 89-1 at 535.)  Kitsap County also does not dispute it was on notice of an obligation to preserve evidence upon receiving Plaintiffs' litigation preservation letters nor does it dispute it was under an obligation to "preserve video evidence depicting the events of and immediately surrounding Mr. Rapp's suicide."  (Dkt. No. 108 at 12.)  Instead, Kitsap County asserts it intentionally did not retain the video at issue because Lieutenant Hall did not believe the video at issue was relevant to Plaintiffs' requests.  (Dkt. No. 110 at 4–6.)  Kitsap County argues it did preserve all evidence it was obligated to preserve—e.g., what was proportional and relevant to the case from its perspective.  (Dkt. No. 108 at 11–12.)  While a party need not preserve every last document in anticipation of litigation, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).

The Court finds Kitsap County did not take reasonable steps to preserve evidence relevant to this litigation. In his 30(b)(6) deposition, Lieutenant Hall testified as follows:

> Q. Are you aware of any written records, any instructions, anything like that, that was given to anybody, emails or anything, in connection with deciding what to preserve and what not to preserve as far as video retention of Mr. Rapp?
> A. Not that I'm aware of.
> Q. Were you given any instructions, any written instructions, any emails about what to preserve and what to allow to expire with regard to video of Mr. Rapp?
> A. Other than the PRA, no.
> Q. Were you given any verbal instructions by any supervisors in regard to what portions of video of Mr. Rapp to preserve and what to allow to expire?
> A. No.

(Dkt. No. 89-1 at 961.) [1]

The Court notes, with astonishment, that Lieutenant Hall was apparently solely responsible for determining what videos were or were not responsive to Plaintiffs' litigation preservation letter.[2]  Kitsap County has provided no other evidence or assertions to the Court about what role counsel played in the document preservation process in the aftermath of Mr. Rapp's suicide.  "Since at least 2006, counsel have been required to take an active, affirmative role in advising their clients about the identification, preservation, collection, and production of ESI."  *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 927 (N.D. Ill. 2021).  The Court cannot find Kitsap County acted reasonably when it took no steps to implement what have long been considered standard ESI preservation practices.[3]  *See, e.g.*, *Scalia v. KP Poultry, Inc.*, No. CV193546TJHPLAX, 2020 WL 6694315, at *5 (C.D. Cal. Nov. 6, 2020).

### C. Intent to destroy evidence.

---

[2] In his affidavit, Lieutenant Hall does not reference whether counsel for Kitsap County was involved in determining which documents and videos were relevant to Plaintiffs' litigation preservation letter, or whether they advised their clients of their obligations to preserve relevant evidence.  (*See generally* Dkt. No. 110.)

[3] The Court cautions counsel to review their ESI obligations for future practice. *See* Joshua C. Gillil and Thomas J. Kelley, *Modern Issues in E-Discovery*, 42 CREIGHTON L. REV. 505, 513 (2009) ("[I]f you know you are being sued and you do not turn off your auto-delete procedure, you are not acting in good faith.")

ORDER GRANTING MOTION FOR SANCTIONS (DKT. NO. 91) - 8

Having found that Kitsap County was a under a duty to preserve evidence and that it failed to take reasonable steps to preserve such evidence, the Court must now determine whether the destruction of the 11 hours of videotape was intentional.  *See Est. of Hill*, 2022 WL 1464830, at *11–12.  "Only upon a finding of intent may the Court impose severe sanctions such as an adverse-inference instruction or default judgment." *Hunters Cap.*, 2023 WL 184208, at *8.

Kitsap County asserts there is no evidence it acted with "with a culpable state of mind in not preserving such evidence." (Dkt. No. 108 at 13.)  According to Kitsap County, "[e]ven if Lt. Hall might have been ultimately mistaken, there is no evidence he acted with intent to deprive Plaintiffs of information." (*Id.* at 14.)

"Although direct evidence of such intent is always preferred, a court can find such intent from circumstantial evidence." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 339 (D. Ariz. 2022).  Courts have inferred an intent to destroy evidence where parties were willfully ignorant of their obligations to preserve evidence.  *See, e.g.*, *Kelley as Tr. of BMO Litig. Tr. v. BMO Harris Bank N.A.*, No. 19-CV-1756 (WMW), 2022 WL 2801180, at *6 (D. Minn. July 18, 2022) ("[W]illful ignorance despite a duty to preserve evidence can be indicative of a party's bad-faith intent.").

