1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11 JOHN RAPP et al.,

CASE NO. 3:21-cv-05800-DGE

Plaintiffs,

12        v.

ORDER ON MOTIONS TO
EXCLUDE EXPERT TESTIMONY
(DKT. NOS. 92, 157)

13 NAPHCARE, INC. et al.,

14

Defendants.

15

16                **I**       **INTRODUCTION**

17       This matter comes before the Court on Plaintiffs and NaphCare's[1] motions to exclude

18 expert testimony.  Plaintiffs move to exclude expert testimony from Dr. Stuart Freed ("Dr.

19 Freed"), Dr. Steven Dresang ("Dr. Dresang"), Tracey Fox ("Ms. Fox"), and Dr. Russell

20 Vandenbelt ("Dr. Vandenbelt").  (*See* Dkt. No. 92.)  NaphCare separately moves to exclude

21

22 ─────────────────────────
[1] NaphCare's motion was collectively filed on behalf of Defendants NaphCare, Inc., Odessa
23 McCleary ("Ms. McCleary"), LaDusta Haven, Erica Molina, Ripsy Nagra ("Ms. Nagra"), and
Alanna Sandack ("Dr. Sandack").  The Court refers to these defendants collectively throughout
24 the motion as NaphCare.

certain opinions from Dr. Nicole Chicoine ("Dr. Chicoine"), Dr. Richard Hayward ("Dr. Hayward"), Dr. Ryan Herrington ("Dr. Herrington"), Denise Panosky ("Ms. Panosky"), Dr. Joseph Penn ("Dr. Penn"), Dr. Kris Sperry ("Dr. Sperry"), and Stephen Sinclair ("Mr. Sinclair") (together "Plaintiffs' Experts"). (Dkt. No. 157.) Based on the Court's review of the parties' briefing and the record, the Court GRANTS in part and DENIES in part Plaintiffs' motion. The Court also GRANTS in part and DENIES in part NaphCare's motion.

## II    BACKGROUND

For purposes of this order, the Court presumes reader familiarity with the facts of this case. (*See* Dkt. Nos. 111 at 2–4; 198 at 2–4.)

On December 8th, 2022, Plaintiffs moved to exclude the testimony of four expert witnesses disclosed by NaphCare. (Dkt. No. 92.) NaphCare filed a timely response in opposition to the motion on December 27, 2022 (Dkt. No. 119) and Plaintiffs filed a timely reply (Dkt. No. 130.) NaphCare subsequently filed its own motion to exclude certain opinions and testimony from Plaintiffs' Experts on February 16, 2023. (Dkt. No. 157.) Plaintiffs filed their response in opposition on March 13, 2023 (Dkt. No. 164) and NaphCare filed its reply on March 17, 2023 (Dkt. No. 169).[2]

## III    DISCUSSION

### A.  Legal Standard

Federal Rule of Evidence 702 provides that an expert witness "may testify in the form of an opinion or otherwise" if their expertise "will help the trier of fact to understand the evidence

---

[2] Plaintiffs and the Kitsap County Defendants have also filed motions to exclude expert testimony. (*See* Dkt. Nos. 93, 152.) The Court does not rule on these motions at this time given the Court's order entering default against Kitsap County (Dkt. No. 198) and Kitsap County's pending motion for reconsideration (Dkt. No. 207).

or to determine a fact in issue," the proffered testimony "is based on sufficient facts or data" and "is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The party that seeks to offer expert testimony to the trier of fact " has the burden of showing the admissibility of the testimony by a preponderance of the evidence."  *Spearman Corp. Marysville Div. v. Boeing Co.*, No. C20-13RSM, 2022 WL 11823467, at *1 (W.D. Wash. Oct. 20, 2022).  The Court's role is to act as a gatekeeper and "to ensure the reliability and relevancy of expert testimony."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  "The test for reliability, however, 'is not the correctness of the expert's conclusions but the soundness of his methodology.'  And, reliable testimony must nevertheless be helpful."  *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir.1995)) (internal citation omitted).  The Ninth Circuit has cautioned district courts from weighing expert "conclusions or assum[ing] a factfinding role."  *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1020 (9th Cir. 2022).  The Court "is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury."  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013).

The Federal Rules of Civil Procedure impose additional requirements for expert witnesses.  Rule 26(a)(2) requires the parties to disclose experts that they "may use at trial," and "this disclosure must be accompanied by a written report—prepared and signed by the witness— if the witness is one retained or specially employed to provide expert testimony in the case."  Fed. R. Civ. P. 26(a)(2)(B).  The expert report must also include "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as the facts relied upon by the expert to reach their conclusions.  *Id.*  Experts required by the Rules to disclose their

1    expert reports must disclose such testimony "at least 90 days before the date set for trial."  Fed.

2    R. Civ. P. 26(a)(2)(D)(i).  However, if the expert is employed solely to "rebut evidence on the

3    same subject matter" addressed by another expert witness, they need only disclose their report

4    "within 30 days after the other party's disclosure."   Fed. R. Civ. P. 26(a)(2)(D)(ii).  Failure to

5    comply with these requirements may lead the expert report to be stricken "unless the failure was

6    substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

7        **B.  Plaintiffs' Motion to Exclude**

8            *a.  Waiver*

9        Plaintiffs argue in their reply brief that NaphCare has failed to respond to their argument

10   that NaphCare's experts' testimony should be excluded pursuant to Federal Rules of Civil

11   Procedure 26(a)(2)(B) and 37(c)(1).  (Dkt. No. 130 at 2–4.)  Accordingly, Plaintiffs assert

12   NaphCare has waived its opposition to this line of argument.  (*Id.*)  The Court believes NaphCare

13   adequately responded to Plaintiffs' assertions that their experts' testimony did not comply with

14   Federal Rule of Civil Procedure 26(a)(2)(B) even if they did not directly reference this provision

15   of the Federal Rules in their response.  In their brief, for example, NaphCare repeatedly argues

16   about the basis on which their experts reach the opinions in their reports.  (*See, e.g.*, Dkt. No. 119

17   at 6–8.)  The Court declines to find waiver here.

18            *b.  Dr. Freed's Opinions*

19       Plaintiffs challenge the expert report and proposed testimony of Dr. Stuart Freed on three

20   grounds.  First, Plaintiffs argue Dr. Freed's report fails to rebut any of Plaintiffs' experts and

21   was, instead, an impermissible primary report.  (Dkt. No. 92 at 4.)  Second, Plaintiffs argue Dr.

22   Freed's report does not actually proffer any admissible opinions and fails to explain the process

23   by which he reached his conclusions.  (*Id.* at 5–6.)  Third, Plaintiffs argue Dr. Freed draws

24

1    impermissible legal conclusions when he opines "there is no evidence that NaphCare was

2    negligent in hiring Ms. Nagra." (Dkt. Nos. 92 at 5; 94-1 at 5.)

3         In response, NaphCare argues Dr. Freed's report offers relevant and reliable opinions

4    regarding the hiring of Ms. Nagra and on the company's background check process for new

5    hires. (Dkt. No. 119 at 6–8.) Additionally, NaphCare argues Dr. Freed's report is proper expert

6    rebuttal testimony because it is offered to rebut the testimony of Plaintiffs' expert Dr.

