UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN RAPP,<br><br>    Plaintiffs,<br><br>    v.<br><br>NAPHCARE INC. et al.,<br><br>    Defendants. | CASE NO. 3:21-cv-05800-DGE<br><br>ORDER GRANTING IN PART MOTION FOR RECONSIDERATION (DKT. NO. 207) |

**I      INTRODUCTION**

This matter comes before the Court on Defendant Kitsap County's motion for reconsideration of the Court's order (Dkt. No. 198) granting Plaintiffs' motion for sanctions and entering default judgment against Kitsap County. (*See* Dkt. No. 207.)  For the reasons discussed herein, the Court GRANTS in part Kitsap County's motion.  In light of additional briefing and argument from the parties, the Court revises the sanction imposed on Kitsap County and will impose at trial a permissive inference in lieu of entering default judgment.  The Court otherwise does not modify its prior order.

## II   BACKGROUND

On May 31, 2023, the Court granted Plaintiffs' motion for sanctions (Dkt. No. 91) and entered default judgment against Kitsap County for failure to retain 11 hours of relevant video evidence from January 1, 2020. (Dkt. No. 198.) Kitsap County subsequently filed a motion for reconsideration of the Court's order (Dkt. No. 207) and a concurrent motion to certify an interlocutory appeal pursuant to 28 U.S.C. §1292(b) (Dkt. No. 210). The Court invited the other parties to provide briefing in response to Kitsap County's motion. (Dkt. No. 211.) On June 22, 2023, Plaintiffs and NaphCare[1] filed additional briefing. (*See* Dkt. Nos. 217, 219.) The Court then held a hearing on July 14, 2023, to discuss the parties' arguments regarding Kitsap County's motion for reconsideration. (Dkt. No. 233.)

## III   DISCUSSION

### A. Legal Standard

"Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." LCR 7(h)(1). Manifest error is "[a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Error*, Black's Law Dictionary (11th ed. 2019).

### B. Arguments for Reconsideration

Kitsap County moves for reconsideration of the Court's order granting Plaintiffs' motion for sanctions. (Dkt. No. 207.) Kitsap County's basis for reconsideration is manifest error. (*Id.* at

---

[1] The Court uses "NaphCare" to refer collectively to the briefing of the NaphCare Defendants (NaphCare, Inc., Odessa McCleary, Erica Molina, Dr. Alanna Sandack, LaDusta Haven, and Ripsy Nagra).

2.) Specifically, Kitsap County argues the Court's order was based on incorrect inferences not in the record (*id.* at 2), the totality of the evidence is insufficient to establish the requisite intent to destroy evidence pursuant to Federal Rule of Civil Procedure 37(e)(2) (*id.* at 4), and the Court failed to consider several alternative, less severe sanctions (*id.* at 7).  The Court addresses each of these arguments in turn

a. <u>Additional Evidence and "Intent"</u>

To support its argument that the Court erred in its prior order, Kitsap County puts forward additional information about counsel's role in the information preservation process. Specifically, Kitsap County now asserts that prior counsel, John Purves, for the Kitsap County Prosecutor's Office did issue a litigation hold to the Kitsap County Sheriff and to Kitsap County's Director of Information Services on January 27, 2020.  (*See* Dkt. No. 208 at 2.)  The litigation hold letter specifically advised the Sheriff's Office to "suspend operation of any records retention policy that would otherwise result in destruction of these materials."  (*Id.* at 6.) The letter also warned that "[i]f your department or division fails to act to preserve these materials, the County will be vulnerable to severe sanctions by the Court, which your department may bear." (*Id.*)  After sharing this letter with the Sheriff's Office, counsel for Kitsap County opened a pre-claim file and subsequently collected from the Sheriff's Office a "three-ring binder containing hard copies of Mr. Rapp's medical records, his jail records, jail incident reports, and 21 CDs containing video surveillance footage relating to Mr. Rapp's incarceration." (*Id.* at 2–3).

This additional information creates more questions than answers—none of which make the Court reconsider its prior finding of intent to destroy evidence.[2]  According to the current

---

[2] The Court also notes that this information was readily available to counsel for Kitsap County at the time they filed their response to Plaintiffs' motion and therefore cannot be sufficient to cause

ORDER GRANTING IN PART MOTION FOR RECONSIDERATION (DKT. NO. 207) - 3

record of events, Mr. Rapp committed suicide on January 2, 2020. (Dkt. No. 110 at 3.) Plaintiffs' counsel sent a preservation letter to Kitsap County on January 17, 2020 and Mr. Purves received the preservation letter on January 21, 2020. (*See* Dkt. No. 208 at 2.) Mr. Purves issued the litigation hold letter on January 27, 2020. (*See id.*) Despite the issuance of this letter, which clearly advised the Kitsap County Sheriff's Office to "suspend operation of any records retention policy that would otherwise result in the destruction of [] [relevant] materials," Kitsap County let 11 hours of relevant video of Mr. Rapp's cell expire. (Dkt. No. 89-1 at 963.)

