UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN RAPP et al.,<br><br>　　　　　　Plaintiffs,<br>　v.<br><br>NAPHCARE, INC. et al.,<br><br>　　　　　　Defendants. | CASE NO. 3:21-cv-05800-DGE<br><br>ORDER GRANTING NAPHCARE'S MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 173) |

**I**　　**INTRODUCTION**

This matter comes before the Court on Defendant NaphCare, Inc.'s ("NaphCare") motion for judgment on the pleadings. (Dkt. No. 173.) For the reasons discussed below, the Court GRANTS NaphCare's motion and DISMISSES Plaintiffs' claim against NaphCare pursuant to 42 U.S.C. § 1983 ("*Monell* claim") without prejudice and with leave to amend.

## II  BACKGROUND

The Court has discussed the factual background of this case in prior orders and incorporates the background included in those orders for the sake of judicial economy. (*See, e.g.*, Dkt. Nos. 62 at 2–4; 111 at 2–5; 198 at 2–3.)

Plaintiffs filed their initial complaint in this suit on October 28, 2021. (Dkt. No. 1.) They subsequently amended their initial complaint on January 24, 2022. (Dkt. No. 26.) Defendants moved to dismiss the amended complaint and Plaintiffs subsequently moved for leave to amend their complaint for a second time. (*See* Dkt. No. 50.) The Court subsequently ruled on Defendants' motions to dismiss and Plaintiffs' motion for leave to amend their complaint. (Dkt. No. 62.) As part of the order, the Court granted Defendant Kitsap County's motion to dismiss Plaintiffs' § 1983 claims against the County because "the FAC impermissibly lumps all Defendants together and makes conclusions without factual support." (*Id.* at 13.) The Court granted Plaintiffs' request for leave to amend their complaint but noted that the "the Court will review closely any additional requests for leave to amend." (*Id.* at 20.) Plaintiffs filed their second amended complaint ("SAC") and third complaint overall on July 19, 2022. (*See* Dkt. No. 63.)

On April 6, 2023, NaphCare filed a motion for judgment on the pleadings on Plaintiffs' *Monell* claim. (*See* Dkt. No. 173.) Plaintiffs filed their response brief in opposition to NaphCare's motion on April 20, 2023 (Dkt. No. 177) and NaphCare filed a timely reply (Dkt. No. 186).

## III  DISCUSSION

### A. Legal Standard

1    NaphCare moves for judgment on the pleadings on Plaintiffs' § 1983 claim against them
2    pursuant to Federal Rule of Civil Procedure 12(c).
3    "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6)."
4    *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).  "Judgment on the pleadings is
5    proper when, taking all the [factual] allegations in the pleadings as true, the moving party is
6    entitled to judgment as a matter of law."  *Honey v. Distelrath*, 195 F.3d 531, 532 (9th Cir. 1999).
7    This includes cases where there is a "lack of a cognizable legal theory or the absence of
8    sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901
9    F.2d 696, 699 (9th Cir. 1988).  As with Rule 12(b)(6) claims, the Court may not look beyond the
10   pleadings to resolve a Rule 12(c) motion without converting the motion into one for summary
11   judgment.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.
12   1989).

13   **B. The Court's Prior Order**

14   At the outset, the Court must address Plaintiffs' argument that the Court has already
15   decided whether Plaintiffs have adequately pled a *Monell* claim under § 1983.  (*See* Dkt. No. 177
16   at 2–4.)  The Court agrees with NaphCare that it has not decided the issue in full and NaphCare
17   may therefore bring its motion for judgment on the pleadings.
18   The Court acknowledges the language in its prior order on Plaintiffs' motion to compel
19   was over broad in light of the issues raised in NaphCare's current motion.  (Dkt. No. 151 at 3.)
20   Neither party in the briefing on the motion to compel argued the full merits of whether Plaintiffs
21   had adequately stated a *Monell* claim in the SAC.  Rather, the parties' briefing primarily focused
22   on whether Plaintiffs had identified a NaphCare "policy" that led to a constitutional injury.  (*See*
23   Dkt. Nos. 83 at 9; 84 at 3–4.)  The Court, in turn, focused its analysis on the question of whether

Plaintiffs' discovery requests were relevant, which entailed a determination that Plaintiffs had articulated at least one "policy" that could lead to a constitutional injury. The Court did not decide whether Plaintiffs had adequately pled the remaining elements of a *Monell* claim (discussed further in Section III.D *infra*). While the Court's determination that Plaintiffs alleged several policies (e.g., a policy to charge inmates for mental health care) is entitled to respect under the law of the case doctrine, the parties are free to argue over whether the remaining elements of a *Monell* claim have been met.

