UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN RAPP,<br><br>                  Plaintiff,<br><br>  v.<br><br>NAPHCARE INC,<br><br>                  Defendant. | CASE NO. 3:21-cv-05800-DGE<br><br>ORDER GRANTING MOTION FOR LEAVE TO INTERVENE AND TO MODIFY PROTECTIVE ORDER (DKT. NO. 336) |

## I    INTRODUCTION

Before the Court is Plaintiffs' Motion for Leave to Intervene and To Modify Protective Order. (Dkt. No. 336.) Defendants have filed a Statement of Discovery Dispute (Dkt. No. 338) concerning the same matters and alleging violations of the protective order, as well as a Response (Dkt. No. 347) to the instant motion. Because Ninth Circuit caselaw is clear that permissive intervention under Federal Rule of Civil Procedure 24(b) is the appropriate vehicle for a non-party to challenge a protective order and the Circuit strongly favors collateral access to discovery materials, the Court GRANTS the motion.

## II  BACKGROUND

This case concerns the death by suicide of Nicholas Rapp in the Kitsap County Jail. Plaintiffs generally allege that the Jail's medical provider, Defendant NaphCare, failed to provide Rapp with adequate care while he was experiencing withdrawal symptoms, resulting in his death. (*See generally*, Dkt. No. 273.)  This is one of several cases in this district against NaphCare related to the medical services it provides in multiple county jails in Washington.  In *Tapia v. NaphCare, Inc.*, et al., No. 2:22-cv-01141-KKE, Plaintiff Javier Tapia alleges that failures by NaphCare resulted in amputation of his leg. (*See generally*, *Tapia* Dkt. No. 15.)[1]  The same firm and lead counsel represent NaphCare in both matters, and likewise counsel is the same for both plaintiffs, Rapp and Tapia.[2]  In this motion, Tapia seeks to intervene into the *Rapp* litigation "for the limited purpose of modifying the protective order (Dkt. # 60) and requesting unsealing of certain records obtained through discovery." (Dkt. No. 336 at 1.)  Tapia seeks to modify the protective order to access a financial audit concerning transactions between NaphCare and related entities produced in the *Rapp* litigation.  (*See* Dkt. No. 350 at 3.)  Tapia argues this audit is relevant to discovery requests in his litigation about the related entities and that NaphCare has not fully complied with discovery orders in his case.  (*Id;* Dkt. No. 336 at 6.)  NaphCare argues that the financial audit is irrelevant to Tapia's claims, that it is confidential, and that it has already produced the identity of those entities after being ordered to do so by the *Tapia* court. (Dkt. No. 347 at 9, 15–16.)

---

[1] The Court takes judicial notice of the *Tapia* docket, which is cited in the motion to intervene. (*See e.g.*, Dkt. No. 336 at 2.)  All citations to the *Rapp* docket will be in the form "(Dkt. No. ## at ##)" while citations to the *Tapia* docket will be in the form "(*Tapia* Dkt. No. ## at ##)."

[2] The same pair of counsel also represent Defendant NaphCare and Plaintiffs, respectively, in another matter before this Court, *Smith et al. v. NaphCare, Inc.*, et al., No. 3:22-cv-05069-DGE.

ORDER GRANTING MOTION FOR LEAVE TO INTERVENE AND TO MODIFY PROTECTIVE ORDER (DKT. NO. 336) - 2

### III      DISCUSSION

**A.   Legal Standard**

      i.   <u>Intervention to Modify a Protective Order</u>

Federal Rule of Civil Procedure 24(b)(1)(B) allows permissive intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." The Ninth Circuit has stated unambiguously that "Rule 24(b) permits limited intervention for the purpose of challenging a protective order." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) ("*Beckman*"). This is reflected in the Western District of Washington's Local Civil Rules, which provide that "[a] non-party seeking access to a sealed document may intervene in a case for the purpose of filing a motion to unseal the document." LCR 5(g)(8).

The requirements for permissive intervention are modified in the context of a motion to intervene to challenge a protective order. Typically, a prospective intervenor must show "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman,* 966 F.2d at 473 (quoting *Garza v. Cnty. of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1990)). But the first requirement does not apply at all here. A litigant who seeks to intervene only to challenge a protective order need not establish independent jurisdictional grounds because they "do not seek to litigate a claim on the merits" and rather "ask the court only to exercise that power which it already has, *i.e.*, the power to modify the protective order." *Id*. Similarly, the commonality requirement is leniently applied. In *Beckman*, litigants in state court challenging the scope of an insurance policy sought to intervene in federal litigation concerning the same insurance policy to gain access to six deposition transcripts. *Id.* at 471. The Ninth Circuit affirmed the district court

in finding that "the importance of access to documents prepared for similar litigation involving the same parties satisfied the commonality requirement of 24(b)." *Id.* at 474. The two cases did not need to involve the same clauses of the policy or legal theories, because "[t]here is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order." *Id.* Finally, timeliness is assessed according to three factors, "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *San Jose Mercury News, Inc. v. U.S. Dist. Ct.--N. Dist. (San Jose)*, 187 F.3d 1096, 1101 (9th Cir. 1999).

        ii.  Collateral Discovery

The Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). That is because "[a]llowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Id.* For that reason, "[w]here reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material should generally be granted." *Id.* at 1132.

