1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

| | |
|---|---|
| JOHN RAPP,<br><br>                    Plaintiff,<br><br>    v.<br><br>NAPHCARE INC,<br><br>                 Defendant. | CASE NO. 3:21-cv-05800-DGE<br><br>ORDER GRANTING IN PART<br>AND DENYING IN PART<br>PLAINTIFFS' PARTIAL MOTION<br>FOR SUMMARY JUDGMENT<br>(DKT. NO. 307) |

11
12
13
14
15
16

## INTRODUCTION

Before the Court is Plaintiffs' Partial Motion for Summary Judgment (Dkt. No. 307), concerning Defendants' affirmative defenses. Previously, the Court ruled on multiple motions for summary judgment from Defendants. (*See* Dkt. No. 355.) The Court discussed the facts of this case extensively in that order and assumes familiarity with the facts here.

The scope of the dispute has narrowed significantly over the course of briefing, as Defendants withdrew several defenses in their respective responses. What remains live for the Court's consideration is:

- NaphCare's defenses of standard of care, causation, and foreseeability (Dkt. No. 323 at 7);

- NaphCare's defense of Nicholas Rapp's conduct and that of Plaintiffs (*id.* at 8; *see also* Dkt. No. 322 at 3–5);[1]

- NaphCare's defense of laches, waiver, and estoppel (Dkt. No. 323 at 18); and

- NaphCare's defense of good faith (*id.* at 22).[2]

The Court addresses each of these in turn.

## ANALYSIS

### 1. Standard of Care, Causation, and Foreseeability.

The Court discussed standard of care and causation in its order granting in part and denying in part Defendants' motions for summary judgment. (*See* Dkt. No. 355.) Defendants acknowledge that these defenses are not affirmative defenses but assert that in the Ninth Circuit defendants may raise negative defenses in an answer. (Dkt. No. 323 at 13.) The Court agrees with Defendants that "even if defenses related to standard of care, causation, and foreseeability should not have been pled in the NaphCare Defendants' Answer, 'at this late stage in the litigation, striking negative defenses would do little more than tidy up the pleadings.'" (*Id.* at 14, quoting *Lister v. Hyatt Corp.*, 2019 WL 5190893, at *9 (W.D. Wash. Oct. 15, 2019)). At trial, Defendants will be able to avail themselves of these negative defenses on the claims that remain

---

[1] Defendants also asserted a defense of "fault of other parties" but clarified that they were referring to one another, not Plaintiffs, and Plaintiffs do not oppose that defense. (*See* Dkt. Nos. 322 at 6; 323 at 24; 335 at 12–13.)

[2] Defendant Nagra largely joins in NaphCare's response (*see* Dkt. No. 326) and the Court analyzes her response together with the NaphCare response.

live.  Because striking these defenses from Defendants' answer would serve no practical purpose at this stage, the Court DENIES Plaintiffs' motion as to these defenses.

### 2.  Nicholas Rapp's Conduct and That of Plaintiffs

#### a.  NaphCare's Defense as to Nicholas Rapp's Conduct

The Parties dispute the scope of this Court's previous orders, in which the Court held that "a defense of contributory negligence, as against Nicholas [Rapp], is precluded by state law." (Dkt. No. 202 at 6.)  (*See also* Dkt. No. 224, denying reconsideration.)  NaphCare Defendants now argue that even though this Court's prior rulings prohibit them from claiming contributory negligence as to the "*act* of an inmate's suicide" they may continue to claim contributory negligence as to "pre-suicide obstruction of medical care."  (Dkt. No. 323 at 15.)  This "obstruction" is a reference to Rapp's repeated denial that he was suicidal and his failure to request a mental health counselor or "otherwise accept the medical care that was repeatedly made available to him."  (*Id.* at 17.)