Here, there is no doubt that Lieutenant Hall intentionally did not preserve the 11 hours of videotape at issue—Lieutenant Hall admits as much.  (*See* Dkt. No. 110 at 6) (noting that "I did not preserve video footage from 12:59 p.m. through midnight on January 1, 2020.")  The closer question is whether such conduct may be construed as intended "to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).  "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Leon*, 464 F.3d at 959; *see also Est. of*

*Hill*, 2022 WL 1464830, at *11 (explaining that intent may be inferred where party is on notice of documents' potential relevance to anticipated litigation). Lieutenant Hall was certainly on notice of the video's potential relevance to anticipated litigation—he acknowledged the Sheriff's Office received Plaintiffs' litigation preservation letter and that he "was tasked with identifying and preserving responsive videos." (Dkt. No. 110 at 4.)[4]

      The totality of the circumstances suggest it is appropriate to infer Lieutenant Hall, and by extension Kitsap County, intended to deprive Plaintiffs of the 11 hours of videotape from January 1, 2020. As discussed, Lieutenant Hall was aware at the time of his review of the relevant videos that Plaintiffs had requested the preservation of "all materials related to the arrest, prosecution, incarceration, medical treatment, and death of Nicholas Winton Rapp." (Dkt. No. 110 at 4.) Lieutenant Hall appears to have been solely responsible for determining which video was relevant to both Plaintiffs' preservation request and the concurrent public records act request. (Dkt. No. 89-1 at 967–68.) Counsel for the Sheriff's Office does not appear to have issued a litigation hold notice after receiving Plaintiffs' litigation preservation letter and did not provide Lieutenant Hall with any guidance as to what materials should be preserved. (*Id.* at 961.) Lieutenant Hall testified it would be standard operating procedure to preserve all video that Mr. Rapp appeared on during his confinement. (*Id.* at 947–48.) Lieutenant Hall also asserts that he did not review any of the eleven hours of video at issue. (*Id.* at 967) ("Q. So in making the determination whether or not to allow that 11 hours to expire, is it your testimony that the video was not reviewed? A. I did not review it.").

---

[4] The Court also notes this was the second suicide at Kitsap County Jail in under a year, a fact which suggests Kitsap County should have been aware of the potential importance of retaining video evidence in the instant case. *See Smith v. NaphCare Inc.*, No. 3:22-CV-05069-DGE, 2023 WL 2477892, at *2 (W.D. Wash. Mar. 13, 2023).

ORDER GRANTING MOTION FOR SANCTIONS (DKT. NO. 91) - 10

These series of missteps go well beyond gross negligence and permit the Court to infer an intent to deprive Plaintiffs of this video evidence. *Cf. Laub v. Horbaczewski*, No. CV 17-6210-JAK (KS), 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020) (noting relevant factors to consider when determining intent include "the timing of the destruction, the method of deletion (e.g., automatic deletion vs. affirmative steps of erasure), selective preservation, the reason some evidence was preserved, and, where relevant, the existence of institutional policies on preservation."). The Court therefore finds Kitsap County deleted the video at issue with the intent to deprive Plaintiffs of access to it.

### D. Video Relevance.

Kitsap County asserts sanctions aren't warranted because Plaintiffs have failed to demonstrate the missing evidence would support Plaintiffs' claims. (Dkt. No. 108 at 14.)

Spoliation of evidence raises a presumption that the evidence relates to the merits of the case and was adverse to the party that destroyed it. *Jerry Beeman & Pharmacy Servs., Inc. v. Caremark Inc.*, 322 F. Supp. 3d 1027, 1037 (C.D. Cal. 2018). "[A]n offending party cannot assert a 'presumption of irrelevance' as to destroyed material because the relevance of destroyed documents 'cannot be clearly ascertained.'" *Hunters Cap.*, 2023 WL 184208, at *8; *see also Stedeford v. Wal-Mart Stores, Inc.*, No. 214CV01429JADPAL, 2016 WL 3462132, at *8 (D. Nev. June 24, 2016) ("A party guilty of intentional spoliation 'should not easily be able to excuse the misconduct by claiming' that the spoliated evidence was of 'minimal import.'")

The Court agrees with Plaintiffs that evidence that Mr. Rapp's COWS and CIWA assessments in the afternoon and evening of January 1, 2020, were not actually performed would be highly relevant to this case. Both parties acknowledge (and the Court has confirmed through review of the record), that the times listed on Mr. Rapp's medical records do not actually reflect

the actual time in which a medical assessment was performed.  (*See* Dkt. Nos. 91 at 3; 180 at 3.)  Indeed, in one instance a CIWA was recorded more than two hours after it was actually performed.  (Dkt. Nos. 89-1 at 287; 159 at 18–20; 180 at 3.)  Plaintiffs' experts have also testified alcohol withdrawal and opiate withdrawal are both known suicide risk factors.  (See Dkt. No. 158-15 at 17–18.)  Failure to administer the COWS and CIWA assessments, and by extension to identify potential withdrawal symptoms that Mr. Rapp was undergoing, would reasonably be relevant to Plaintiffs' claims.

The Court finds Kitsap County has failed to rebut the presumption that the deleted videos are relevant to Plaintiffs' claims.

### E.  Sanctions

Since the Court has found that Kitsap County intentionally spoliated evidence, the Court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).  To determine the appropriate sanction, including whether terminating sanctions are warranted, the Court must consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions*.*" *Leon*, 464 F.3d at 958 (quoting *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995)).