7    Herrington, who opined on the propriety of NaphCare's hiring practices. (*Id.* at 6.) Finally,

8    NaphCare argues the exclusion of Dr. Freed's entire report based on certain statements that

9    NaphCare was not negligent is not warranted. (*Id.* at 8.)

10        Dr. Freed's report is proper expert rebuttal testimony. As NaphCare notes, Dr. Freed's

11   report is intended to rebut assertions made by Dr. Herrington. (*Id.* at 6.) Dr. Herrington

12   reviewed NaphCare's hiring practices and Ms. Nagra's employment history and determined

13   "diligent hiring practices were not undertaken by NaphCare when an offer of employment was

14   extended to LPN Nagra." (Dkt. No. 97 at 20.) Dr. Herrington also opined "had NaphCare taken

15   a diligent employment history as is outline in the NaphCare Employee Handbook, questions

16   regarding LPN Nagra's employment history likely would have been raised." (*Id.*) Dr.

17   Herrington's report relied heavily on investigatory records from the Washington State

18   Department of Health ("DOH"). Dr. Freed's report, in turn, addresses what information would

19   be available to prospective employers from the DOH and when such information would have

20   been available to NaphCare. (*See* Dkt. No. 94-1 at 5–6.) Dr. Freed need not, as Plaintiffs

21   suggest, specifically indicate in his opinions that he is rebutting the testimony of Dr. Herrington.

22   All Rule 26(a)(2)(D)(ii) requires is that Dr. Freed's report address the same subject matter as Dr.

23   Herrington and rebut or contradict his testimony. *See U.S. Bank, N.A. v. Glogowski L. Firm,*

24

1  *PLLC*, 339 F.R.D. 579, 583 (W.D. Wash. 2021) (approving expert rebuttal testimony that

2  "addressed the same subject matter" and "contradicted" a primary expert's report); *see also*

3  *Theoharis v. Rongen*, No. C13-1345RAJ, 2014 WL 3563386, at *4 (W.D. Wash. July 18, 2014)

4  (declining to reject expert rebuttal report because expert "does not so much as mention any of

5  Plaintiff's experts or their reports" as this alone was not "determinative.").[3]

6       The Court next addresses Plaintiffs' argument that Dr. Freed's various opinions are

7  conclusory.  Plaintiffs challenge four of Dr. Freed's opinions as conclusory. Specifically,

8  Plaintiffs challenge opinions included in paragraphs 12, 13, 14, and 15 of Dr. Freed's report.

9  (Dkt. No. 92 at 5.)  Plaintiffs' objections to these opinions are that they do not provide an

10  explanation as to the basis and reasons by which Dr. Freed reached these opinions and that

11  several opinions appear to contain improper legal conclusions.  (*Id.*)

12       "Expert reports must not be sketchy, vague or preliminary in nature.  Disclosures must

13  not be used as a means to extend a discovery deadline.  Expert reports must include 'how' and

14  'why' the expert reached a particular result, not merely the expert's conclusory opinions."

15  *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998).  The expert

16  report should be detailed enough so "opposing counsel is not forced to depose an expert in order

17  to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten

18  or decrease the need for expert depositions and thus to conserve resources."  *Id.*  Reports that are

19  overly vague must be excluded.  *Com. Ventures, Inc. v. Scottsdale Ins. Co.*, No.

20  CV1508359BROAFMX, 2017 WL 11632204, at *1 (C.D. Cal. Mar. 20, 2017).  Courts have also

21  excluded the medical opinions of doctors and other professionals for failing to detail the reasons

22

23  ───────────────

24  [3] The Court also notes Dr. Freed specifically indicates in his report that he reviewed the opinions and testimony of Dr. Herrington.  (Dkt. No. 94-1 at 4.)

1  behind their opinions.  *See Sharpe v. United States*, 230 F.R.D. 452, 458 (E.D. Va. 2005); *see*

2  *also Est. of Hill by & through Grube v. NaphCare, Inc.*, No. 2:20-CV-00410-MKD, 2022 WL

3  2654975, at *3 (E.D. Wash. July 8, 2022) (excluding medical opinions because "they are vague

4  and lack explanation.").

5      The Court finds some of the opinions in Dr. Freed's report to be conclusory.  The Court

6  agrees with Plaintiffs that Dr. Freed's opinions in paragraphs 12 and 15 are vague and do not

7  sufficiently explain how he arrived at the conclusions articulated in his report.  Dr. Freed, for

8  example, opines that "[t]ermination alone does not make a person 'unhirable' and thus should be

9  judged on a case-by-case basis."  (Dkt. No. 94-1 at 5.)  However, Dr. Freed does not provide any

10  explanation for what this conclusion is based upon.  Similarly, Dr. Freed opines that "[b]ased on

11  my review of the records, my opinion, as a matter of reasonable certainty, NaphCare policies

12  regarding background checks and hiring comply with the standard in the healthcare industry."

13  (*Id.* at 6.)  Again, Dr. Freed does not explain how he determined what standard to apply or what

14  NaphCare hiring policies were in conformance with industry standards.  These opinions are too

15  conclusory and must be excluded.

16      The Court finds that the rest of Dr. Freed's opinions are not conclusory and adequately

17  state the basis and reasons behind them.  Dr. Freed has substantial experience in hiring

18  physicians and with the investigatory process for complaints lodged against nurses or doctors

19  with the DOH.  (*See id.* 94-1 at 3, 8.)  Dr. Freed reviewed documents including Ms. Nagra's

20  personnel file, the relevant complaints against her, and Naphcare's procedure manual, and some

21  of his opinions are clearly based upon his review of these documents and his substantial

22  experience.  (*Id.* at 3–6.)  Dr. Freed opines in his report that, based upon his prior experience,

23  information regarding DOH's investigations of Ms. Nagra would not have been available to

24

NaphCare during their hiring process.  (*Id.* at 5.)  Dr. Freed's opinions in paragraphs 13 and 14 also lay out the basis for his opinions—review of enumerated records and what information would have been available to NaphCare during the hiring process for Ms. Nagra.  The Court agrees with NaphCare that Dr. Freed's remaining opinions in his report are based upon sufficient facts and data and Dr. Freed properly indicates the basis and methods for his conclusions.  *See Chawla v. W. Washington Univ.*, No. 2:20-CV-1129-BJR, 2021 WL 6197003, at *3 (W.D. Wash. Dec. 30, 2021) (admitting expert testimony on the basis of the expert's substantial experience and review of pertinent information to the case).

The Court also concludes that some of Dr. Freed's opinions embrace the ultimate issue when he opines that NaphCare was not negligent in hiring Ms. Nagra.  (Dkt. No. 94-1` at 5–6.)  Though "[e]xperts may testify regarding an ultimate issue that is to be decided by the trier of fact," *see Atl. Richfield Co. v. IMCO Gen. Const. Co.*, No. C01-1310L, 2005 WL 6762855, at *1 (W.D. Wash. Jan. 27, 2005), an expert witness is not permitted to offer an opinion on a legal conclusion,  *see Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).  The Court therefore excludes those sections of Dr. Freed's report where Dr. Freed notes that NaphCare was not negligent when it hired Ms. Nagra.  Dr. Freed should focus his testimony at trial on whether NaphCare had knowledge of or "failed to exercise reasonable care to discover unfitness before hiring or retaining" Ms. Nagra.  *See Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 206 (Wash. 2018).