While Kitsap County argues Lieutenant Keith Hall, the employee responsible for managing the Kitsap County Jail's video surveillance system, was aware of his obligations to preserve relevant evidence, the record indicates the opposite. Lieutenant Hall repeatedly noted in his Rule 30(b)(6) deposition on behalf of Kitsap County that he was not given any instructions on what to retain. (*Id.* at 961.) The following exchange from his deposition is illustrative:

> Q. Are you aware of any written records, any instructions, anything like that, that was given to anybody, emails or anything, in connection with deciding what to preserve and what not to preserve as far as video retention of Mr. Rapp?
> A. Not that I'm aware of.
> Q. Were you given any instructions, any written instructions, any emails about what to preserve and what to allow to expire with regard to video of Mr. Rapp?
> A. Other than the PRA, no.
> Q. Were you given any verbal instructions by any supervisors in regard to what portions of video of Mr. Rapp to preserve and what to allow to expire?
> A. No.

---

the Court to reconsider its prior order. In oral argument and in briefing, counsel for Kitsap County advised that they did not believe information regarding counsel's role in the document preservation process was relevant to the Court's sanctions analysis. The caselaw, however, is quite clear that counsel's involvement in the document preservation process is relevant to a finding of intent to deprive. *See, e.g.*, *Kelley as Tr. of BMO Litig. Tr. v. BMO Harris Bank N.A.*, No. 19-CV-1756 (WMW), 2022 WL 2801180, at *6 (D. Minn. July 18, 2022) (finding that client's deletion of backup evidence without consulting counsel was factor indicating intent to deprive); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 502 (S.D.N.Y. 2022) (noting that "the Federal Rules of Civil Procedure 'obligate counsel to monitor compliance so that all sources of discoverable information are identified and searched.'").

ORDER GRANTING IN PART MOTION FOR RECONSIDERATION (DKT. NO. 207) - 4

(*Id.*)  Lieutenant Hall unilaterally determined which video segments were relevant and chose not to watch the 11 hours of videotape at issue.[3]  (Dkt. No. 110 at 6.)

Counsel for Kitsap County also failed to disclose for more than a year that these 11 hours of video were deleted, despite relevant requests for production that demanded the County describe any such information that may have been deleted.  (Dkt. No. 198 at 4.)  While current counsel for Kitsap County proffered at oral argument that she was unaware that evidence had been deleted, this does not explain why prior counsel failed to identify the missing video and failed to engage with the Sheriff's Office in line with their ethical and legal obligations.  "Counsel cannot just implement a litigation hold and then sit on his hands, hoping that parties retain and produce all relevant information."  *Ryan v. Rock Grp., NY. Corp.*, No. 1:18-CV-2600-GHW, 2019 WL 6841874, at *4 (S.D.N.Y. Dec. 16, 2019).  Here, Mr. Purves appears to have done exactly that.

Despite Kitsap County's protestations, the record is more than sufficient to find circumstantial evidence of intent to deprive Plaintiffs of relevant information.  *See, e.g.*, *Hunters Cap., LLC v. City of Seattle*, No. C20-0983 TSZ, 2023 WL 184208, at *9 (W.D. Wash. Jan. 13, 2023) (finding intent to deprive where defendants were aware of obligations to preserve evidence and yet wiped their cellphones of responsive information and where attorneys failed to disclose the deletion of responsive information to opposing counsel); *Est. of Bosco by & Through Kozar v. Cnty. of Sonoma*, No. 20-CV-04859-CRB, 2022 WL 16927796, at *10 (N.D. Cal. Nov. 14,

---

[3] Counsel for Kitsap County asserted at oral argument that it would have been overly burdensome for Lieutenant Hall to have reviewed all video that potentially could have captured Mr. Rapp while he was incarcerated.  The Court agrees that Kitsap County was not obligated to "preserve every shred of paper, every e-mail or electronic document, and every backup tape."  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).  However, the deleted evidence was from a camera pointed **directly** at Mr. Rapp's cell and would obviously be relevant to any potential litigation stemming from his suicide.  That point cannot be overstated.