### C. Incorporation by Reference

NaphCare asks the Court to consider several documents extrinsic to Plaintiffs' complaint under the incorporation by reference doctrine. (Dkt. No. 173 at 9.)

Though the Court may not normally look at documents outside the pleadings without converting the motion for judgment on the pleadings into a summary judgment motion, the Court may consider certain documents that have been incorporated by reference into the complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (noting that a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

The Court agrees with NaphCare that Plaintiffs reference and rely on the National Commission on Correctional Health Care ("NCCHC") Standard for Health Services in Jails J-E-02, the American Correctional Association ("ACA") Core Jail Standard 4C-09, NCCHC Mental Health Standards MH-E-02 and MH-E-07, and Mr. Rapp's medical records. The Court considers these documents to be incorporated by reference into the complaint and reviews them without converting the motion into one for summary judgment. The Court does not consider NCCHC Mental Health Standard MH-A-03 and NaphCare Policy J-G-02 since these documents

are not referenced in the complaint.  (*Compare* Dkt Nos. 187-2 at 4 *and* 187-3 at 3 *with* Dkt. No. 63.)

### D.  *Monell* Liability

NaphCare argues Plaintiffs have failed to adequately plead a *Monell* claim.  The Court agrees.

Municipalities, and by extension their corporate contractors[1], may be held liable under 42 U.S.C. § 1983 only where they "inflict[] an injury."  *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1185 (9th Cir. 2002), *rev'd on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).  They cannot be sued under a respondeat superior theory of liability.  *See* 290 F.3d at 1175; *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.").

Under the *Monell* line of cases, there are two paths to liability—direct and indirect *Monell* claims.  A party may bring a direct *Monell* claim by arguing "that a particular municipal action *itself* violates federal law."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original).  In such circumstances, the Court must determine whether a municipality's challenged policy or custom is facially unconstitutional and if the municipality deliberately adopted the facially unconstitutional policy.  *See Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1164 (9th Cir. 2018).

A party may also allege an indirect *Monell* claim.  Under the indirect approach, "a plaintiff need not allege that the municipality itself violated someone's constitutional rights or

---

[1] *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (holding that *Monell* applies to "private entities acting under color of state law.").

directed one of its employees to do so. Instead, a plaintiff can allege that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees." *Gibson*, 290 F.3d at 1186. To prevail on an indirect *Monell* claim, however, a plaintiff must establish that the municipality was deliberately indifferent to the injury caused by their otherwise constitutional policy or custom. *See Mann v. Cnty. of San Diego*, No. 3:11-CV-0708-GPC-BGS, 2016 WL 3365746, at *8 (S.D. Cal. June 17, 2016). Additionally, the municipality's deliberate indifference must be the "moving force" resulting in the Plaintiff's constitutional injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

NaphCare argues Plaintiffs have failed to state a *Monell* claim because they 1) have not identified any "policy" or longstanding custom maintained by NaphCare (Dkt. No. 173 at 13), 2) fail to allege NaphCare was deliberately indifferent to the effects of its policies (*id.* at 20), and 3) fail to allege any policy or custom was the "moving force" that caused Mr. Rapp's constitutional injuries (*id.* at 21). In response, Plaintiffs argue 1) they have alleged policies or customs in their complaint maintained by NaphCare (Dkt. No. 177 at 10), 2) they do not need to allege deliberate indifference for direct Monell claims (*id.*), and 3) NaphCare bases its arguments on disputed facts which are not appropriate for resolution on a Rule 12(C) motion (*id.* at 13).

### a.  NaphCare Policies or Customs

As discussed above, the Court previously agreed with Plaintiffs they properly alleged NaphCare maintained several policies or customs and considers this determination to be the law of the case. The Court is not compelled to revisit its prior ruling on this point.

### b.  Direct and Indirect Monell Claims

The parties disagree about whether Plaintiffs need to allege NaphCare was deliberately indifferent of several policies at issue in the complaint.