The burden for the collateral litigant is to "demonstrate the relevance of the protected discovery to the collateral proceedings and its general discoverability therein." *Id.* The relevance showing "prevents collateral litigants from gaining access to discovery materials merely to subvert limitations on discovery in another proceeding." *Id.* The litigant need not obtain a ruling from the collateral court regarding relevance prior to requesting modification of

ORDER GRANTING MOTION FOR LEAVE TO INTERVENE AND TO MODIFY PROTECTIVE ORDER (DKT. NO. 336) - 4

the protective order, however. *Id.* Likewise, the decision for this Court is *not* "whether the collateral litigants will ultimately obtain the discovery materials"—that is for the collateral court to decide. *Id.* at 1133. Rather, this Court must make a "rough estimate of relevance" of the materials to determine if "the protective order will bar the collateral litigants from gaining access to the discovery already conducted." *Id.* at 1132–33. In so doing, the Court must "weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.* at 1133. But "[r]eliance will be less with a blanket [protective] order, because it is by nature overinclusive . . . . Thus, reliance on a blanket protective order in granting discovery and settling a case, without more, will not justify a refusal to modify." *Id.* (internal quotation omitted). Moreover, "any legitimate interest . . . in continued secrecy as against the public at large can be accommodated by placing [the collateral litigants] under the same restrictions on use and disclosure contained in the original protective order." *Id.* (quoting *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990)) (alteration omitted).

### B. Analysis

#### i. Commonality

First, the Court considers whether there is sufficient commonality between this case and *Tapia* under the standard set forth in *Beckman*. There is. Both cases concern the same defendant, NaphCare, with similar allegations regarding failures to provide adequate healthcare in correctional facilities. Both allege negligence and constitutional violations against NaphCare. (*Compare* Dkt. No. 273 at 54, 58–59 *with Tapia* Dkt. No. 15 at 21–22.) Both allege that NaphCare failed to admit patients to the hospital who required hospital-level care, and that NaphCare maintained a policy of allowing low-level providers like LPNs to perform medical

services that required greater levels of care. (*Compare* Dkt. No. 273 at 12–15, 38–39 *with Tapia* Dkt. No. 15 at 13–14).[3] While there are important factual differences between the cases in terms of the medical care that was (or was not) provided in each and how those acts/omissions affected the plaintiffs, those specifics are of the sort that *Beckman* cautioned should not defeat a motion to intervene. *See* 918 F.2d at 474.

          ii.   Timeliness

Next, the Court examines timeliness. Defendants do not argue that Plaintiffs' motion is untimely. Plaintiffs argue that their motion is timely because denying it could result in reopening the *Tapia* discovery and granting it would "dramatically increase efficiency in the collateral litigation." (Dkt. No. 336 at 5–6.) In the Court's view, the more relevant question is whether the motion is timely in *this* litigation. Recall that the standard for timeliness is "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *San Jose Mercury News*, 187 F.3d at 1101. In this case, discovery is long closed and a phalanx of summary judgement motions are pending. (*See* Dkt. Nos. 22, 294, , 296, 297, 300, 304, 307). The protective order was entered on June 21, 2022, and the motion to intervene was filed on October 2, 2024, a gap of more than two years. (Dkt. Nos. 60, 336.) Nonetheless, Defendant does not specifically argue that it is prejudiced by the delay, and the Court does not see why it would be. NaphCare does argue that the motion to intervene should be denied because discovery is closed in *Tapia*, and so intervention would "circumvent"

---

[3] This Court previously denied a motion to consolidate this case with *Smith et al. v. NaphCare, Inc., et al.,* No. 3:22-cv-05069-DGE, because "the two matters are factually distinct" and because "consolidation may lead to complications during discovery and motion practice that are too difficult to assess at this time." (Dkt. No. 61 at 2–3.) While the same could be said of the relationship between this case and *Tapia*, this motion to intervene presents the Court with a far more discrete issue—modifying the protective order to allow collateral use of a particular product of discovery—and a different legal standard.

ORDER GRANTING MOTION FOR LEAVE TO INTERVENE AND TO MODIFY PROTECTIVE ORDER (DKT. NO. 336) - 6

discovery orders in that case. (Dkt. No. 347 at 11–14). But Plaintiffs respond that there is an open discovery dispute in *Tapia* at least as to this item, and that dispute is the impetus for this motion. (*See* Dkt. Nos. 350 at 3, 336 at 3, *Tapia* Dkt. No. 151.) Thus, the risk of circumvention of the collateral court appears low, as does the risk for prejudice, since Defendants have been on notice of the dispute in *Tapia*. (*See Tapia* Dkt. No. 151.)