Upon first impression, NaphCare's asserted distinction appears to split hairs, but there have been significant developments in this case that have brought the legal issues into focus since the Court's prior orders.  For one, in its most recent order, this Court granted summary judgment on the common law negligence and gross negligence claims against NaphCare.  (Dkt. No. 355 at 29–33.)  The Court reasoned that all of Plaintiffs' negligence claims against NaphCare arose from NaphCare's allegedly negligent provision of healthcare, and that under Washington law all healthcare-related negligence claims must be brought under the state's medical malpractice law, Washington Revised Code 7.70.  (*Id.* at 29–30, citing *Branom v. State*, 974 P.2d 335, 338 (Wash. Ct. App. 1999)).  The Court further observed that NaphCare's duty to inmates is limited to the healthcare-related duties it assumed by contract.  (*Id.* at 30, citing

1   *Picciano v. Clark Cnty.*, No. 3:20-CV-06106- DGE, 2024 WL 3859755, at *11 (W.D. Wash.

2   Aug. 19, 2024)).  Finally, with respect to a jailer's common-law duty to protect the "health,

3   welfare, and safety" of an inmate, as recognized by *Gregoire v. City of Oak Harbor*, 244 P.3d

4   924, 927 (Wash. 2010), the Court noted that "NaphCare is not a jailer."  (*Id.*)  Following the

5   Court's order granting summary judgment to NaphCare on the common law negligence claims,

6   the only negligence claims remaining against NaphCare are statutory medical negligence claims

7   against Defendants McCleary, Molina, and Nagra.  (*See id.* at 81.)

8       In the Court's previous orders, it did not have an opportunity to consider a) whether the

9   difference between common law negligence and statutory medical negligence claims in the

10   corrections context affects the ability of a contracted medical provider to assert a contributory

11   negligence defense or b) how Defendants NaphCare and Kitsap County are situated vis-à-vis one

12   another in the analysis.  Rather, the Court discussed how the plurality opinion of Justice Sanders

13   in *Gregoire* became a majority opinion in *Hendrickson v. Moses Lake School District*, 428 P.3d

14   1197 (Wash. 2018), and held that *Hendrickson*'s adoption of the *Gregoire* contributory

15   negligence rule is not dicta.  (*See* Dkt. Nos. 202 at 5–6; 224 at 3.)  While the Court stands by

16   those conclusions, the developments in this case since that time merit further analysis of how the

17   *Gregoire*/*Hendrickson* rule applies here.

18       Additionally, there has been an important development in Washington caselaw that sheds

19   further light on this issue.  In *Estate of Essex by & through Essex v. Grant County Public*

20   *Hospital District No. 1*, the Washington Supreme Court held that when an entity with a

21   nondelegable duty of care contracts performance of that duty to another actor, the ultimate duty

22   and vicarious liability remains with the contracting entity.  546 P.3d 407, 411 (Wash. 2024)

23   ("*Essex*").  In that case, a hospital—which owes a nondelegable duty of care to its patients—

24

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' PARTIAL MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 307) - 4

1    retained liability for the negligent performance of that duty by an independent contractor

2    physician.  *Id.* at 409.  *See also Vargas v. Inland Washington, LLC*, 452 P.3d 1205, 1211 (Wash.

3    2019) (general contractor has a nondelegable duty to maintain safe worksite and retains liability

4    for negligence of subcontractor).  Here, it is *Kitsap County* that holds the nondelegable duty of a

5    jailer to protect the health, welfare, and safety of inmates under *Gregoire/Hendrickson*, and

6    although it has contracted performance of the healthcare aspect of that duty to NaphCare, under

7    the logic of *Essex,* Kitsap County remains liable for any negligent performance of that duty.

8    Kitsap acknowledges that it retains vicarious liability for NaphCare's negligence.  (Dkt. No. 322

9    at 6.)  *See also* Wash. Pattern Jury Instr. Civ. 12.09 (Nondelegable Duties).  And because of

10   Kitsap County's "positive duty arising out of the special relationship that results when a

11   custodian has complete control over a prisoner deprived of liberty," *Gregoire*, 244 P.3d at 927

12   (quoting *Shea v. City of Spokane,* 562 P.2d 264 (Wash. Ct. App. 1977), *aff'd,* 578 P.2d 42 (Wash.