"The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal sanction. Thus, the key factors are prejudice and availability of lesser sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

Kitsap County's failure to retain (or review) eleven hours of video records on January 1st substantially prejudices Plaintiffs' claims.  A central tenet of Plaintiffs' claims against the NaphCare defendants is that Ms. Nagra and other NaphCare Defendants did not actually conduct COWS and CIWA assessments or otherwise tend to Mr. Rapp while he was undergoing withdrawal.  (*See, e.g.*, Dkt. Nos. 63 at 25–26; 91 at 10–11.)  Plaintiffs similarly assert Kitsap County employees acted negligently and failed to adequately care for Mr. Rapp.  The missing video would likely confirm or deny Plaintiffs' theories by demonstrating whether Kitsap County and NaphCare personnel actually conducted medical assessments of Mr. Rapp or otherwise checked in on Mr. Rapp in the afternoon and evening of January 1, 2020.  Kitsap County's deletion of this video, in defiance of Plaintiffs' preservation request and in the absence of guidance from legal counsel "interfere[s] with the rightful decision of the case." *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988).[5]  Accordingly, the Court finds this factor weighs in favor of a default judgment.

The Court must also assess whether less drastic sanctions are available.  While terminating sanctions are to be used only in exceptional circumstances, the Court finds it cannot issue a lesser sanction without prejudicing NaphCare's interests in this litigation.  As in *Estate of Hill*, the spoliated evidence, for which Kitsap County is solely responsible, is relevant to Plaintiffs' claims against other Defendants in this action.  *Est. of Hill*, 2022 WL 1464830, at *15.  While Kitsap County proposed the Court could issue an adverse evidentiary instruction to the

---

[5] Kitsap County's decision to delete this evidence has interfered not only with Plaintiffs' adjudication of their case, but also with the NaphCare Defendants' defense.  As NaphCare notes, they have "been prejudiced by the unavailability of this video evidence, which would only confirm that NaphCare and its employees provided timely and appropriate medical care."  (Dkt. No. 178 at 2.)

jury, their proposed instruction does little to actually ameliorate the harm to Plaintiffs and the Court disregards it.  (*See* Dkt. No. 180 at 1–2.)

Plaintiffs' proposed jury instruction is as follows:

> Defendant Kitsap County at one time possessed a video recording from a camera located outside of Nicholas Rapp's cell in the Kitsap County Jail, covering the period from 12:59 p.m. to midnight on January 1, 2020. Kitsap County failed to preserve this footage for Plaintiffs' use in this litigation after its duty to preserve it arose. You may assume that, had Kitsap County preserved the video, the footage would have shown no interaction with medical staff, including NaphCare employees Defendants Amninder Nagra and Haven LaDusta. You may further assume that the footage corroborates Plaintiffs' evidence and undermines any contrary evidence. Whether this information is important to you in reaching your verdict is for you to decide.
>
> This instruction does not allow you to draw the same adverse inference against Defendants NaphCare, Inc., Amninder Nagra, Haven LaDusta, or any Defendant other than Kitsap County when considering: (1) Plaintiffs' 42 U.S.C. § 1983 claims against Defendants NaphCare, Inc., Amninder Nagra, and Haven LaDusta; (2) Plaintiffs' negligent hiring claim against NaphCare, Inc.; and (3) Plaintiffs' corporate negligence claim against NaphCare, Inc.

(Dkt. No. 182 at 1.)

As in *Estate of Hill*, such an instruction would require the Court to direct the jury to assume facts for one defendant that they would then have to completely disregard when assessing liability for Defendants Nagra and LaDusta.  The Court agrees this would "confuse the jury and create a risk that the jury would impermissibly consider the adverse inference when determining the liability of" the other Defendants. *Est. of Hill*, 2022 WL 1464830, at *16. As NaphCare notes, the proposals by both parties "run afoul of the applicable law because they exclusively target NaphCare and its employees, who had no control over the video at issue and no involvement in the alleged spoliation." (Dkt. No. 190.)  The Court therefore finds it cannot issue a lesser sanction and this factor weighs in favor of entry of default judgment.

Because the Court finds that sanctions are warranted for spoliation of video evidence and because the Court cannot issue a lesser sanction without creating unfair prejudice to the NaphCare Defendants, the Court grants Plaintiffs' request for the Court to enter default judgment against Kitsap County. Plaintiffs are also awarded attorneys' fees and costs incurred directly as a result of Kitsap County's spoliation of evidence. *See Hunters Cap.*, 2023 WL 184208, at *10.

## IV    CONCLUSION

Accordingly, and having considered Plaintiffs' motion (Dkt. No. 91), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Plaintiffs' motion is GRANTED.

1. DEFAULT JUDGMENT shall be ENTERED against Kitsap County on Plaintiffs' negligence and § 1983 claims against Kitsap County. Damages shall be determined at trial.
2. The parties are DIRECTED to meet and confer and to file a status report regarding whether the Court's decision implicates pending motions to which Kitsap County is a party (Dkt. Nos. 93, 152). The parties shall submit their joint status report within three weeks of the issuance of this order.

Dated this 31st day of May, 2023.

David G. Estudillo
United States District Judge