The Court therefore GRANTS Plaintiffs' motion to exclude Dr. Freed's expert opinions in paragraphs 12 and 15 of his expert report.  The Court DENIES Plaintiffs' motion to exclude the opinions in paragraphs 13 and 14 of the report but excludes the sections of those opinions that refer to NaphCare's negligence.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

    *c.   Dr. Dresang's Opinions*

   Plaintiffs move to exclude Dr. Dresang's report for similar reasons as Dr. Freed.

Plaintiffs argue Dr. Dresang's opinions are conclusory and do not adequately detail the

appropriate duty of care regarding Dr. Sandack.  (Dkt. No. 92 at 6–7.)  NaphCare, in response,

notes "Dr. Dresang's extensive experience unquestionably qualifies him to testify regarding" the

standards of care for treating individuals undergoing withdrawal from opiates, the treatment of

these patients, and Dr. Sandack's response to Mr. Rapp's suicide.  (Dkt. No. 119 at 9.)

Additionally, NaphCare argues Dr. Dresang's opinions are based upon his significant experience

as a physician and in treating patients suffering from alcohol and opiate withdrawal.  (*Id.* at 11.)

   The Court first notes that the brevity of Dr. Dresang's expert report does not render it

inadmissible under either Federal Rule of Civil Procedure 26(a)(2)(B) or Federal Rule of

Evidence 702.  *See Johannsongs-Publ'g Ltd. v. Lovland*, No. CV 18-10009-AB (SSX), 2020 WL

2315805, at *5 (C.D. Cal. Apr. 3, 2020), *aff'd*, No. 20-55552, 2021 WL 5564626 (9th Cir. Nov.

29, 2021) ("Brevity alone does not render an expert report deficient."); *see also Segle v.

Stegmiller*, No. 10 C 4618, 2012 WL 1570129, at *2 (N.D. Ill. May 3, 2012).

   The Court finds that Dr. Dresang's report, for the most part, adequately states the basis

and reasons for his opinions.  Dr. Dresang has substantial expertise as a physician that would

allow him to opine on the performance of Dr. Sandack, the prescriptions provided to Mr. Rapp,

and the care the nurses provided to Mr. Rapp.  (*See* Dkt. No. 122 at 4, 9–10.)  Dr. Dresang relied

upon his own significant experience and his review of the relevant medical records and Dr.

Sandack's personnel file to reach his opinions in this case.  (*Id.* at 5.)  This provides an adequate

basis for him to opine on Mr. Rapp's treatment and the performance of Dr. Sandack.  *See Witkin

v. Lotersztain*, No. 219CV0406TLNKJNP, 2022 WL 2276663, at *5 (E.D. Cal. June 23, 2022)

1   (admitting report of expert medical witness even though the witness "did not describe in detail

2   how she arrived at her opinion, or expressly set forth the standard of care" because of the

3   witness's substantial medical experience and stated review of medical records at issue); *see also*

4   *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ("[M]uch of

5   medical decision-making relies on judgment—a process that is difficult to quantify or even to

6   assess qualitatively."). Any qualms Plaintiffs may have with Dr. Dresang's evaluation of Mr.

7   Rapp's medical records may be addressed on cross-examination.

8       However, the Court finds that Dr. Dresang's opinion in paragraph 11 of his report is

9   conclusory and must be excluded. The opinion states—"[w]hile I am not a nurse, I work

10   alongside nurses on a daily basis. Based on the information available at this time, my opinion is

11   that NaphCare's nurses provided appropriate nursing care to the decedent as well." (Dkt. No.

12   122 at 7.) Dr. Dresang does not state what information he relied upon to reach this conclusion.

13   This opinion appears to be exactly the kind of sketchy or vague opinion that must be excluded

14   pursuant to the Federal Rules.

15       The Court therefore DENIES in part Plaintiffs' motion to exclude Dr. Dresang's expert

16   report. The Court GRANTS Plaintiffs' motion to exclude Dr. Dresang's opinion in paragraph 11

17   of his report.

18             *d.  Ms. Fox's Opinions*

19       Plaintiffs similarly characterize Ms. Fox's expert report as conclusory and lacking the

20   requisite detail about the basis of her opinions. (Dkt. No. 92 at 7–8.) The Court disagrees.

21       In her report, Ms. Fox details her experience as a nurse practitioner and in providing

22   medical care for inmates. (Dkt. No. 121 at 5.) Through this experience, she is familiar with the

23   standard of care in these environments. (*Id.* at 6.) To prepare her opinions she reviewed Mr.

24

Rapp's inmate file, his booking and release reports, his intake screening, medication records, Kitsap health care policies, and videos from the jail.  (*Id.*)  Ms. Fox's review of this information is sufficient to allow her to opine that "no reasonable medical professional would assume or infer Rapp was suicidal" and "the standard of care was met by NaphCare medical staff and by the LPNs in this case."  (*Id.* at 8.)

The Court therefore DENIES Plaintiffs' motion to exclude Ms. Fox's expert report.

### e.  *Dr. Vandenbelt's Opinions*

Finally, Plaintiffs move to exclude Dr. Vandenbelt's expert report because it is conclusory and because Dr. Vandenbelt fails to identify any opinions in his report.  (Dkt. No. 92 at 9–10.)

Dr. Vandenbelt's report clearly offers a number of opinions that would be helpful to the trier of fact.  For example, Dr. Vandenbelt opines that "the available medical records document that Mr. Rapp was monitored for the presence of withdrawal symptoms and that, with slight exception, his vital signs were stable during his incarceration episode."  (Dkt. No. 124 at 10.) Dr. Vandenbelt also opines that "it is reasonably likely, given the medications administered and the physical withdrawal symptoms monitored, that Mr. Rapp was not experiencing serious alcohol withdrawal symptoms during the incarceration."  (*Id.*)  Dr. Vandenbelt bases these conclusions on his review of the relevant medical records.  (*Id.* at 5.)  The Court finds Dr. Vandenbelt's report to adequately state both opinions and the bases and reasons for his opinions.[4]

---

[4] The Court also notes the cases Plaintiffs cite regarding Dr. Vandenbelt's exclusion either do not specify why his expert testimony was excluded or excluded Dr. Vandenbelt's testimony on different grounds.  *See, e.g.*, *Busselman v. Battelle Mem'l Inst.*, No. 4:18-CV-05109-SMJ, 2019 WL 7759497, at *3 (E.D. Wash. Nov. 18, 2019) (excluding the testimony of Dr. Vandenbelt because it included impermissible credibility determinations).

1   Plaintiffs' motion to exclude Dr. Vandenbelt's expert report is DENIED.

2   **C.  NaphCare's Motion to Exclude**

3   NaphCare challenges various opinions offered by Plaintiffs experts. The Court addresses

4   challenges to each of these experts in turn.