ORDER GRANTING IN PART MOTION FOR RECONSIDERATION (DKT. NO. 207) - 5

2022) (finding intent to deprive where responsible official failed to alert others of potentially missing video); *Colonies Partners, L.P. v. Cnty. of San Bernardino*, No. 518CV00420JGBSHK, 2020 WL 1496444, at *9 (C.D. Cal. Feb. 27, 2020), *report and recommendation adopted*, No. 518CV00420JGBSHK, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020) ("Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to 'keep incriminating facts out of evidence.'").

Kitsap County also argues their case is more similar to those where courts found gross negligence than ones where courts found intent (Dkt. No. 207 at 4–6), but the Court is not convinced.  In *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218 (N.D. Cal. 2022), for example, the court found no intent to deprive where the defendant's employees failed to retain user access information that was deleted pursuant to the company's autodeletion policy. The court explained:

> [w]hile BrandTotal certainly *should* have recognized its obligation to preserve those records, it is not hard to imagine that BrandTotal's employees might have overlooked their transient diagnostic log as a source of relevant and discoverable information while they, presumably, took steps to preserve more obvious sources of relevant information like email accounts and the databases they used to prepare analysis for BrandTotal's corporate clients.

*Id.* at 1238 (emphasis in original).  Here, however, Lieutenant Hall failed to preserve obvious sources of information.  While deletion of other video from other parts of the jail may be excused as inadvertent, the Court cannot think of a more obvious source of information than a camera pointed directly at Mr. Rapp's cell.

*Jetport, Inc. v. Landmark Aviation Miami*, LLC, No. 1:16-CV-23303-UU, 2017 WL 7732869 (S.D. Fla. July 24, 2017) is also distinguishable.  The court in *Jetport* found the defendant's explanation that they failed to retain relevant video because it was too low quality to depict anything of relevance credible and declined to find the defendant had intentionally

deprived the plaintiff of relevant evidence. *Id.* at *6.  Here, however, Lieutenant Hall admitted that he did not watch any of the 11 hours of video and the Court cannot chalk up his actions to mere misunderstanding.

Kitsap County also attempts to distinguish the instant case from *Est. of Hill by & through Grube v. NaphCare, Inc.*, No. 2:20-CV-00410-MKD, 2022 WL 1464830 (E.D. Wash. May 9, 2022) by arguing they have offered a credible explanation for why they did not retain the footage at issue and substantially complied with Plaintiffs' preservation request letter by preserving video of Mr. Rapp and critical evidence related to the day of his suicide. (Dkt. No. 207 at 6.)  As discussed, the Court is not compelled by Lieutenant Hall's explanation.  Additionally, Kitsap County appears to selectively read Plaintiffs' preservation letter to justify their decision not to retain relevant evidence.  While Plaintiffs' preservation letter specifically requested "[a]ll video/audio footage of Mr. Rapp while in custody, both while alive and deceased," it also asserted more generally that "all materials related to the arrest, prosecution, incarceration, medical treatment, and death of Nicholas Winton Rapp must be preserved and left unedited and unredacted for future litigation." (Dkt. No. 179-1 at 2–3.)  Video of Mr. Rapp while in his cell would clearly fall into this request.

In short, Kitsap County has failed to show that the Court committed manifest error when it determined that Kitsap County acted with the intent to deprive Plaintiffs of the 11 hours of video at issue.

      b. <u>Relevancy of Deleted Material</u>

NaphCare separately argues the Court should reconsider its prior order.  (Dkt. No. 219.)  According to NaphCare, "Plaintiffs predicate their request for sanctions against the County on a conspiracy theory—one that literally has zero evidence of support—that certain medical

encounters between NaphCare nurses and Rapp never occurred." (*Id.* at 4.) NaphCare believes the evidence shows that its nurses conducted all recorded examinations of Mr. Rapp. Any discrepancy between the video record and the medical records can be attributed to "the lack of Internet access in the jail [which] makes it impossible to finalize the charting of the assessments at the time they occurred." (*Id.* at 5.) NaphCare further points out that the Court has excluded expert testimony on the theory that NaphCare's nurses falsified Mr. Rapp's medical records. (*See* Dkt. No. 212 at 26.) Finally, NaphCare argues the deleted footage would have no bearing on Mr. Rapp's death because his final, recorded medical record showed that Mr. Rapp "had, at most, mild withdrawal symptoms and denied thoughts of self-harm or suicide." (*Id.* at 9.)

The Court acknowledges Plaintiffs' falsification theory may rest on shaky foundations. At the same time, we are mindful of "holding the prejudiced party to too strict a standard of proof regarding the likely contents of . . . destroyed evidence." *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 430 (W.D.N.Y. 2017) (quoting *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998)). Spoliated evidence need only be relevant to a party's claims or defenses—it does not need to be a smoking gun to merit the imposition of sanctions. The relevance standard under the Federal Rules of Civil Procedure "is commonly recognized as one that is necessarily broad in scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Plaintiffs do not need to put forward a specific theory of the deleted evidence's relevance. To require such a showing would only encourage spoliating parties to fail to abide by their obligations under the

Federal Rules. Under such a lenient standard, the Court has no doubt that the video evidence is relevant to Plaintiffs' negligence and Section 1983 claims against Kitsap County.