The parties specifically dispute the pleading standard regarding the following alleged policies:

- NaphCare's Policy to Charge Inmates for Mental Health Assistance (Dkt. No. 63 at 20);
- NaphCare's Policy of Using LPNs to Act Outside the Scope of Practice (*id.* at 21);
- NaphCare's Insufficient Buprenorphine Taper Policy (*id.* 33–34);
- NaphCare's Policy to Use LPN's to Conduct Intake Screens (*id.* at 31–32); and
- NaphCare's Segregation Policy (*id.* at 37).

The Court addresses each of these in turn.

### i. Mental Health Fees

Plaintiffs argue they are bringing a direct *Monell* claim with regard to NaphCare's alleged policy to charge inmates for mental health assistance and as such do not need to allege deliberate indifference.  (Dkt. No. 177 at 10.)  The Court, however, finds this policy may not support a *Monell* claim because this policy does not actually raise constitutional concerns.

To bring a *Monell* claim, either direct or indirect, a party must plead that a municipality's policy is unconstitutional.  *See Townsend through Townsend v. Cnty. of Santa Cruz*, No. 19-CV-00630-BLF, 2021 WL 3913174, at *8 (N.D. Cal. Sept. 1, 2021).  Here, however, NaphCare's policy to charge inmates for mental health assistance is constitutional.  As numerous courts have recognized, there is nothing inherently unconstitutional in charging inmates who are not indigent a small copay to receive medical care.  *See, e.g.*, *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("[T]he imposition of a modest fee for medical services, standing alone, does not violate the Constitution."); *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997) ("If a prisoner is able

to pay for medical care, requiring such payment is not 'deliberate indifference to serious medical needs.'"). While a policy that requires indigent prisoners to pay a fee prior to receiving medical care may be unconstitutional, NaphCare's policy, which Plaintiffs selectively quote, specifically states "[n]o inmate will be refused medical treatment because of inability to pay." (Dkt. No. 188 at 4.) This policy, therefore, cannot be the basis of a *Monell* claim against NaphCare.

### ii.　LPN Scope of Practice

Plaintiffs also allege NaphCare has a policy of allowing "LPNs to serve as gatekeepers and make [sic] to make independent assessment and treatment decisions." (Dkt. No. 63 at 21.) In their briefing, Plaintiffs appear to assert an indirect *Monell* claim against this policy. (*See* Dkt. No. 177 at 11–13.) However, Plaintiffs fail to adequately allege deliberate indifference, a required element of any indirect *Monell* claim.

"Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs*, 520 U.S. at 405. A municipality may be found to be deliberately indifferent where the plaintiff establishes facts available to the municipality which "put them on actual or constructive notice that the particular omission [or act] is substantially certain to result in the violation of the constitutional rights of their citizens." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1249 (9th Cir. 2016) (alteration in original) (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). Though a single incident in exceptional circumstances may be sufficient to establish actual or constructive notice that a municipality's policy is causing constitutional injuries, *see, e.g., Bd. of Cnty. Comm'rs*, 520 U.S. at 409, "generally, a single instance of unlawful conduct is insufficient to state a claim for municipal

liability under section 1983," *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021).

Plaintiffs' complaint contains no specific allegations linking NaphCare's LPN policy to events that would put them on notice of the potential constitutional harms associated with the policy.[2] *See AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (discussing pleading standards for *Monell* claims and directing courts to apply Twombly/Iqbal standard to *Monell* claims). Plaintiffs cite to two prior cases involving suicides at the Kitsap County Jail in their compliant, but, as alleged, there is nothing linking these suicides to NaphCare's alleged LPN policy. (*See* Dkt. No. 63 at 38.) Plaintiffs also cite to a number of cases in their complaint as evidence of NaphCare's "reputation for providing constitutionally inadequate medical care in prisons and jails" (*see* Dkt. No. 63 at 41–42), but these cases are factually dissimilar to the instant one and the Court cannot find these allegations indicate NaphCare had actual or constructive knowledge that its alleged LPN policy was leading to constitutional violations.