Further, the Court can reason by analogy to length of delay in other cases. The motion to intervene in *San Jose Mercury News* came only 12 weeks after the protective order was entered. 187 F.3d at 1101. Still, the court noted that "delays measured in years have been tolerated where an intervenor is pressing the public's right of access to judicial records," citing *Beckman*, in which intervention was affirmed two years after settlement, and *Public Citizen v. Ligget Group, Inc.*, 858 F.2d 775, 785 (1st Cir. 1988) (collecting cases with delays of two, three, or even four years).[4]  *Id.*  Accordingly, the Court finds that the motion is timely.

### iii. Relevance

With Plaintiffs having met the minimal burden for intervention, the Court turns to assessing the relevance of the sought-after discovery to the collateral case. Again, the Court emphasizes that it is only making a "rough estimate of relevance" for the purpose of modifying the protective order, and any ruling on use of the discovery itself in the collateral case is left to the collateral court. *Foltz*, 331 F.3d at 1132–33. However, the Court need not guess as to the relevance of the financial audit, because the *Tapia* court has already ruled on the relevance of

---

[4] Although *San Jose Mercury News* framed tolerance of long delays as justified due to the public's right of access to judicial records, there is no indication that the depositions sought in *Beckman* were publicly released. Rather, Beckman states that "the intervenors agreed to use the six deposition transcripts in accordance with protective orders in the pending state actions." 966 F.2d at 471–72.

ORDER GRANTING MOTION FOR LEAVE TO INTERVENE AND TO MODIFY PROTECTIVE ORDER (DKT. NO. 336) - 7

1  financial documents in that case.  The *Tapia* court ordered NaphCare to respond to Interrogatory
2  No. 18, which asked NaphCare to identify "each legal entity under common control with
3  NaphCare . . . and describe the legal and tax relationships between the entities." (*Tapia* Dkt. No.
4  86 at 13.)  That included "[p]roduc[ing] all documents and materials you identified or relied
5  upon in answering Plaintiff's Interrogatory No. 18." (*Id.*) (first alteration in original).  The court
6  reasoned that "Tapia's *Monell* theory is based in part on NaphCare's policy and practices
7  allegedly prioritizing profit over care, discovery that reveals '[w]here NaphCare's revenue
8  stream begins and ends' is relevant to Tapia's claim." (*Id.*)  The court also granted Tapia's
9  motion to compel a response to Interrogatory No. 19, seeking identities of "shareholders and
10  corporate officers of each legal entity under common control with NaphCare and describe the
11  compensation paid to each of them," because it "goes to whether NaphCare has directed funds
12  away from patient care." (*Id.* at 13–14.)  Further, the court granted Tapia's motion to compel
13  RPF Nos. 25 and 26 "seeking internal budgets for inmate health and mental health services,"
14  because it would be "relevant to his *Monell* claim, which is based on the theory that NaphCare
15  has a practice of limiting access to appropriate levels of care in order to save money." (*Id.* at 14.)
16         The financial audit of NaphCare entities produced in this case is at least *relevant* to
17  *Tapia*.  NaphCare argues that it already responded to Interrogatory No. 18 in full by listing its
18  related entities. (Dkt. No. 347 at 9.)  It also argues that "[t]he document is also irrelevant
19  because it does not support Tapia's claims," since Tapia is wrong about how money flows
20  between NaphCare entities. (*See id.* at 15–16.)  But that misunderstands the relevance inquiry.
21  It is not for this Court to rule on the ultimate issues raised in the *Tapia* litigation, nor sit as a jury
22  in his case.  The Court need only make a bare determination of relevance to the collateral
23  dispute.  And since the *Tapia* court has already held that "discovery that reveals '[w]here
24

ORDER GRANTING MOTION FOR LEAVE TO INTERVENE AND TO MODIFY PROTECTIVE ORDER
(DKT. NO. 336) - 8

NaphCare's revenue stream begins and ends' is relevant to Tapia's claim," (*Tapia* Dkt. No. 86 at 13) this Court can easily conclude that a financial audit of NaphCare's related entities is relevant.

        iv.  <u>Reliance</u>

Finally, NaphCare argues the protective order should not be modified because of its reliance on the existing order. (Dkt. No. 347 at 14.) The financial audit is sensitive, including "detailed descriptions of NaphCare's assets, debts, costs, revenues, and profits" that NaphCare understandably "does not want its competitors to have access to." (*Id.*) But the modification will not allow Plaintiffs to post the audit on the world wide web for all to see, rather, the modification will only allow use of the audit in the *Tapia* litigation. A protective order has been entered in that case as well. (*Tapia* Dkt. No. 43.) Indeed, the Ninth Circuit has stated that "any legitimate interest . . . in continued secrecy as against the public at large can be accommodated by placing [the collateral litigants] under the same restrictions on use and disclosure contained in the original protective order." *Foltz*, 331 F.3d at 1133.