13   1978)), "contributory negligence cannot excuse [it's] duty to protect [an inmate], even from self-

14   inflicted harm."  *Id*. at 930.

15        Notwithstanding, there is no directly on point caselaw from the Washington courts on

16   whether the contractor of a jailer is bound by the *Gregoire/Hendrickson* contributory negligence

17   rule as to its own liability.  *Cf. Annechino v. Worthy*, 290 P.3d 126, 130 (Wash. 2012) (an agent

18   is liable to a third party for his own tortious conduct when the agent breaches a duty he owes to

19   the third party); *Afoa v. Port of Seattle*, 421 P.3d 903, 910 (Wash. 2018) (breach of a

20   nondelegable duty does not prevent allocation of fault under Washington Revised Code

21   § 4.22.070).  And while the state courts have extended the *Gregoire/Hendrickson* rule even to an

22   inmate's own illegal conduct, *see Anderson v. Grant Cnty.*, 539 P.3d 40, 47 (Wash. Ct. App.

23   2023), *review granted*, 556 P.3d 1104 (Wash. 2024), the courts have not considered application

24

of the rule in the medical malpractice context occurring within a jail.  In a typical medical malpractice action—outside of the corrections setting—contributory negligence is available as a defense.  *Dunnington v. Virginia Mason Med. Ctr.*, 389 P.3d 498, 503–504 (2017).

In considering how to apply these precedents in this case, the Court also considers the significant policy considerations that undergird *Gregoire*.  As identified *supra*, the lead opinion recognized the "special relationship" between jailer and inmate that imposed a duty to protect from self-inflicted harm, including attempted suicide.  244 P.3d at 929.  Justice Sanders' opinion relies on *Hunt v. King County*, which held that a hospital could not claim contributory negligence against a patient held in its closed psychiatric ward, because self-injury in that setting is reasonably foreseeable and "[a]ny other rule would render the actor's duty meaningless."  (*Id.*, quoting *Hunt*, 481 P.2d 593, 598 (Wash. Ct. App. 1971)).  Were it otherwise, "[t]he wrongdoer could become indifferent to the performance of his duty knowing that the very eventuality that he was under a duty to prevent would, upon its occurrence, relieve him from responsibility."  (*Id.* at 930.)  Here, NaphCare does not retain "complete control" over inmates in the same way that the jailer—Kitsap County—does, or even as the psychiatric hospital in *Hunt* did.  However, it would render the *Gregorie/Hendrickson* rule meaningless if a jailer could escape liability by contracting its obligations to a third party.

For these reasons, the Court concludes that NaphCare may assert a defense of contributory negligence against Nicholas Rapp for his own alleged conduct that prevented NaphCare from providing effective healthcare and contributed to his injuries.  *However*, Kitsap County may not assert a contributory negligence defense as to Plaintiffs' claims against Kitsap County because it maintains a nondelegable duty to protect the health, welfare, and safety of inmates in its custody.  Kitsap County therefore would remain responsible to Plaintiffs for the

total damages attributable to the medical negligence of its contracted medical provider

(Naphcare) without the ability to avail itself of any contributory negligence the trier of fact may

attribute to Rapp. *See Essex*, 546 P.3d at 411.[3]

Accordingly, Plaintiffs' motion for summary judgment as to the affirmative defense of

contributory negligence is GRANTED in part and DENIED in part.

b. <u>NaphCare's Defense as to the Fault of Plaintiffs</u>

NaphCare further argues that it should be able to assert contributory negligence against

other actors, namely John and Judith Rapp and/or Megan Wabnitz. (*See* Dkt. Nos. 323 at 18.)

Kitsap County formally withdraws its defense as to contributory negligence but nonetheless

makes the same argument that Defendants may claim contributory negligence against Plaintiffs.