5   *a.  Dr. Chicoine's Opinions*

6   NaphCare challenges several opinions offered by Dr. Chicoine as unreliable or

7   conclusory.  Specifically, NaphCare argues Dr. Chicoine "concede[d] Rapp's treatment was

8   appropriate and cannot testify otherwise." (*Id.* at 14.)  Second, NaphCare asserts Dr. Chicoine's

9   opinions are internally inconsistent and she fails to support her conclusion that Mr. Rapp

10   experienced suffering and whether this suffering contributed to or caused his suicide.  (*Id.* at 15.)

11   Third, NaphCare argues Dr. Chicoine's critique of Dr. Sandack's performance is unreliable

12   because of alleged contradictions between Mr. Rapp's medical records and Dr. Chicoine's

13   report.  (*Id.*)  Fourth, NaphCare challenges the alleged inconsistencies regarding Dr. Chicoine's

14   opinions on whether NaphCare's administration of Clinical Institute Withdrawal Assessment

15   Alcohol Scale ("CIWA") and Clinical Opiate Withdrawal Scale ("COWS") tests met the relevant

16   standard of care.  (*Id.* at 17.)

17   Plaintiffs, in response, assert Dr. Chicoine is qualified to testify on the standard of care in

18   a correctional setting (Dkt. No. 164 at 6) and is qualified to offer her opinion on Mr. Rapp's

19   suffering and any causal relationship to Mr. Rapp's suicide (*Id.* at 7).

20   Many of NaphCare's challenges go to the weight of the evidence presented and seek the

21   Court to impermissibly decide an issue of fact.  Particularly in the medical context, expert

22   witnesses need not provide citations for every single opinion so long as the Court finds that their

23   opinions are based on their "specialized knowledge and experience."  *Elosu*, 26 F.4th at 1024.

24

1    Dr. Chicoine is a trained emergency medical physician and clinical instructor for the University

2    of Washington Department of Emergency Medicine.  (*See* Dkt. No. 94-1 at 27.)  She has

3    substantial experience dealing with patients who are experiencing withdrawal.  (Dkt. No. 166 at

4    366.)  The Court finds she is qualified based on her training and experience to opine on Mr.

5    Rapp's treatment and to critique the performance of another physician based on this training and

6    experience.  *See Pope v. McComas*, No. C07-1191 RSM, 2011 WL 1584200, at *5 (W.D. Wash.

7    Apr. 26, 2011) (noting that physician was qualified where they had "sufficient expertise to

8    demonstrate familiarity with the procedure or medical problem at issue.").

9            The Court rejects NaphCare's contention that Dr. Chicoine's testimony regarding the

10    administration of CIWA and COWA tests lacks foundation or is inconsistent with the governing

11    standard of care.  The article that NaphCare cites to in an effort to contradict the standard of care

12    put forward by Dr. Chicoine articulates multiple standards of care, one of which Dr. Chicoine

13    refers to in her expert report.  (*See* Dkt. No. 158-23 at 10.)  It provides:

> [CIWA] [e]valuation intervals **as frequent as every 10 to 15 minutes** are appropriate for patients with more severe symptoms being treated with IV benzodiazepines. Once severe symptoms are controlled, **hourly reassessment of such patients is reasonable.** By contrast, an **interval of four to six hours is reasonable for stable patients with mild symptoms** receiving oral benzodiazepines.

(*Id.*) (emphasis added.)  Thus, there are multiple appropriate medical standards of care for CIWA

and COWS.  A central factual issue in this case is the accuracy of Mr. Rapp's medical records.

Dr. Chicoine's opinion appears based on her experience and interpretation of the relevant

medical literature in light of her understanding of the facts of the case.  It is not the Court's role

to determine whether or not she is right, just that her opinion is reliable and helpful to the trier of

fact.  *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969.

Similar issues plague NaphCare's other challenges.  Dr. Chicoine's opinion on whether Mr. Rapp's withdrawal treatment was appropriate is based on her review of disputed factual issues and Mr. Rapp's medical background.  (*See* Dkt. No. 94-1 at 14–15.)  "When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts."  Fed. R. Evid. 702 Advisory Committee Notes (2000 Amendment).  Dr. Chicoine repeatedly questions the accuracy of the COWS and CIWA reports in her expert report and deposition testimony.  (*See, e.g.*, Dkt. No. 158-5 at 16) (noting that Mr. Rapp's CIWA scores from his medical record did not suggest he was having moderate alcohol withdrawal, which "clinically [] doesn't make sense.").  Dr. Chicoine is entitled to rely on Plaintiffs' representation of the facts so long as her analysis is reliable.  "Rule 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage."  *Elosu*, 26 F.4th at 1026.

Dr. Chicoine's expertise also allows her to opine on Mr. Rapp's suffering, and to make assessments of whether this suffering contributed to his suicide.  *See Atencio v. Arpaio*, No. CV-12-02376-PHX-PGR, 2015 WL 11117187, at *14 (D. Ariz. Jan. 15, 2015) (finding that expert's opinion on cause of decedent's death is admissible" so long as he relied on materials disclosed within expert report in making that determination).  Dr. Chicoine reviewed Mr. Rapp's medical history and records and reviewed other discovery in this matter, including video evidence, and concluded Mr. Rapp should have received medical treatment for opiate withdrawal.  (Dkt. No. 94-1 at 24.)  Similarly, the Court finds that Dr. Chicoine's expertise permits her to interpret medical records and to opine on whether Dr. Sandack met the requisite standard of care.  Any discrepancies or inconsistencies in Dr. Chicoine's report or subsequent testimony "might be

1   useful to the jury as impeachment," *Primiano*, 598 F.3d at 567, but are not sufficient to exclude

2   her opinion at this stage.

3         The Court therefore DENIES NaphCare's motion to exclude Dr. Chicoine's testimony.

4                    *b.   Dr. Hayward's Opinions*

5         NaphCare challenges the admissibility of opinions put forward in Dr. Hayward's updated

6   expert report as untimely and the opinions in the original expert report as unreliable or without

7   foundation.  (*See* Dkt. No. 157 at 15, 21–22, 27–29.)

8         The Court first addresses whether Dr. Hayward's updated expert report was untimely.

9   According to the Court's scheduling order, expert witness disclosure and reports were to be

10  completed by the parties on September 6, 2022.  (Dkt. No. 22.)  Rebuttal expert disclosure

11  reports were due on October 4, 2022.  (*Id.*)  Dr. Hayward's initial expert report was disclosed on

12  September 2, 2022.  (Dkt. No. 158-7 at 2.)  Dr. Hayward subsequently filed a second, updated

13  expert report on November 12, 2022, more than a month after the rebuttal disclosure deadline.