The Court separately notes "Rule 37(e)(2) 'does not include a requirement that the court find prejudice to the party deprived of the information.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, No. 17-CV-03301-EMC, 2022 WL 18399982, at *19 (N.D. Cal. Nov. 4, 2022) (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). A finding of an intent to deprive "can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Given Kitsap County's intentional destruction and deprivation of this evidence, the Court may properly infer that Plaintiffs would be prejudiced by the loss of the video.

### c. Revised Sanction

Though the Court does not believe its finding that Kitsap County intentionally spoliated evidence is erroneous, the Court does find that it must revise the sanction imposed in response to the spoliation.

As the Advisory Committee notes:

> Courts should exercise caution . . . in using the measures specified in (e)(2). Finding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision (e)(2). The remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss.

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The Court acknowledges that the 11 hours of videotape that were deleted by Kitsap County may not be the most critical

evidence in this case and may have limited bearing on Mr. Rapp's ultimate suicide. Entering default judgment in the instant case provided a disproportionate reward to Plaintiffs and the Court agrees with Kitsap County (*see* Dkt. No. 207 at 9) that other courts have entered lesser sanctions based on far more egregious conduct. *See, e.g.*, *Hunters Cap.,* 2023 WL 184208, at *10.

When the Court made its prior decision, none of the parties had put forth potential jury instructions that would adequately remedy Plaintiffs' injury while also preventing undue prejudice to NaphCare. Given such a context, the Court felt compelled by the logic of *Hill* that giving the jury an adverse inference against one defendant while instructing the jury not to draw similar inferences towards other defendants whose conduct was arguably implicated in the deleted evidence was unreasonable. 2022 WL 1464830, at *16. On review, this line of reasoning gives too little credit to the jury. "Unless we proceed on the basis that the jury will follow the court's instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them, the jury system makes little sense." *Bruton v. United States*, 391 U.S. 123, 135 (1968) (quoting *Delli Paoli v. United States*, 352 U.S. 232, 242 (1957)).

The Court finds that a permissive adverse inference, with appropriate safeguards, will remedy any prejudice to Plaintiffs and appreciates the parties' new suggestions in this regard. (*See* Dkt. Nos. 207 at 9; 219 at 11.) At trial, the Court will issue an adverse inference to the jury along the following lines:

> Video surveillance from inside the Central A Unit between the time period of 12:59 p.m. through midnight on January 1, 2020 was not preserved by Kitsap County. Kitsap County had a duty to preserve this information and knowingly failed to prevent the destruction of this evidence. You may, but are not required to, presume that the missing video footage would have been adverse to the County.

The language of the instruction will be finalized at the pretrial conference.

Given the adequacy of lesser sanctions, the Court vacates its entry of default judgment against Kitsap County. The Court sees no reason to reconsider its award of attorney fees and costs to Plaintiffs.

## IV   CONCLUSION

Accordingly, and having considered Kitsap County's motion (Dkt. No. 207), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Kitsap County's motion is GRANTED in part and DENIED in part.

1. The Court DENIES Kitsap County's motion to reconsider its finding of spoliation.

2. The Court GRANTS Kitsap County's motion to reconsider the Court's imposition of default judgment. The Court instead will provide the jury with a permissive adverse inference in lieu of entering a default judgment.

3. Kitsap County SHALL advise the Court on whether it wishes the Court to consider its motion to certify for interlocutory appeal (Dkt. No. 210) or whether it seeks to appeal the instant order in a revised motion within two weeks of the issuance of this order.

4. The parties are directed to meet and confer and to propose potential trial and pre-trial deadlines to the Court within three weeks of the issuance of this order so that the Court may enter a new scheduling order.[4]

5. Plaintiff's motion for leave to file additional briefing concerning this matter (Dkt. No. 235) is DENIED.[5]

Dated this 19th day of July, 2023.

---

[4] The Court believes it will issue orders on the pending motions in this case in the near future and that it is prudent to identify a trial date.

[5] The Court appreciates Plaintiffs' desire to respond to NaphCare's submissions on the motion for reconsideration. However, additional briefing is unnecessary as the Court's decision to modify a sanction rests squarely within the Court's discretion.


David G. Estudillo
United States District Judge

ORDER GRANTING IN PART MOTION FOR RECONSIDERATION (DKT. NO. 207) - 12