      iii.    <u>Insufficient Buprenorphine Taper</u>

---

[2] In their briefing, Plaintiffs cite to *Est. of Marti v. Rice*, No. 1:19-CV-980, 2023 WL 145592 (S.D. Ohio Jan. 10, 2023) and *Tapia v. NaphCare, Inc.*, No. 2:22-CV-01141 (W.D. Wash removed to federal court Aug. 15, 2022), however these cases cannot provide the requisite notice. *Est. of Marti* is factually dissimilar from the instant case as it involves different LPNs in a different state (Ohio) at a different jail (Hamilton County Justice Center) who were responsible for treating an inmate with a different medical ailment (a head injury). *See* 2023 WL 145592 at *1–2. The court also did not find that NaphCare had a policy of letting LPNs act outside their scope. Rather, it determined on summary judgment that "[a] reasonable jury could conclude that NaphCare had a custom or unwritten policy of allowing LPNs to operate outside the scope of their practice." *Id.* at 16. While Plaintiffs incorporated *Tapia* into their complaint, the case is once again factually distinct and could not have provided actual or constructive notice to NaphCare because it was filed <u>after</u> January 2, 2020. *Cf. Perryman v. City of Pittsburg*, 545 F. Supp. 3d 796, 801–802 (N.D. Cal. 2021) (discussing circumstances in which prior cases could put defendant on actual or constructive notice of constitutional violations with respect to their alleged policies).

      Plaintiffs allege NaphCare's buprenorphine taper protocol was facially unconstitutional. (Dkt. No. 177 at 14.)  Taking the non-conclusory facts alleged in the pleadings as true for purposes of this motion, Plaintiffs fail to allege a direct *Monell* claim against NaphCare for providing inadequate medical care.

      To bring a direct *Monell* claim, a plaintiff "must show that the [facially unconstitutional] municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs*, 520 U.S. at 404.   Since § 1983 claims do not require an independent state of mind showing, a party must show "the state of mind required to prove the underlying violation." *Id.* at 405.  In the instant case then, Plaintiffs must prove NaphCare "wanted" its nurses to ignore inmates' medical needs, not that they were deliberately indifferent to those needs. *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 682 n.17 (9th Cir. 2021).  Plaintiffs ultimately fail to plead facts to support such a claim.

      Plaintiffs allege NCCHC standards require jailers to provide inmates with opioid treatment, including drugs such as buprenorphine or methadone which treat opioid dependency. (Dkt. No. 63 at 33.)  According to Plaintiffs, Mr. Rapp constantly requested buprenorphine to treat his opioid withdrawal, but was not prescribed any pursuant to NaphCare's traditional opioid detox protocol, which consisted of Clinical Opiate Withdrawal Score ("COWS") assessments and comfort medication, nor pursuant to NaphCare's buprenorphine taper protocol. (*Id.* at 33–34.) NaphCare's employees denied Mr. Rapp opioid withdrawal drugs notwithstanding NaphCare's knowledge at the time that traditional opioid detox protocols, which consist of COWS monitoring, were insufficient to protect patients. (*Id.* at 34.)  Plaintiffs also allege NaphCare's attempt to supplement its existing opioid detox treatment through the use of a

"buprenorphine taper" was ineffective "because: (1) nurses were provided no training on how to implement it; (2) there was no supervision to ensure that nurses were implementing it correctly; and (3) per NaphCare policy, a score of '9' was required to trigger it." (*Id.*)

None of these facts support an inference that NaphCare itself wanted or intended for its employees to fail to provide adequate medical care for inmates undergoing withdrawal from opioids. Indeed, the fact that NaphCare adopted a supplemental buprenorphine taper policy in certain jails indicates the opposite. Plaintiffs otherwise do not plead non-conclusory facts that indicate NaphCare's intent in implementing its buprenorphine taper.[3]

                iv.    <u>NaphCare's Policy to Use LPNs to Conduct Intake Screens</u>

Plaintiffs allege that NaphCare had a policy of using LPNs to conduct intake screens rather than mental health staff. (Dkt. No. 63 at 31–32.) This policy, however, cannot support a *Monell* claim because Plaintiffs do not plead facts that would put NaphCare on actual or constructive notice that this policy was causing constitutional harms. Plaintiffs do not allege any other incidents which would put NaphCare on notice that its failure to have mental health staff screen inmates upon intake caused constitutional violations. Nor is NaphCare's policy, on its face, clearly likely to lead to constitutional harms. Indeed, NCCHC MH-E-02, which Plaintiffs

---

[3] Plaintiffs' argument that NaphCare failed to train and supervise its employees in implementing its buprenorphine policy fails for similar reasons. (*see* Dkt. No. 177 at 14 n.5.) To prevail on a failure to train claim, Plaintiffs must plead "sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez*, 993 F.3d at 1153–54. To prevail on a failure to supervise claim, a plaintiff must also plead deliberate indifference. *See Thompson v. Rahr*, 714 F. App'x 805, 807 (9th Cir. 2018). Plaintiffs' complaint does not contain facts that would allow the Court to conclude NaphCare was deliberately indifferent on either the failure to train or supervise claims.