NaphCare argues that these promises are insufficient because of what they call "repeated, flagrant violations of the current protective order." (Dkt. No. 347 at 15.) NaphCare has stated its intent to file an order to show cause why sanctions should not issue against Plaintiffs for these alleged violations. (*See generally*, Dkt. No. 338.) At this time, the order to show cause has not yet been filed, so this dispute need not be resolved definitively.[5] However, the Court does not believe that the alleged violations are a sufficient basis for denying the motion to intervene. Several of the alleged violations concern discussion or correspondence between counsel, including during meet and confer sessions, where the thrust of the argument is that counsel for

---

[5] The Court directed the parties to complete briefing on this motion to intervene before it would consider an order to show cause. (Dkt. No. 339.)

ORDER GRANTING MOTION FOR LEAVE TO INTERVENE AND TO MODIFY PROTECTIVE ORDER (DKT. NO. 336) - 9

Tapia "cross-contaminated *that* case with the confidential information produced in *this case*." (*See* Dkt. Nos. 338 at 2–3, 347 at 10.)  But the counsel in the two cases are *the same*, and each has full knowledge of discovery in both cases.[6]  The protective order prohibits "use" of discovery in *Rapp* in other matters (Dkt. No. 60 at 3, ¶ 4.1), but NaphCare has not offered authority nor explained how such a restriction extends to confidential communication between counsel.[7]  The one alleged violation that concerns individuals outside of the Rapp/Tapia counsel is that Plaintiffs emailed the confidential audit to Pierce County, which is a defendant in *Tapia* but not *Rapp*.  (*See* Dkt. No. 338 at 2.)  Plaintiffs state this was an inadvertent error and they promptly instructed Pierce County to destroy the document, which the County did.  (*See id.* at 4 n.4, *cf.* Dkt. No. 60 at 8–9, stipulating that the obligations of a receiving party of inadvertently produced materials are the same as those in Federal Rule of Civil Procedure 26(b)(5)(B), under which the party "must promptly return, sequester, or destroy the specified information and any copies it has").  NaphCare does not state how it was harmed by the inadvertent disclosure.

Based on the information currently available in the record, the Court does not perceive a genuine risk that modifying the protective order in *Rapp* to allow collateral use in *Tapia* will result in public disclosure of the confidential audit, and does not find that the alleged violations are a reason to deny the modification and intervention.

**C.  Discovery Dispute Statement (Dkt. No. 338).**

---

[6] Of note, Paragraph 4.2 of the protective order allows disclosure to "the receiving party's counsel of record in this action, as well as employees of counsel to whom it is reasonably necessary to disclose the information for this litigation." (Dkt. No. 60 at 4.)

[7] As counsel for Plaintiffs point out, they have an ethical obligation to both clients. (*See* Dkt. No. 336 at 2, n.1.)  If counsel has knowledge that discovery in one case would benefit their client in the other, their options are to a) meet and confer to reach an agreement, or b) move to modify the protective order. (*See id.*; *See* Dkt. No. 350 at 3, invoking ¶ 6.2 of the protective order, which provides the process to challenge confidentiality designations via meet and confer.).

ORDER GRANTING MOTION FOR LEAVE TO INTERVENE AND TO MODIFY PROTECTIVE ORDER (DKT. NO. 336) - 10

Having ruled on the present motion, which involves similar, if not, identical issues raised in the Parties' Discovery Dispute Statement, the Court will take no further action on the Discovery Dispute Statement. If either Party believes this Order fails to address all issues raised in the Discovery Dispute Statement, the Parties shall meet and confer and then draft a new discovery dispute statement that takes into account the Court's ruling on the present motion.

### IV    CONCLUSION

For the reasons stated above, the motion is GRANTED. Tapia is granted leave to intervene for the limited purpose of modifying the protective order and requesting unsealing of certain records obtained through discovery. The Court ORDERS that the protective order (Dkt. No. 60) is modified in the following manner: Documents related to NaphCare's corporate structure produced in discovery, including documents with information about related entities or entities under common control, are hereby unsealed for the limited purpose of use in *Tapia v. NaphCare*, No. 22-1141-KKE. The "confidential" designation of these documents is modified to allow for use in *Tapia* (consistent with the protective order in that case) but all other confidential use restrictions remain, including the prohibition on disclosure of the documents to the public or beyond the parties in *Tapia*.

Dated this 31st day of October, 2024.

David G. Estudillo
United States District Judge