(Dkt. No. 322 at 3–5.) Defendants seize on a footnote in the Court's prior ruling in which the

Court "reserve[d] ruling on the issue of whether Wabnitz, John, and Judith could be

contributorily negligent for Nicholas's death for lack of adequate briefing." (Dkt. No. 202 at 6

n.4.) However, in the same footnote, the Court stated:

> To be held contributorily negligent, the tortfeasor must have a duty of care to the injured party. *See Webstad v. Stortini*, 924 P.2d 940, 945 (Wash. Ct. App. 1996). There is no general duty to prevent another party's suicide unless a special relationship exists or where a party "has affirmatively acted and then realizes or should realize that he or she has created an unreasonable risk of physical harm to another." *See id.* at 947–49. Neither party addressed this standard in the briefs this Court considered or put forward facts indicating the existence or absence of such a duty.

---

[3] The Parties agree an allocation of fault instruction under Washington Revised Code § 4.22.070 is appropriate. (*See* Dkt. Nos. 332 at 6; 323 at 24; 335 at 13); *see also* Wash. Pattern Jury Inst. Civ. 11.07 (Determining the Degree of Contributory Negligence). Such an instruction would allow NaphCare to identify its direct liability, if any, to Plaintiffs. However, because there are no crossclaims asserted between Kitsap County and NaphCare in this litigation and because there is a contractual relationship between Kitsap County and NaphCare, the Court leaves open the question of the specific rights and obligations Kitsap County and Naphcare owe to each other. A determination of those rights and obligations is beyond the scope of the current litigation.

(Dkt. No. 202, at 6 n.4.)  Unfortunately, the briefings from Defendants still fail to address what duty John or Judith would have to their adult child or Megan Wabnitz would have to her partner. As to the former, the answer is clear.  John and Judith Rapp do not have a duty of care to their adult child.  As Plaintiffs note, it is long settled that parents do not have a common law obligation to support an adult child (financially, at least); such an obligation must be imposed by statute.  (*See* Dkt. No. 335 at 8, citing *Moss v. Moss,* 1 P.2d 916, 918 (Wash. 1931)).  *See also Estate of Emile Robert Zlatich, Jr., et al v. Estate of Vickie Kaufman, et al*, No. 39973-7-III, 2025 WL 85558, at \*2–\*3 (Wash. Ct. App. Jan. 14, 2025) (finding no special relationship and no "take charge" duty between parents and adult child).  Thus, as a matter of law, Defendants cannot claim contributory negligence against John or Judith since they owe no duty to Nick.

As to Wabnitz, Plaintiffs concede that she owed a duty of care to Nick, because she worked for NaphCare.  (Dkt. No. 335 at 9.)  The Court is uncertain if that concession is appropriate, since the record shows that Wabnitz avoided participating in Nick's medical care while he was in the Jail—except to the extent she claims to have warned her colleagues about Nick's suicidal condition.  (*See* Dkt. No. 355 at 9, 13.)  Nonetheless, in light of the concession, the Court will permit Defendants to claim contributory negligence on the part of Wabnitz.  That said, it is even less clear to the Court what doing so would accomplish.  Since Wabnitz was an employee of NaphCare at the time, and her only duty to Nick arises from her employment, the Court agrees with Plaintiffs that any negligence on Wabnitz's part is negligence for which NaphCare itself would also be vicariously liable.  (Dkt. No. 335 at 9.)

Accordingly, Plaintiffs' motion for summary judgment as to the fault of Plaintiffs is GRANTED in part and DENIED in part.