14  (Dkt. No. 158-9 at 2.)  Dr. Hayward's second, updated report is clearly untimely.[5]

15        An untimely expert report must be excluded "unless the failure was substantially justified

16  or is harmless."  Fed. R. Civ. P. 37(c)(1).  To determine whether an untimely expert disclosure is

17  harmful, the Court must assess "(1) prejudice or surprise to the party against whom the evidence

18

19  ───────────────────────

20  [5] Plaintiffs argue that a report required by Rule 26(e) cannot be untimely. But Rule 26(e) does not
    "create a loophole through which a party who submits partial expert witness disclosures, or who
21  wishes to revise her disclosures in light of her opponent's challenges to the analysis and
    conclusions therein, can add to them to her advantage after the court's deadline for doing so has
22  passed."  *Luke v. Fam. Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009).  The
    Rule only permits a party to correct inaccuracies in their report.  And courts still apply Rule
23  37(c)(1) to supplements pursuant to Rule 26(e).  *See Enborg v. Ethicon, Inc.*, No.
    220CV02477AWIBAK, 2022 WL 1651897, at *5 (E.D. Cal. May 24, 2022) ("Courts in the Ninth
24  Circuit and elsewhere consistently find that opinions based on information available prior to the
    Rule 26(a)(2)(B) disclosure deadline are not supplements for purposes of Rule 26(e).")

is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010).

NaphCare argues they were prejudiced by Plaintiffs' untimely submission of Dr. Hayward's second expert report because it was submitted after the rebuttal expert disclosure deadline and therefore they were not able to submit a rebuttal expert report. (Dkt. No. 157 at 29.) Plaintiffs, in response, justify their tardiness by noting that "the revised report contains no new information that would strengthen or deepen Dr. Hayward's opinions, it merely struck incorrect information from the original." (Dkt. No. 164 at 10–11.) Dr. Hayward, according to Plaintiffs, erroneously reviewed the wrong version of a NaphCare policy manual when drafting the initial report. (*Id.* at 9.)

On review, the Court observes the new report offers new opinions. The opinions Dr. Hayward made in his first report were based on a draft of NaphCare's policies, not the actual policies in place at the time of Mr. Rapp's suicide. Dr. Hayward's subsequent report not only removes opinions based on the draft report but subtly revises the language of opinions issued in the first report based upon a new version of NaphCare's policy manual.

For example, Dr. Hayward originally opined:

The NaphCare Policy and Procedures manual provided in the discovery process fails to provide any specific information or procedures that would guide Kitsap County healthcare staff or correctional officers regarding what to do with an inmate that may have an elevated risk of suicide. The manual essentially requires that any inmate that states he or she is suicidal should be placed on Suicide Watch and referred to healthcare staff. There is no information regarding what the healthcare staff or the correctional officers should do to assess the suicide risk of inmates that do not overtly state they are suicidal. Additionally, there is no information regarding what the healthcare staff and correctional officers should do to safely house and monitor inmates that may have an ongoing elevated risk of suicide or that are removed from suicide watch. Due to the lack of any organization, table of contents or page numbering it is unlikely that any medical or mental health clinician

or any correctional officer would even attempt to use the manual as a guide. It would require an excessive amount of time just to locate a specific section of the manual such as Suicide Prevention. Few correctional officers and healthcare clinicians would have sufficient spare time to search through this disorganized document to find a relevant policy and procedure. The lack of an organized Policy and Procedures manual with suicide prevention guidelines specific for Kitsap County jail exemplifies deliberate indifference toward the health and safety needs of inmates like Nicholas Rapp.

(Dkt. No. 158-7 at 13.)

In his updated report, he subsequently opined:

The NaphCare Policy and Procedures manual *fails to provide specific guidelines or procedures* that would guide Kitsap County healthcare staff or correctional officers *regarding what to do with an inmate that has an elevated risk of suicide but does not overtly state that he is suicidal.* The manual essentially requires that any inmate that states he or she is suicidal should be placed on Suicide Watch and referred to healthcare staff. There is no information regarding what the healthcare staff or the correctional officers should do to ensure the safety of inmates that do not overtly state they are suicidal. There are no guidelines regarding what the healthcare staff and correctional officers should do to safely house and monitor inmates that may have an elevated risk of suicide but fail to announce that they are suicidal. Additionally, there are no guidelines for safely housing and monitoring inmates that are removed from suicide watch. Suicide watch does not lower the risk of suicide beyond the limited time period when the inmate is in the safety cell and is closely monitored. Inmates that are removed from Suicide Watch continued to have an elevated risk of suicide. It is typically only effective mental health interventions that are able to successfully reduce an inmate's risk of suicide.

(Dkt. No. 158-9 at 13) (emphasis added.)

Despite these changes, the Court notes the parties conducted a subsequent deposition of Dr. Hayward.  (Dkt. No. 189 at 1.)  There is no evidence of bad faith on behalf of Plaintiffs and disclosure of the report would not disrupt trial since the Court has not yet set a trial date.  The Court finds that the untimely expert disclosure was harmless and need not be excluded pursuant to Rule 37(c)(1).  *See Holen v. Jozic*, No. C17-1147JLR, 2018 WL 5761775, at *5 (W.D. Wash. Nov. 2, 2018) (denying motion to exclude untimely expert reports because plaintiff had opportunity to depose expert witness before the discovery deadline).

1    The Court also finds Dr. Hayward's opinions in his second supplemental report related to

2    NaphCare's suicide prevention policies have sufficient foundation and are likely to be helpful

3    and reliable. NaphCare argues certain opinions of Dr. Hayward lack foundation because

4    NaphCare's actual suicide prevention policy does not materially differ from the standards

5    identified by Dr. Hayward as representing the appropriate standard of care (the NCCHC

6    guidelines).  (Dkt. No. 157 at 28.)  However, Dr. Hayward's opinions are not based solely on the

7    standards articulated in the NCCHC guidelines but are also based on his substantial experience in

8    suicide prevention and work with the NCCHC.  Indeed, when pressed in his deposition testimony

9    on whether the NCCHC guidelines required correctional nursing staff to identify inmates who

10   are neither acutely nor nonacutely suicidal, which Dr. Hayward asserts in his expert report, he

11   noted "it's really clear that that's exactly what [NCCHC] expect. They expect every facility to be

12   actively engaging with inmates and identifying inmates at any risk of suicide, whether it be

13   acutely suicide or nonacutely suicidal, or a less elevated risk than those two."  (Dkt. No. 166 at

14   403.)  The Court will not exclude Dr. Hayward's opinions regarding NaphCare's suicide policies

15   merely because he did not cite specific policies from NCCHC that support this view.  *Cf.*

16   *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1198 (9th Cir. 2014) (overturning district

17   court decision to exclude testimony because expert "never explained the scientific basis for

18   [their] conclusion" where expert relied on extensive experience and review of relevant

19   documents); *Primiano*, 598 F.3d at 566–567.

20       NaphCare challenges the admissibility of language in Dr. Hayward's opinion regarding

21   the need for the development of an individualized treatment plan.  (Dkt. No. 157 at 15.)

22   NaphCare asserts Dr. Hayward did not identify the relevant standard of care that would require

23   such a plan and has no factual basis for a claim that NaphCare was aware of certain life problems

24

Mr. Rapp was suffering from.  In response, Plaintiffs argue the reasonable inference from Dr. Hayward's opinion is developing an individualized treatment plan for incarcerated individuals at risk for suicide is the standard of care and Dr. Hayward's opinion to this effect is based on his substantial expertise and his review of Mr. Rapp's progress notes and other relevant records.