ORDER GRANTING NAPHCARE'S MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 173) - 11

cite as evidence in favor of their *Monell* claim, clearly states that correctional staff trained in mental health may conduct initial mental health screens.  (*See* Dkt. No. 63 at 31.)[4]

### v.   NaphCare's Segregation Policy

Finally, Plaintiffs allege NaphCare policies "do not require mental health staff interaction" and supervision of individuals in general population.  (*See id.* at 38.)  Plaintiffs also specifically allege Mr. Rapp was assigned to general population, not segregation.  (*Id.* at 36.)

These policies do not appear to give rise to any constitutional injury and are not inconsistent with national standards.  The NCCHC standards Plaintiffs cite in their complaint indicate it is the standard of care for mental health staff or a qualified medical professional to evaluate the mental health and placement of individuals who are housed in segregation.  (Dkt. No. 63 at 37.)  These same standards do not apply to inmates placed in general population and NaphCare cannot be said to have violated Mr. Rapp's rights for failing to abide by inapplicable standards.

In sum, Plaintiffs have failed to plead the sufficient facts to establish a *Monell* claim against NaphCare.

### E.  Leave to Amend

"Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment."  *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) (quoting *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004)).

---

[4] Plaintiffs also argue NaphCare's "Mental Health Screen" form used upon intake is inadequate according to leading medical standards. (Dkt. No. 177 at 13–14.).  However, for many of the same reasons discussed above, Plaintiffs fail to allege NaphCare was constructively or actually aware that its intake screen was causing constitutional injuries.

1    Plaintiffs have amended their complaint twice and each time have failed to plead facts sufficient for them to maintain a *Monell* claim.  Nonetheless, "requests for leave should be granted with extreme liberality." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (cleaned up).  Plaintiffs assert to the Court that "[n]ew facts continue to surface" (*see* Dkt. No. 177 at 16), and these facts may properly give rise to a *Monell* claim.  While Plaintiffs fail to identify whether these new facts have any bearing on their *Monell* claim, the Court can conceive of amendments to the complaint that may cure the deficiencies identified above.  Specifically, Plaintiffs may be able to more concretely allege facts[5] demonstrating that NaphCare had actual or constructive notice that certain of its policies were resulting in constitutional injuries.  Additionally, Plaintiffs' prior amendments were not directed at correcting issues with their *Monell* claim against NaphCare.  *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) ("This is not a case where plaintiffs took 'three bites at the apple' by alleging and re-alleging the same theories in an attempt to cure pre-existing deficiencies.").

The Court therefore GRANTS Plaintiffs with leave to amend their complaint but cautions that such amendment may not be used as an excuse to further delay proceedings or subvert prior court rulings.

---

[5] It must be emphasized that Plaintiff must identify facts supporting a proposition and not just conclusory statements claiming a proposition is obvious.  (*See, e.g.*, Dkt. No. 63 at 54) ("These defendants knew of this excessive risk to inmate health and safety because it was obvious and because numerous other inmates had been injured and/or killed as a result of these inadequacies in the past.").  Preferably the facts will be summarized near the proposition asserted rather than requiring the reader to search for the facts in a voluminous pleading.  Plaintiffs should also avoid loquacious sentences that require the reader to decode their meaning.  (*See, e.g., id.* at 47) ("But even if these Defendants did not have knowledge of the risk of harm, the risk created by their policies, customs, and/or protocols—and lack thereof/lack of training thereon/lack of funding to implement—was obvious in light of reason and the basic general knowledge that they are presumed to have obtained regarding the type of deprivation.").

## IV   CONCLUSION

Accordingly, and having considered NaphCare's motion (Dkt. No. 173), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that NaphCare's motion is GRANTED.  Plaintiffs' § 1983 claim against NaphCare is DISMISSED and Plaintiffs are GRANTED leave to amend their complaint.

1. Plaintiffs SHALL file their amended complaint within two weeks (14 days) from the issuance of this order.

Dated this 24th day of July, 2023.

David G. Estudillo
United States District Judge