### 3.  Laches, Waiver, and Estoppel

1    NaphCare argues that Plaintiffs are barred by laches in their *Monell* claim because they

2    waited too long to specify the policies supporting that claim, and that waiver or estoppel applies

3    to certain facts or arguments raised by Plaintiffs.  (Dkt. No. 323 at 20–21.)  These equitable

4    defenses are legal questions for the Court to decide.  *See Granite State Ins. Co. v. Smart Modular*

5    *Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).  Since the Court granted summary judgment on

6    the *Monell* claim, the issue of laches is moot.  As to estoppel, Defendants state that "Plaintiffs are

7    estopped from asserting new facts previously undisclosed in discovery."  (Dkt. No. 323 at 21.)

8    But NaphCare does not point to any particular fact it was not put on notice of.  Likewise,

9    NaphCare states that "Plaintiffs have also repeatedly waived arguments throughout this litigation

10   by failing to timely raise arguments and failing to comply with local rules," but it does not point

11   to any particular argument.  (*Id.* at 22.)

12       Because NaphCare fails to identify any specific facts or arguments that are waived or

13   estopped and laches is now moot, the Court GRANTS Plaintiffs' motion as to these equitable

14   defenses.   However, if Defendants still believe there are specific facts or claims Plaintiffs intend

15   to raise at trial that were not timely disclosed, Defendants may make that argument, with greater

16   specificity, in a motion in limine.

17        **4.  Good Faith Defense**

18       The Court agrees with Plaintiffs that a "good faith" defense is inapplicable in this case,

19   particularly in light of the Court's prior ruling on Defendants' motions for summary judgment.  It

20   is true that the Ninth Circuit recognizes good faith as an affirmative defense for private actors

21   facing § 1983 liability who are not entitled to qualified immunity.  *Clement v. City of Glendale*,

22   518 F.3d 1090, 1097 (9th Cir. 2008); *accord Danielson v. Inslee*, 945 F.3d 1096, 1099 (9th Cir.

23   2019).  But good faith is not a free-roving defense.  The defense is applicable where the

24

1  "defendant complied with a law that the plaintiff claimed to be unconstitutional" or where "a

2  defendant acted in good faith reliance on orders from another actor." *Rawson v. Recovery*

3  *Innovations, Inc.*, No. C17-5342 BHS, 2022 WL 17142715, at *5 (W.D. Wash. Nov. 22, 2022).

4  For instance, *Clement* held that a private towing company could assert a good faith defense

5  because it was relying on tow orders from police that were later held to be unconstitutional.  518

6  F.3d at 1097.  Likewise, *Danielson* held that a union could assert a good faith defense related to

7  its dues collection practices because it was relying on *Abood v. Detroit Board of Education*, 431

8  U.S. 209 (1977) before that decision was overruled.  945 F.3d at 1097.  *See also Allen v. Santa*

9  *Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68, 71–74 (9th Cir. 2022) (same, for county

10 government making payroll deductions).

11          Here, NaphCare argues that it was acting in reliance on Washington statues and

12 regulations with respect to the prescribing practices of its providers.  (Dkt. No. 323 at 23.)

13 Because the Court has granted summary judgment on the *Monell* claim that NaphCare LPNs

14 were acting outside the scope of their practice, that is no longer relevant.  NaphCare also argues

15 it was acting in reliance on national correctional healthcare standards.  (*See id.*)  To the extent

16 those standards are relevant to the surviving § 1983 claims, reliance upon them does not give rise

17 to a good faith defense.  There is no statute or policy/practice being challenged as

18 unconstitutional nor an unlawful order from another actor.

19          Thus the Court GRANTS summary judgment with respect to the good faith affirmative

20 defense.

21                          **II      CONCLUSION**

22          Plaintiff's partial motion for summary judgment is GRANTED in part and DENIED in

23 part consistent with this opinion.

24

1    Having addressed all outstanding motions for summary judgment, the Parties shall meet

2    and confer to discuss trial availability.  The Parties shall file a joint status report no later than

3    February 10, 2025 identifying trial availability and identifying any issues the Court should

4    consider in setting a trial date.

5    The Clerk is directed to calendar this event.

6    Dated this 27th day of January, 2025.

7

8

9    David G. Estudillo
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24