The Court finds Dr. Hayward's opinion on the need to develop an individualized treatment plan to be reliable and helpful to the jury.  Dr. Hayward repeats in multiple parts of his report the need for Mr. Rapp to have an individualized treatment plan.  (*See* Dkt. No. 158-7 at 12, 15.)  Though Dr. Hayward does not directly refer to the standard of care that would necessitate an individualized treatment plan in his report, "the reasonable inference is that this language states the standard of care." *Churchill v. United States*, No. CV F 09-1846 LJO JLT, 2011 WL 1743652, at *5 (E.D. Cal. May 6, 2011).  This standard of care appears to be based on his expertise and review of standards from the NCCHC "standard #4." (*See* Dkt. No. 158-7 at 15.)  The Court will admit this opinion and any qualms NaphCare has regarding the basis for this opinion may be brought out on cross-examination.

NaphCare also challenges various opinions asserted by Dr. Hayward related to NaphCare's intake screenings for new inmates as either based upon a higher standard of care or deviating from a policy Dr. Hayward identifies as the standard of care.  (Dkt. No. 157 at 21–22.)  On review, the Court finds that Dr. Hayward opinions regarding NaphCare's intake screening proceedings are admissible.  Dr. Hayward's substantial experience in correctional psychology and treatment permit him to opine on the appropriate standards of care regarding intake for new inmates.  (*See* Dkt. No. 158-7 at 29.)

The Court DENIES NaphCare's motion to exclude testimony from Dr. Hayward.

       *c.  Dr. Herrington's Opinions*

1    NaphCare moves to exclude expert reports from Plaintiffs' expert Dr. Herrington.  (Dkt.

2    No. 157 at 29.)

3    NaphCare argues that Dr. Herrington's second expert report was untimely and should be

4    excluded pursuant to Rule 37(c)(1).  (*Id.* at 31.)  Dr. Herrington's supplemental expert report was

5    filed on October 3, 2022  (Dkt. No. 158-12 at 2), the day before rebuttal expert reports were due

6    and nearly a month after the disclosure of primary expert testimony deadline.  Dr. Herrington's

7    supplemental report offered additional opinions on Dr. Sandack's credentials, prescribing

8    practices, and whether her actions comport with the relevant standards of care.  (Dkt. No. 158-12

9    at 3.)

10    Plaintiffs argue Dr. Herrington's untimely second report was justified because of the

11    delay in scheduling Dr. Sandack's deposition.  (Dkt. No. 164 at 15.)  According to Plaintiffs, Dr.

12    Sandack was deposed just eleven days before the expert disclosure deadline and the transcript of

13    her deposition was not received until September 2, 2022.  (*Id.*)

14    The Court agrees Dr. Herrington's second expert report should not be excluded because

15    its exclusion was harmless or substantially justified.  *See Lanard*, 375 F. App'x at 713.  There is

16    no evidence of bad faith on the part of Plaintiffs—indeed it appears from the record they tried to

17    disclose Dr. Herrington's supplement as soon as possible. The use of this report would also not

18    disrupt trial since a trial date has not been set.  Though there may be some slight prejudice to

19    NaphCare as they were not able to submit a rebuttal expert report, NaphCare had more than a

20    month to prepare for Dr. Herrington's subsequent deposition and was able to question Dr.

21    Herrington on his opinions in the report.  NaphCare also did not move at the time they received

22    Dr. Herrington's supplemental report for leave to file a rebuttal report.  The Court therefore finds

1   the month delay in filing the report to be harmless and will not exclude opinions from this report

2   on that basis.

3       NaphCare also challenges opinions included in Dr. Herrington's first and second expert

4   reports on the following bases: 1) Dr. Herrington is not an expert in hiring practices and

5   therefore lacks experience to opine on NaphCare's hiring of Ms. Nagra (Dkt. No. 157 at 29–30);

6   2) Dr. Herrington does not offer a standard of care to support his opinions on NaphCare's hiring

7   practices (*id.*); 3) Dr. Herrington's opinions on NaphCare's hiring of Ms. Nagra lack factual

8   basis (*id.* at 30); 4) Dr. Herrington's opinion regarding NaphCare's hiring of Dr. Sandack is

9   irrelevant and unsupported (*id.* at 31); and 5) Dr. Herrington's opinion regarding Dr. Sandack's

10  prescription standing order is unsupported and contrary to state law (*id.*).

11      In response, Plaintiffs assert that most of these critiques go to the weight afforded to Dr.

12  Herrington's testimony, not its admissibility.  (Dkt. No. 164 at 16.)  Plaintiffs also assert Dr.

13  Herrington is qualified to offer each of the opinions challenged by NaphCare (*id.* at 17) and his

14  opinions have an adequate foundation (*id.* 16–17).

15      The Court finds Dr. Herrington is not qualified to offer opinions on NaphCare's hiring of

16  Ms. Nagra.  Dr. Herrington lacks formal training or education in human resources.  Though Dr.

17  Herrington has been involved in the interview and hiring of a number of nurses over his career,

18  including in the carceral context (*see* Dkt. Nos. 160 at 23; 166 at 374–76), his expert report does

19  not detail how this "experience leads to the conclusion reached, why that experience is a

20  sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *Easton*

21  *v. Asplundh Tree Experts, Co.*, No. C16-1694RSM, 2017 WL 4005833, at *5 (W.D. Wash. Sept.

22  12, 2017) (quoting *Arjangrad v. JPMorgan Chase Bank, N.A.*, No. 3:10-CV-01157-PK, 2012

23  WL 1890372, at *5 (D. Or. May 23, 2012)).

24

1    Additionally, the Court finds Dr. Herrington's opinions on NaphCare's hiring of Ms.

2   Nagra are unreliable.  In his deposition, Dr. Herrington admits he did not review "the resume

3   [Ms. Nagra] would have given to NaphCare" and did not review her employment application.

4   (Dkt. No. 158-10 at 12.)  Plaintiffs have also conceded NaphCare would not have had access to

5   the many "Washington State Department of Health ("DOH") investigations and complaints"

6   regarding Ms. Nagra.  (Dkt. No. 92 at 4.)  Given that Dr. Herrington did not review Ms. Nagra's

7   employment application and NaphCare did not have access to the DOH investigations against

8   Ms. Nagra, which form the primary basis for his opinion that "diligent hiring practices were not

9   undertaken by Naphcare when an offer of employment was extended to LPN Nagra" (Dkt. No.

10  160 at 20),  the Court cannot find Dr. Herrington's opinions to be based on a reliable

11  methodology or to have reliably applied that methodology to the facts of the case.  *See Dasho v.*

12  *City of Fed. Way*, 101 F. Supp. 3d 1025, 1031 (W.D. Wash. 2015).  The Court excludes

13  testimony from Dr. Herrington regarding NaphCare's hiring of Ms. Nagra.

14    The Court also excludes Dr. Herrington's opinion on Dr. Sandack's prescription practices

15  as Plaintiffs did not respond to this argument and Washington law expressly permits nurses to do

16  what Dr. Herrington criticizes as deviating from the standard of care.  *See* Wash. Rev. Code §

17  18.79.040(1)(e).  The Court will, however, permit Dr. Herrington to opine on Dr. Sandack's

18  qualifications for the role of medical director and her performance as there is at least some

19  relevance to Plaintiffs' corporate negligence claim.  (*See* Dkt. No. 63 at 49–50.)  Dr.

20  Herrington's experience as a medical director and physician (Dkt. No. 160 at 23) permits him to

21  opine on Dr. Sandack's qualifications.

22

23

24

1    The Court accordingly DENIES NaphCare's motion to exclude Dr. Herrington's expert

2    reports but GRANTS NaphCare's motion to exclude Dr. Herrington's opinions and testimony on

3    NaphCare's hiring practices regarding Ms. Nagra and Dr. Sandack's prescription practices.

4                    *d.   Ms. Panosky's Opinions*

5            NaphCare moves to exclude several opinions from Ms. Panosky.  Specifically, they argue

6    1) Ms. Panosky's opinion that certain nurses didn't follow policies and procedures is inaccurate

7    and unhelpful to the jury; 2) her opinion that NaphCare did not perform assessments as

8    frequently as ordered is not helpful to the jury and within their understanding; and 3) her

9    opinions on NaphCare's intake screenings are not relevant or reliable (Dkt. No. 157 at 22–23).

10   In response, Plaintiffs argue Ms. Panosky is qualified to offer opinions on NaphCare's nursing

11   practices and any discrepancies in her testimony go to weight, not admissibility.  (Dkt. No. 164

12   at 18.)

13           Regarding her opinion that certain nurses didn't follow policies or protocol, the Court

14   finds any discrepancies in Ms. Panosky's report go to the weight of her testimony, not its

15   admissibility.  *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir.

16   2013) ("[T]he judge is supposed to screen the jury from unreliable nonsense opinions, but not

17   exclude opinions merely because they are impeachable.")  Ms. Panosky's opinions are based on

18   her review of the record and experience, which is sufficient to permit her to opine on nursing

19   practices at the Kitsap County Jail.

20           NaphCare's argument regarding Ms. Panosky's opinion on the implementation of CIWA

21   and COWS assessments is specious.  Ms. Panosky's report is helpful because such an opinion

22   requires an analysis of Mr. Rapp's medical records and would be beyond the common

23   knowledge of the average layperson.  *See Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009)

24

1  ("[E]xpert testimony is helpful to the jury if it concerns matters beyond the common knowledge

2  of the average layperson and is not misleading.").

3       Ms. Panosky's opinions on NaphCare's intake and screening process are similarly

4  admissible.  NaphCare quibbles with the factual basis for Ms. Panosky's opinion that Mr. Rapp

5  should have been sent for medical treatment rather than booked in jail, but factual disputes do

6  not justify the exclusion of her opinions.  *See Aramark Mgmt., LLC v. Borgquist*, No.

7  818CV01888JLSKES, 2021 WL 4860692, at *3 (C.D. Cal. Sept. 29, 2021).  Nor does Dr.

8  Panosky's failure to explicitly identify the standard of care she relies on merit the exclusion of

9  her opinions.  *See Churchill*, 2011 WL 1743652, at *5.

10       The Court therefore DENIES NaphCare's motion to exclude testimony from Ms.

11  Panosky regarding whether nurses properly followed NaphCare policies, NaphCare's intake and

12  screening process, and her opinion on whether NaphCare followed its prescribed schedule of

13  CIWA and COWS assessments.

14                    *e.  Dr. Penn's Opinions*

15       NaphCare challenges certain testimony from Dr. Penn.  In particular, they challenge 1)

16  Dr. Penn's opinion regarding the frequency of the COWS and CIWA assessments; and 2) Dr.

17  Penn's opinions regarding NaphCare's intake procedures as unreliable.

18       Dr. Penn withdrew his opinion regarding the frequency of COWS and CIWA

19  assessments (*see* Dkt. No. 158-16 at 10) and so the issue is moot.

20       The Court also agrees with NaphCare that Dr. Penn's opinions related to NaphCare's

21  intake procedures and suicide screening are unreliable and should be excluded.  When pressed

22  during his deposition, Dr. Penn failed to identify anything amiss with Mr. Rapp's intake form.

23

24

1   (*See, e.g.*, Dkt. No. 158-16 at 15.)  Dr. Penn's critiques of the intake process do not appear to be

2   based on reliable facts or data and the Court will exclude his testimony on this topic.

3          The Court therefore GRANTS NaphCare's motion to exclude testimony from Dr. Penn

4   regarding his opinions related to NaphCare's intake procedures and suicide screening and

5   DENIES NaphCare's motion to exclude testimony regarding the frequency of COWS and CIWA

6   assessments as moot.

7                      *f.   Dr. Sperry's Opinions*

8          NaphCare moves to exclude testimony from Dr. Sperry regarding the adequacy of

9   NaphCare's treatment of Mr. Rapp's alcohol withdrawal.  (Dkt. No. 157 at 16.)  Plaintiffs, in

10  response, note Dr. Sperry is not offering an opinion as to whether Mr. Rapp's alcohol withdrawal

11  symptoms were adequately treated.  (Dkt. No. 164 at 23.)

12         The Court agrees Dr. Sperry is not offering an opinion as to whether Mr. Rapp's alcohol

13  withdrawal symptoms were adequately treated and DENIES NaphCare's motion to exclude as

14  moot.

15                     *g.   Mr. Sinclair's Opinions*

16         NaphCare seeks to exclude testimony from Mr. Sinclair regarding the adequacy of Mr.

17  Rapp's COWS and CIWA assessments (Dkt. No. 157 at 17).  Plaintiffs, in response, assert Mr.

18  Sinclair's extensive correctional background qualifies him to "opine as a correctional expert in

19  this matter."  (Dkt. No. 164 at 25.)

20         The Court agrees Mr. Sinclair is not qualified to opine on the adequacy of Mr. Rapp's

21  COWS and CIWA assessments.  Though Mr. Sinclair is eminently qualified to testify as an

22  expert on corrections and correctional policies (*see* Dkt. No. 158-20 at 4), Mr. Sinclair is not a

23  medical expert (Dkt. No. 158-19 at 4).  He never completed medical records when he worked for

24

1    the Department of Corrections (*id.* at 8) nor was he involved in the maintenance of such records

2    (*id.*).

3        The Court therefore GRANTS NaphCare's motion to exclude Dr. Sinclair's opinion

4    regarding the adequacy of Mr. Rapp's COWS and CIWA assessments.

5                        *h.  Falsification of Medical Records*

6        NaphCare moves to exclude testimony from multiple experts that Mr. Rapp's medical

7    records were "falsified."  (*See* Dkt. No. 157 at 18–19.)  Plaintiffs appear to concede that none of

8    the experts NaphCare has identified ("Dr. Herrington, Dr. Chicoine, Dr. Penn, and Mr. Sinclair")

9    will offer an opinion on whether Mr. Rapp's medical records were falsified.  (*See* Dkt. No. 164

10   at 21.)

11       The Court therefore GRANTS NaphCare's motion and excludes testimony from these

12   experts as to whether Mr. Rapp's medical records may have been falsified.[6]

13                    *i.  Testimony Regarding Completion of Intake Screening*

14       NaphCare seeks to exclude testimony from Plaintiffs' experts suggesting Ms. McCleary

15   did not actually complete certain medical assessments because fields were left blank.  (Dkt. No.

16   156 at 24.)  Plaintiffs appear to concede most expert testimony on "charting by exception"

17   should be excluded (*see generally* Dkt. No. 164) but provide rebuttal as to Ms. Panosky (*see id.*

18   at 19).  Because the forms themselves instruct that a negative answer is indicated by not selecting

19   a check box (*see, e.g.*, Dkt. No. 159 at 34), the Court finds Ms. Panosky lacks sufficient

20   foundation to testify as to whether Ms. McCleary actually completed these forms.

21

22

23   ---
[6] The Court does not rule on the admissibility of other evidence or testimony going to the
24   authenticity and accuracy of Mr. Rapp's medical records.

1   The Court GRANTS NaphCare's motion and will exclude testimony from the identified

2   experts as to Ms. McCleary's completion of Mr. Rapp's screening forms.

3   *j.   Testimony on Additional Suicide Precautions*

4   NaphCare seeks to exclude testimony from Plaintiffs' experts regarding factors that

5   should have put NaphCare on notice of a potential suicide risk for Mr. Rapp (Dkt. No. 157 at 24-

6   27).  NaphCare also argues in their reply brief Plaintiffs' failed to address this argument in their

7   initial motion and Plaintiffs have thus waived the issue.  (*See* Dkt. No. 14.)

8   After careful review of Plaintiffs' response brief, the Court finds Plaintiffs do not attempt

9   to respond to this line of argument and have waived the issue with one caveat.  *See Beam v.*

10  *Colvin*, No. C13-5875 RBL, 2014 WL 5111192, at *5 (W.D. Wash. Oct. 10, 2014).  Plaintiffs do

11  not address NaphCare's arguments in Sections C.1 and C.2 of their initial motion to exclude.

12  Plaintiffs do appear to address NaphCare's argument regarding Plaintiffs' reliance on Ms.

13  Wabnitz's litigation position in Section C.3.  (*See* Dkt. No. 164 at 21.)

14  The Court declines to exclude expert testimony that relied on Ms. Wabnitz's statements

15  that she informed NaphCare employees of Mr. Rapp's suicide risk.  NaphCare misapplies the

16  sham affidavit rule normally used in summary judgment, *see, e.g.*, *Nigro v. Sears, Roebuck &*

17  *Co.*, 784 F.3d 495, 497 (9th Cir. 2015), in arguing Plaintiffs' experts cannot rely on Ms.

18  Wabnitz's allegations expressly included in the complaint.  As discussed, Plaintiffs' expert

19  witnesses may rely on different versions of the facts that may be at odds with other parts of the

20  factual record.  Mr. Sinclair, for example, noted in his deposition he relied on Ms. Wabnitz's

21  assertion she told NaphCare staff about Mr. Rapp's "suicidality."  (*See* Dkt. No. 166 at 9–10.)

22  Dr. Hayward similarly asserted that "[r]eview of the records reveals that Megan Wabnitz alerted

23  both the arresting officers and several healthcare staff of Mr. Rapp's history of suicidal

24

behavior . . . . HSA Molina acknowledged that nurse Wabnitz had alerted multiple staff that Nick was suicidal." (*Id.* at 328.)

The Court therefore GRANTS NaphCare's motion and will exclude testimony from Dr. Chicoine, Dr. Hayward, Ms. Panosky, Dr. Penn, or Mr. Sinclair that NaphCare should have taken additional suicide precautions as requested in Sections C.1 and C.2 of NaphCare's motion.[7] (*See* Dkt. No. 157 at 24–27.) The Court DENIES NaphCare's request to exclude expert testimony that relied on Ms. Wabnitz's position that she informed NaphCare staff that Mr. Rapp was suicidal, as requested in Section C.3 of NaphCare's motion.

### k. Testimony on Training

NaphCare seeks to exclude testimony from Dr. Hayward, Dr. Panosky, and Dr. Penn regarding the adequacy of NaphCare's training of nurses as lacking a factual basis. (Dkt. No. 157 at 32.) Plaintiffs do not respond to this argument and the Court finds Plaintiffs' have conceded the issue. *See Beam*, 2014 WL 5111192, at *5.

The Court GRANTS NaphCare's motion and will exclude testimony from these experts regarding the adequacy of NaphCare's training.

### l. Testimony on Causation

NaphCare takes issue with opinions from Dr. Chicoine, Dr. Herrington, and Dr. Panosky regarding deficiencies in NaphCare's care that cause or contributed to Mr. Rapp's suicide. (Dkt. No. 157 at 32.)

The Court will permit Dr. Chicoine's testimony on withdrawal and causation, for reasons discussed above. Plaintiffs attest Ms. Panosky is not offering an opinion on causation and so the Court will exclude testimony to this effect. (Dkt. No. 164 at 18.) Finally, the Court will exclude

---

[7] The Court makes no decision as to the admissibility of Ms. Wabnitz's statements at this time.

1   causal testimony from Dr. Herrington to the extent it is based on Dr. Sandack's prescribing

2   practices.  Dr. Herrington is otherwise qualified to opine on Dr. Sandack's performance as

3   medical director.

4         The Court DENIES NaphCare's motion to exclude testimony from Dr. Chicoine

5   regarding factors that caused or contributed to Mr. Rapp's suicide and GRANTS NaphCare's

6   motion to exclude causal testimony from Dr. Panosky and Dr. Herrington to the extent it is based

7   on Dr. Sandack's prescribing practices.

8                     *m.  Legal Conclusions*

9         NaphCare seeks to exclude Plaintiffs' experts from offering any legal conclusions (Dkt.

10   No. 157 at 32.)  "Experts are not barred from providing testimony embracing an 'ultimate issue'

11   in a case to be decided by the trier of fact."  *Medvedeva v. City of Kirkland*, No. C14-7RSL, 2015

12   WL 11233199, at *2 (W.D. Wash. May 18, 2015).  However, experts must not provide their

13   opinions on legal conclusions.  *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d

14   1051, 1058 (9th Cir. 2008).  The Court will exclude testimony from both parties' experts where

15   such testimony offers legal conclusions, such as the language from Dr. Penn's report identified

16   by NaphCare.  The Court is otherwise satisfied by Plaintiffs' promise to counsel Dr. Penn to

17   avoid using terms that suggest a legal conclusion and will not broadly bar his testimony.

18

19

20

21

22

23

24

1

### IV      CONCLUSION

2      Accordingly, and having considered Plaintiffs and NaphCare's motions (Dkt. Nos. 92,

3  157), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS

4  that both parties' motions are GRANTED in part and DENIED in part.  Testimony from the

5  parties' experts shall be excluded consistent with the rulings identified throughout this motion.

6      Dated this 13th day of June, 2023.

7

8

9                        David G. Estudillo
                         United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24